**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT REIMER, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-00411-NRB |
| | ) |
| Plaintiff, | ) Electronically filed |
| | ) |
| - against - | ) |
| | ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| MARKO BABIC, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-01273-NRB |
| | ) |
| Plaintiff, | ) |
| | ) |
| - against - | ) |
| | ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) |
| | ) |
| Defendants. | ) |

(Captions continued on subsequent page.)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**THE U.S. PUBLIC PENSION FUNDS FOR (1) APPOINTMENT AS LEAD PLAINTIFF;**
**(2) APPROVAL OF THEIR SELECTION OF COUNSEL AS LEAD COUNSEL FOR**
**THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

|  |  |
|---|---|
| KEVIN PARKER, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-01825-UA<br>)<br>) |
| Plaintiff, | ) Electronically filed<br>) |
| - against - | )<br>) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-01918-UA<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| - against - | )<br>) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 3

ARGUMENT .............................................................................................................................. 6

I.      The U.S. Public Pension Funds Should Be Appointed Lead Plaintiff................................. 6

        A.      The U.S. Public Pension Funds Believe They Have the Largest
                Financial Interest in the Relief Sought by the Class ....................................... 6

        B.      The U.S. Public Pension Funds Satisfy the Relevant Requirements
                of Rule 23................................................................................................... 8

                i.      The U.S. Public Pension Funds' Claims Are Typical of the Claims
                        of the Class........................................................................................ 9

                ii.     The U.S. Public Pension Funds Will Fairly and Adequately
                        Represent the Interests of the Class ................................................. 10

        C.      The U.S. Public Pension Funds Are the Prototypical Lead Plaintiffs
                Envisioned by the PSLRA ......................................................................... 11

II.     This Court Should Approve the U.S. Public Pension Funds' Choice
        of Lead Counsel ........................................................................................................ 13

III.    The Related Actions Should Be Consolidated................................................................ 14

CONCLUSION........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albert Fadem Trust v. Citigroup, Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002)..................................................................6, 8

*Ferrari v. Impath, Inc.*,
  03 Civ. 5667 (DAB), 2004 WL 1637053 (S.D.N.Y. July 20, 2004) .......................11

*Glauser v. EVCI Center Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) .........................................................................6, 15

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004)........................................................................................12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)......................................................................................11

*In re Comverse Tech., Inc. Sec. Litig.*,
  06-cv-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)...................7

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ..................................................................................6

*In re Olsten Corp. Sec. Litig*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................8, 11

*In re Waste Mgmt. Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) .......................................................................5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .....................................................................8, 10, 15

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ..............................................................................15

*Xianglin Shi v. Sina Corp.*,
  No. 05 Civ. 2154(NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)................9, 11

**STATUTES**

15 U.S.C. § 78u-4 .................................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Civ. P. 42(a) .....................................................................................................1, 15

H.R. Conf. Rep. No. 104-369 (1995).............................................................................13

The Public School Teachers' Pension & Retirement Fund of Chicago ("Chicago Teachers"), the Arkansas Teacher Retirement System ("Arkansas Teachers"), and the Public Employees' Retirement System of Mississippi ("Mississippi PERS," and collectively with Arkansas Teachers and Chicago Teachers, the "U.S. Public Pension Funds"), respectfully submit this memorandum in support of their motion (i) to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) for approval of their selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Lead Counsel for the Class, and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

## PRELIMINARY STATEMENT

These lawsuits arise from allegations concerning violations of the federal securities laws by Ambac Financial Group, Inc. ("Ambac" or the "Company") and certain of its officers (collectively, "Defendants"). During the period from October 19, 2005 through January 15, 2008 (the "Class Period"), Defendants disseminated materially false and misleading information concerning the Company's operations and financial condition while suppressing or recklessly ignoring information known to them about the Company's business and finances, including the Company's massive exposure related to its insurance of collateralized debt obligations ("CDOs") and issuance of credit default swaps ("CDSs"). Defendants' misstatements artificially inflated the price of Ambac securities and caused substantial damage to the Company's investors.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must consider which

movant has the "largest financial interest" in the relief sought by the Class in this litigation and whether there has been a prima facie showing that the movant is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The U.S. Public Pension Funds believe that they are the "most adequate plaintiff" under the PSLRA to serve as Lead Plaintiff on behalf of investors in this action.  As set forth in more detail below, the U.S. Public Pension Funds' significant financial interest in this matter is evidenced by, among other things, their loss of approximately $31 million on their investment in Ambac securities.  The Certifications required by the PSLRA setting forth the U.S. Public Pension Funds' transactions in Ambac securities are attached as Exhibits A, B, and C, respectively, to the Declaration of Gerald H. Silk ("Silk Decl.").  Accompanying charts reflecting the calculations of the losses of the U.S. Public Pension Funds' are attached as Exhibits D, E, and F, respectively, to the Silk Decl.  These transactions and losses demonstrate that the U.S. Public Pension Funds have an extremely large financial interest in this matter – one believed to be greater than any competing movant.

Moreover, as sophisticated institutional investors with extensive experience in supervising counsel in complex securities litigation, the U.S. Public Pension Funds are the prototypical lead plaintiffs envisioned by the PSLRA.  Recognizing their common goals in strengthening corporate governance to protect investors from fraudulent reporting by publicly traded companies such as Ambac, as well as ensuring that the Class will benefit from the active involvement and supervision of class counsel, the members of the U.S. Public Pension Funds held a joint conference call to discuss the merits of the action, as well as strategies and procedures for prosecuting the case and monitoring counsel.  As reflected in the Joint

Declaration submitted with this Motion, as a result of these discussions and prior to the filing of this Motion, the members of the U.S. Public Pension Funds determined to work together to seek Lead Plaintiff appointment and prosecute the case on behalf of the Class. *See* Joint Declaration of Kevin Huber, Christa Clark and George W. Neville in Support of the Motion of the U.S. Public Pension Funds for Appointment as Lead Plaintiff ("Joint Decl."), at ¶¶5, 8-11, attached as Exhibit G to the Silk Decl. Thus, the Court can be assured that the appointment of the U.S. Public Pension Funds – sophisticated institutional investors experienced in litigating securities class actions that have affirmed their commitment to vigorously represent the interests of the Class – will fulfill Congress' goal in enacting the PSLRA to empower institutional investors with a real financial interest in the litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

Ambac, a New York City-based company, is one of the two largest bond insurers in the United States. Ambac trades on the New York Stock Exchange under the ticker symbol "ABK" and has over 100 million outstanding shares held by public investors.

The complaints filed in this action allege that during the Class Period, Ambac and certain of its officers misrepresented the Company's exposure and losses to CDO and subprime assets, and disclosed only selective, misleading information about its activities in the CDO market. Founded in 1971, Ambac's traditional line of business is the insurance of municipal bonds. Bond issuers pay Ambac a premium in return for the Company's guarantee of the timely repayment of bond principal and interest in the event the bond issuer defaults. By providing this guarantee, or "wrap," Ambac in effect lends its highly-coveted triple-A credit rating to the bond issue, thereby reducing the financing costs for the issuer and dramatically increasing the marketability of the bond. Ambac's triple-A rating is thus a crucial component of the

Company's business model, and a credit downgrade could have disastrous consequences on the Company's ability to write new business. In recent years, however, Ambac sought out higher returns by aggressively expanding into the structured finance business, insuring riskier, complex structured products such as mortgage-backed securities ("MBS") and CDOs, some of which contain high-risk components, including tranches of subprime MBS. Ambac also began issuing CDSs and investing in CDOs, including some of the same CDOs that the Company insured, which further compounded its exposure to these instruments' underlying assets, including assets backed by subprime mortgages.

Throughout the Class Period, Ambac failed to properly account for or disclose the extent of its exposure to these products and repeatedly misrepresented the expertise and discipline of its risk management activities. Among other things, Ambac misled investors by failing to mark down its CDO and MBS assets in a timely manner – information that was particularly material to investors because of the potential impact on the Company's triple-A credit rating. Ambac's failure to disclose the full extent of its exposure to the CDO market and its CDS portfolio rendered the Company's public statements and SEC filings materially misleading and caused the Company's stock to trade at artificially high levels throughout the Class Period.

Investors began to learn the truth about Ambac's involvement in and exposure to the CDO market in July 2007, when the Company reported certain mark-to-market losses for its credit derivatives portfolio linked to CDOs containing significant amounts of subprime residential mortgages as collateral. Subsequently, throughout the remainder of 2007, the Company made additional partial disclosures concerning the nature and risk characteristics of its portfolio, but continued to materially understate Ambac's true exposure to its CDO and CDS products.

On January 16, 2008, Ambac shocked investors by disclosing a staggering loss of $32-per-share, which the Company attributed to a $5.5 billion writedown of its credit derivatives portfolio. Several major ratings agencies took immediate action. That same day, Moody's Investors Service announced that it was putting Ambac's AAA rating on review for possible downgrade. In response to this news, Ambac stock plummeted to a 52-week low of $4.50 on January 17, 2008 in intraday trading and closed at $6.24 per share. Subsequently, on January 18, 2008, Fitch Ratings downgraded Ambac from AAA to AA and Standard & Poor's put Ambac's rating on review for possible downgrade, causing the Company's stock to drop further, closing at $6.20 per share. While the Defendants' false and misleading statements during the Class Period caused Ambac's stock to trade at artificially inflated prices up to as high as $96.08 per share in May 2007, when the truth about the Company's financial condition was finally revealed, the stock price withered to a mere $6.20 per share.

On January 16, 2008, the first of these related securities class actions, styled *Reimer v. Ambac Financial Group., Inc., et al.*, No. 08-cv-00411, was filed in this District. That same day, counsel for plaintiff Scott Reimer published a notice in *Business Wire* alerting investors to a Class Period of October 19, 2005 through November 26, 2007. *See* Silk Decl., Exhibit H. On February 27, 2008, a subsequent notice was published informing investors that a complaint had been filed expanding the Class Period to run from October 19, 2005 through January 15, 2008.[1] *See* Silk Decl. Exhibit I.

---

[1] The complaint in *Minneapolis Firefighters' Relief Association. v. Ambac Financial Group., Inc., et al.*, 08-cv-01918 (S.D.N.Y. filed Feb. 26, 2008), alleges the longest class period – October 19, 2005 through January 15, 2008. That action and certain of the other Related Actions allege a class consisting of purchasers or acquirers of Ambac securities, in addition to those class members who solely purchased common stock. The investor ultimately appointed Lead Plaintiff will have the obligation to determine, based on its investigation, the appropriate class period and scope of the particular claims asserted in the operative consolidated class action complaint. *See, e.g., In re Waste Mgmt. Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 407 n.1 (S.D. Tex. 2000). For purposes of determining a lead plaintiff movant's financial interest under PSLRA, the longest publicly-noticed period and scope apply.

The PSLRA permits any member of the class to move for appointment as Lead Plaintiff within 60 days of the first-published notice. *See* 15 U.S.C. § 78u-4(a)(3)(A). The U.S. Public Pension Funds have satisfied this requirement by making this motion.

## ARGUMENT

## I.    The U.S. Public Pension Funds Should Be Appointed Lead Plaintiff

The U.S. Public Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the lead plaintiff in class actions arising under the securities laws and provides a presumption favoring the plaintiff or group of plaintiffs with the largest financial interest in the action. Under the PSLRA, the Court "shall" adopt a presumption that the most adequate plaintiff is "the person or group of persons that…(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).

### A.    The U.S. Public Pension Funds Believe They Have the Largest Financial Interest in the Relief Sought by the Class

The U.S. Public Pension Funds respectfully submit that they have the largest financial interest of any qualified movant in this action and should therefore be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). In analyzing financial interest, courts typically consider four factors: (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended to acquire those shares; and (iv) the movant's approximate losses. *See, e.g., Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D.

95, 100 (S.D.N.Y. 2005). Based on these four factors, the Public Pension Funds believe they have the largest financial interest of any lead plaintiff movant.

During the Class Period, the U.S. Public Pension Funds purchased 931,600 shares of Ambac common stock on a gross basis, and sold 670,020 shares, and thus had net purchases of 261,580 shares of common stock. The U.S. Public Pension Funds had net expenditures of $14,828,265.72 on their purchases of common stock. In addition to their purchases of Ambac shares, the U.S. Public Pension Funds also expended $835,202.35 on a net basis to acquire certain Ambac bonds. As a result of Ambac's misconduct and subsequent market correction of the prices of Ambac securities (including both stock and bonds), the U.S. Public Pension Funds sustained losses, calculated under the PSLRA, of over $31 million on a first-in, first-out ("FIFO") basis and over $21 million on a last-in, first-out ("LIFO") basis.[2] The magnitude of the U.S. Public Pension Funds' collective financial interest is illustrated in the following chart:

---

[2] Courts commonly employ both the "FIFO" and "LIFO" methods for calculating financial interest for purposes of appointing a Lead Plaintiff under the PSLRA. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825(NGG)(RER), 2007 WL 680779, at *7 n.10 (E.D.N.Y. Mar. 2, 2007) (noting that "Courts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities" and identifying FIFO and LIFO as those methods). Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward. Under the alternative LIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward. Losses calculated on both a FIFO and LIFO basis for each U.S. Public Pension Fund are included in the charts attached as Exhibits D, E, and F, respectively, to the Silk Decl.

| Factor | U.S. Public Pension Funds' Position[3] |
|---|---|
| Gross Purchases: | 931,600 shares |
| Net Purchases: | 261,580 shares |
| Net Expenditures: | $15,663,468.07 |
| Approximate FIFO Loss: | $31,249,253,24 |
| Approximate LIFO Loss: | $21,021,563.03 |

In light of this extremely large financial interest, the U.S. Public Pension Funds believe they are entitled to the statutory presumption as the most adequate plaintiff and should be appointed Lead Plaintiff.

### B.    The U.S. Public Pension Funds Satisfy the Relevant Requirements of Rule 23

The U.S. Public Pension Funds should also be appointed Lead Plaintiff because they "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust*, 239 F. Supp. 2d at 347; *In re Olsten Corp. Sec. Litig*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998).

Of the four prerequisites to class certification, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA."  *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (Buchwald, J.) (citation omitted).  Furthermore, "at this stage of litigation, only a preliminary showing of typicality and adequacy is required."  *Id.* (citing *In re eSpeed, Inc. Sec. Litig.,* 232 F.R.D. at 102). As detailed below, the U.S. Public Pension Funds unquestionably satisfy these requirements.

---

[3] Because bonds are sold to investors in different units than common stock shares, this chart has excluded the U.S. Public Pension Funds' bond transactions in the "Gross Purchases" and "Net Purchases" columns.  However, the remaining categories – "Net Expenditures," "Approximate LIFO Loss" and "Approximate FIFO Loss" – include funds expended and losses (gains) on bonds because those figures are unaffected by the type of security at issue. Excluding bond transactions, the U.S. Public Pension Funds have net expenditures of $14,828,265.72 and losses of $30,983,134.39 on a FIFO basis and $20,755,444.18 on a LIFO basis.  *See* Loss Charts of Chicago Teachers, Arkansas Teachers and Mississippi PERS, attached as Exhibits D, E, and F, respectively, to the Silk Decl.

i.    **The U.S. Public Pension Funds' Claims Are Typical of the Claims of the Class**

The U.S. Public Pension Funds satisfy the typicality requirements of Rule 23. Typicality can be established by showing that the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB), 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (internal citation and quotation marks omitted). However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *See id.* (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004)).

Here, the U.S. Public Pension Funds' claims are typical of the claims of the members of the proposed class who also purchased or otherwise acquired Ambac securities at artificially inflated prices during the Class Period and suffered damages after the subsequent market correction. In sum, the U.S. Public Pension Funds satisfy the typicality requirement because, just like all other class members, they: (1) purchased or otherwise acquired Ambac securities during the applicable period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby. *See Xianglin Shi*, 2005 WL 1561438, at *3 (finding typicality where movant "executed stock trades during the proposed class period at prices alleged to have been affected by the alleged conduct of the defendants" because "[t]hese claims are similar in substance to the allegations of the other class members, who claim similar injuries."). The U.S. Public Pension Funds and all class members therefore have identical, non-competing and non-conflicting interests in establishing Defendants' liability.

ii.     **The U.S. Public Pension Funds Will Fairly and Adequately Represent the Interests of the Class**

The U.S. Public Pension Funds will also fairly and adequately represent the Class. "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94.

The U.S. Public Pension Funds have demonstrated their adequacy by retaining highly experienced counsel, timely seeking appointment as Lead Plaintiff, and submitting Certifications and a Joint Declaration reflecting their understanding of the obligations owed by the Lead Plaintiff to the Class. *See* Certifications of Chicago Teachers, Arkansas Teachers and Mississippi PERS, attached as Exhibits A, B and C, respectively, to the Silk Decl.; Joint Decl. ¶¶8-11. Recognizing their common goals in ensuring the successful prosecution of the claims against Ambac and implementing corporate governance changes to prevent similar conduct from occurring in the future, the U.S. Public Pension Funds held a joint conference call in which the merits of the action, as well as strategies and procedures for litigating the case and overseeing counsel, were discussed at length. *See* Joint Decl. ¶5. Further, through their prior experience in prosecuting securities class actions, as well as their joint involvement in the pension fund community and other prior professional relationships, the U.S. Public Pension Funds have demonstrated an ability to effectively work together and monitor class counsel. *See* Joint Decl. ¶¶7-8. Thus, the adequacy of the U.S. Public Pension Funds is further shown in their joint affirmation outlining their commitment to protect the interests of the Class by working together and being actively involved in prosecuting the case and overseeing counsel. *See* Joint Decl. ¶¶5, 8-11.

Moreover, having suffered over $31 million in losses as a result of the misconduct at Ambac, the U.S. Public Pension Funds have a significant financial interest in the litigation and can be counted on to vigorously pursue recovery for the Class from all culpable parties. As such, the interests of the U.S. Public Pension Funds are perfectly aligned with those of the Class, and there is no evidence of any antagonism between the U.S. Public Pension Funds and the Class. Lastly, the U.S. Public Pension Funds have shown their adequacy by retaining highly qualified counsel with extensive experience in prosecuting securities class actions.

### C. The U.S. Public Pension Funds Are the Prototypical Lead Plaintiffs Envisioned by the PSLRA

In addition to satisfying the preliminary requirements of Rule 23, the appointment of the U.S. Public Pension Funds as Lead Plaintiff would also fulfill a critical legislative goal behind Congress' enactment of the PSLRA – to encourage sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff); *see also Olsten*, 3 F. Supp. 2d at 296 (same).

Indeed, the U.S. Public Pension Funds are all large pension funds with substantial assets and, as such, are precisely the type of institutional investors that Congress sought to summon and empower when it enacted the PSLRA. *See Xianglin Shi,* 2005 WL 1561438, at *5 ("Because the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff.'") (citation omitted); *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in securities litigation

11

and to exercise control over the selection and actions of plaintiff's counsel); *see also Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 n.13 (2d Cir. 2004) (describing the main purpose of the PSLRA's lead plaintiff provision as "empower[ing] one or several investors with a major stake in the litigation to exercise control over the litigation as a whole.").

Each of the U.S. Public Pension Funds has experience serving as a lead plaintiff under the PSLRA and understands the importance of having an engaged lead plaintiff monitor the litigation and supervise counsel. *See* Joint Decl. ¶¶5, 7-8, 10. For example, Chicago Teachers recovered $55 million on behalf of investors by serving as co-lead plaintiff in the securities class action concerning the Safeskin Corporation (*Stanley v. Safeskin Corp.*, No. 99-CV-454(BTM) (S.D. Cal.). Mississippi PERS also has a record of success serving as a Lead Plaintiff in securities class actions. For example, Mississippi PERS is presently a Lead Plaintiff in the Delphi securities class action in the Eastern District of Michigan, in which combined settlements with a value of over $322 million have received judicial approval.[4] Arkansas Teachers also has a well-established record of success seeking redress on behalf of its fellow investors in securities class actions. For example, Arkansas Teachers' successful prosecution of *In re Williams Securities Litigation*, 02-CV-72(SPF) (N.D. Okla.), in which Arkansas Teachers was specifically selected by the court to replace lead plaintiffs that had withdrawn for undisclosed reasons, resulted in a recovery of $311 million for the class. Thus, the U.S. Public Pension Funds have the requisite experience and expertise to vigorously represent the Class in leading this action.

---

[4]  In addition to this case, Mississippi PERS served as lead plaintiff in *Ley v. Visteon Corporation et al.*, Case No. 05-cv-70737 (E.D. Mich.) and *In re SCOR Holding (Switzerland) AG Securities Litigation*, Case No. 04-cv-7897 (S.D.N.Y.) within the past three years. These cases are not listed on Mississippi PERS' Certification, however, because they were all filed prior to the three-year period preceding the date of the Certification. *See* 15 U.S.C. § 78u-4(a)(2)(A)(v).

Finally, as explained more fully below, the U.S. Public Pension Funds have demonstrated their adequacy by selecting highly qualified and experienced counsel to represent the Class.

**II.    This Court Should Approve the U.S. Public Pension Funds' Choice of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369, at 35, 104th Cong. 1st Sess. (1995).

The U.S. Public Pension Funds have retained the law firms of Bernstein Litowitz and Kaplan Fox – counsel highly experienced in prosecuting securities class actions – to serve as Lead Counsel for the Class. Both of these firms have extensive experience litigating securities class actions and have successfully prosecuted numerous securities class actions on behalf of injured investors.

Bernstein Litowitz is among the preeminent securities class action law firms in the nation, having successfully prosecuted numerous complex securities class actions on behalf of investors.  *See, e.g.*, Bernstein Litowitz's Firm Biography, attached as Exhibit J to the Silk Decl. Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class.  In addition, Bernstein Litowitz served as counsel for Arkansas Teachers in the *Williams Securities Litigation* discussed above, as well as in *In re EVCI Career Colleges Holding Corp. Securities Litigation*, Master File No. 05-10240(CM) (S.D.N.Y.).  Currently, Bernstein Litowitz represents Mississippi PERS in *In re SCOR Holding (Switzerland) AG Securities Litigation*, Case No. 04-cv-7897 (S.D.N.Y.) and as Mississippi PERS' counsel in *In re Delphi Corporation Securities, Derivative*

& *"ERISA" Litigation*, MDL No. 05-1725(GER) (E.D. Mich.).  In addition, Bernstein Litowitz was recently appointed to serve as Chicago Teachers' chosen counsel to represent a class of shareholders in *Eastwood Enterprises, LLC v. Farha et al.*, *(WellCare Securities Litigation)*, No. 8:07-1940-T-24-MSS (M.D. Fla.).

Kaplan Fox has also been recognized as one of the nation's leading securities class action firms, having been appointed to serve as lead or co-lead counsel in courts in this District and around the country.  *See, e.g.*, Kaplan Fox's Firm Biography, attached as Exhibit K to the Silk Decl.  For example, Kaplan Fox's successful prosecution of *In re 3Com Securities Litigation* (No. C-97-21083-EAI) (N.D. Cal.) resulted in settlements of $259 million, representing the largest recovery against a corporate defendant in the history of securities class action litigation in the Ninth Circuit.  Likewise, as co-lead counsel in *In re Merrill Lynch & Co., Inc., Research Reports Securities Litigation*, No. 02-MDL-1484(JFK) (S.D.N.Y.) (Keenan, J.), Kaplan Fox helped the class to achieve a favorable settlement of $125 million.  Additionally, Kaplan Fox is currently lead counsel to the Bricklayers and Trowel Trades International Pension Fund in the securities fraud class action *In re Credit Suisse–AOL Securities Litigation*, No. 1:02-CV-12146-NG (D. Mass.), and was recently appointed by Judge Stanton to serve as co-lead counsel on behalf of a class of investors in *In re Merrill Lynch & Co., Inc., Securities, Derivative and "ERISA" Litigation*, Master File No. 07-cv-9633(LBS) (S.D.N.Y.).

Accordingly, the U.S. Public Pension Funds' choice of experienced counsel should be appointed Lead Counsel for the Class.

### III.    <u>The Related Actions Should Be Consolidated</u>

Presently pending in this District are at least four related securities class actions (the "Related Actions") brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act

of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5.[5]  The Related Actions are as follows:

| Case | Civil No. | Date Filed |
|------|-----------|------------|
| *Reimer v. Ambac Fin. Group, Inc., et al.* | 08-CV-00411 | Jan. 16, 2008 |
| *Babic v. Ambac Fin. Group, Inc., et al.* | 08-CV-01273 | Feb. 7, 2008 |
| *Parker v. Ambac Fin. Group, Inc., et al.* | 08-CV-01825 | Feb. 22, 2008 |
| *Minneapolis Firefighters' Relief Assoc. v. Ambac Fin. Group, Inc., et al.* | 08-CV-01918 | Feb. 26, 2008 |

These actions present virtually identical factual and legal issues, as they all arise out of the same alleged misstatements regarding Ambac's finances and business operations. Accordingly, consolidation is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure.  *See, e.g., Glauser*, 236 F.R.D. at 186 ("[T]his Court has recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.") (internal quotation marks omitted); *Kaplan*, 240 F.R.D. at 92 (ordering consolidation where actions contained overlapping factual allegations that "defendants' statements to the investing public misrepresented or omitted to state material facts about [defendant's] financial status"); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (internal citation omitted).

---

[5]  In addition to the Related Actions, at least three derivative actions are pending against Ambac. These actions are factually related, but allege different legal claims.  As such, U.S. Public Pension Funds are not seeking to consolidate these actions with the Related Actions.  The derivative actions are *Rubery v. Callen, et al.*, No. 08-cv-00854-SHS (S.D.N.Y. filed Jan. 24, 2008); *Clark v. Callen, et al.*, No. 08-cv-00856-NRB (S.D.N.Y. filed Jan. 24, 2008); and *Yaokasin v. Callen, et al.*, No. 08-cv-01312(SWK) (S.D.N.Y. filed Feb. 8, 2008).

## CONCLUSION

For the above reasons, U.S. Public Pension Funds respectfully request that the Court: (i) appoint the U.S. Public Pension Funds as Lead Plaintiff; (ii) approve their choice of counsel to serve as Lead Counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other relief as the Court may deem just and proper.

DATED:    March 17, 2008
          New York, New York

Respectfully submitted,

By: _____ /s/ Gerald H. Silk _____

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Gerald H. Silk (GS-4565)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444

*Counsel to the Public School Teachers' Pension & Retirement Fund of Chicago and Arkansas Teacher Retirement System and Proposed Lead Counsel for the Class*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Joel B. Rodon
Donald R. Hall
Melinda D. Rodon
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Counsel to the Public Employees' Retirement System of Mississippi and Proposed Lead Counsel for the Class*