**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT REIMER, individually and on behalf of all others similarly situated, | Case No. 08-CV-00411-NRB |
| Plaintiff, | Electronically filed |
| - against - | |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | |
| Defendants. | |
| MARKO BABIC, individually and on behalf of all others similarly situated, | Case No. 08-CV-01273-NRB |
| Plaintiff, | |
| - against - | |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | |
| Defendants. | |

(Captions continued on subsequent page.)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE U.S. PUBLIC PENSION FUNDS FOR (1) APPOINTMENT AS LEAD PLAINTIFF; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

| | |
|---|---|
| KEVIN PARKER, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-01825-UA ) ) ) |
| Plaintiff, | ) Electronically filed ) |
| - against - | ) ) ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) ) ) ) |
| Defendants. | ) ) |
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-01918-UA ) ) ) |
| Plaintiff, | ) ) |
| - against - | ) ) ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) ) ) ) |
| Defendants. | ) ) |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.   The Court Should Uphold the Presumption in Favor of Appointing the U.S. Public Pension Funds Lead Plaintiff ................................................................................. 3

II.  The U.S. Public Pension Funds Have Established Their Adequacy As A Cohesive, Client-Driven Group ............................................................................................ 9

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Carson v. Clarent Corp.*,
  No. C 01-03361-CRB, 2001 WL 1782712 (N.D. Cal. Dec. 14, 2001) ...................................9

*Constance Sczesny Trust v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y.2004) ..........................................................................................4

*Gluck v. CellStar Corp.*,
  976 F.Supp. 542 (N.D. Tex. 1997) ......................................................................................9

*In re Baan Sec. Litig.*,
  186 F.R.D. 214 (D.D.C. 1999) .............................................................................................8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................................................7, 8

*In re Fannie Mae Sec. Litig.*,
  355 F. Supp. 2d 261 (D.D.C. 2005) .................................................................................2, 5

*In re Rait Fin. Trust Sec. Litig.*,
  No. 2:07-cv-03148(LDD), slip op. (E.D. Pa. Oct. 25, 2007) ..............................................4

*In re Vesta Ins. Group, Inc. Sec. Litig.*,
  No. 98-AR-1407-S, 1999 WL 34831475 (N.D. Ala. Oct. 25, 1999) ...................................8

*In re Williams Sec. Litig.*,
  No. 02-CV-72-H, slip op. (N.D. Okla. Dec. 29, 2004) .......................................................6

*Kinsley v. Network Assocs. Inc.*,
  77 F. Supp. 2d 1111 (N.D. Cal. 1999) .................................................................................9

*Ohio Pub. Employees Ret. Sys. v. Fannie Mae*,
  357 F. Supp. 2d 1027 (S.D. Ohio 2005) ..............................................................................5

*Sofran v. LaBranche & Co.*,
  220 F.R.D. 398 (S.D.N.Y. 2004) .........................................................................................4

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) .........................................................................................2

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................................................1, 2, 3, 9

Private Securities Litigation Reform Act of 1995 ("PSLRA") .............................................. *passim*

**OTHER AUTHORITIES**

S. Rep. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ........................................................7

The Public School Teachers' Pension & Retirement Fund of Chicago ("Chicago Teachers"), the Arkansas Teacher Retirement System ("Arkansas Teachers"), and the Public Employees' Retirement System of Mississippi ("Mississippi PERS," and collectively with Arkansas Teachers and Chicago Teachers, the "U.S. Public Pension Funds"), respectfully submit this reply memorandum of law in response to the arguments submitted by the Inter-Local Pension Fund GCC/IBT ("GCC/IBT").

## PRELIMINARY STATEMENT

The U.S. Public Pension Funds, a cohesive group of three sophisticated institutions that undisputedly have the largest financial interest in this litigation, respectfully submit that they should be appointed Lead Plaintiff. Recognizing the U.S. Public Pension Funds' superior financial interest, the only competing lead plaintiff applicant, GCC/IBT, attempts to wrest control of this litigation by attacking the adequacy of the U.S. Public Pension Funds. Specifically, GCC/IBT argues – with no factual basis – that the U.S. Public Pension Funds are "lawyer-driven" (notwithstanding the clear evidence to the contrary) and are subject to an unarticulated "potential financial conflict" based upon unidentified "connections" between the U.S. Public Pension Funds and state and municipal entities that issue bonds purportedly insured by Ambac Financial Group Inc. ("Ambac"). *See* GCC/IBT Opp. Mem. at 1-2. These arguments lack support in both fact and law, and should be rejected.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") establishes a presumption that the class member with the largest financial interest in the litigation be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). Under any measure, the financial interest of the U.S. Public Pension Funds ($31 million) dwarfs that of GCC/IBT ($2.8 million). Indeed, Arkansas Teachers, which has the smallest loss ($5.9 million) of any of the individual

members comprising the U.S. Public Pension Funds, has a financial interest that is more than twice that of GCC/IBT.

The presumption afforded to the "most adequate plaintiff" is a very powerful one and it may be rebutted "only upon proof" of inadequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). It is on this basis that the overwhelming majority of courts have rejected speculative challenges akin to those asserted here. *See, e.g., Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) (rejecting challenge, stating that "[s]peculation and conjecture from one interested party" was insufficient to establish proof of presumptive plaintiff's inadequacy).

Lacking any factual basis, GCC/IBT contends that the members of the U.S. Public Pension Funds "would be less likely to pursue maximum recovery against Ambac" as the "members of the U.S. Public Pension Funds need Ambac to continue to insure their bonds in order to maintain the rating on their bonds." *See* GCC/IBT Opp. Mem. at 2, 6. GCC/IBT's contention is baseless. To be clear: the members of the U.S. Public Pension Funds ***do not issue bonds***. Nor has counsel for GCC/IBT put forth any evidence that members of the U.S. Public Pension Funds or their beneficiaries *own* any bonds insured by Ambac. Instead, GCC/IBT bases its contention on the fact that members of the U.S. Public Pension Funds represent beneficiaries in states or municipalities that have issued bonds. Surely such an undefined and tangential relationship is insufficient to establish the "proof" necessary to rebut the PSLRA presumption. *See, e.g., In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (rejecting adequacy challenge based on presumptive lead plaintiff's significant holdings in debt securities guaranteed by defendant).

Further, GCC/IBT's contention that the decision by the members of the U.S. Public Pension Funds to seek joint appointment as Lead Plaintiff was "lawyer-driven" is directly refuted

2

by evidentiary proof submitted by the representatives of the U.S. Public Pension Funds.[1] Their joint declaration establishes, *inter alia*, that the representatives held a joint conference call to discuss the merits of the Ambac litigation and the members' common goals in prosecuting the case prior to deciding to move together in this case, and outlines the members' commitment and practical steps taken to ensure active and effective oversight of counsel. Such conduct is the antithesis of the "lawyer-driven" practices Congress sought to eliminate, and, in fact, exemplifies the management and control over counsel that the PSLRA intended in empowering sophisticated institutional investors to serve as lead plaintiffs in securities class actions.

Accordingly, the U.S. Public Pension Funds respectfully request that they be appointed Lead Plaintiff and their motion be otherwise granted.

## ARGUMENT

### I. The Court Should Uphold the Presumption in Favor of Appointing the U.S. Public Pension Funds Lead Plaintiff

The U.S. Public Pension Funds, as the undisputed movant with the "largest financial interest," are entitled to the statutory presumption as the most adequate plaintiff. Because GCC/IBT has failed to overcome this presumption, which may be rebutted "only upon proof" of inadequacy, the U.S. Public Pension Funds respectfully request that they be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B).

The alleged basis of the U.S. Public Pension Funds' purportedly "disabling financial conflict" is that certain entities from the same state or locality of the members of the U.S. Public Pension Funds issue bonds that are insured by Ambac. *See* GCC/IBT Opp. Mem. at 2.

---

[1] *See* Joint Declaration of Kevin Huber, Christa Clark and George W. Neville in Support of the Motion of the U.S. Public Pension Funds for Appointment as Lead Plaintiffs, attached as Exhibit G to the Declaration of Gerald H. Silk (Dkt. # 17, attachment 8) ("Joint Decl.").

3

GCC/IBT claims that because the members of the U.S. Public Pension Funds are "connected" to these entities, they are "less likely to pursue maximum recovery against Ambac for fear of negatively impacting the insurance of the Ambac-insured bonds." *Id.*

This argument is pure speculation on several levels. First, the geographical proximity of the U.S. Public Pension Funds and the bond issuers identified by GCC/IBT – the only discernible fact supporting the purported "connection" between them – does not establish a conflict of interest. Second, GCC/IBT has not established that maximizing a recovery against Ambac in this litigation would impact Ambac's credit rating and the financial interests of entities for whom Ambac has insured bonds (none of which are the U.S. Public Pension Funds). Third, it is even less clear how the financial interests of the retirement systems (or their beneficiaries) comprising the U.S. Public Pension Funds – which are distinct from the bond issuers identified by GCC/IBT – would be affected by such a downgrade. Courts routinely reject such highly speculative challenges to the adequacy of lead plaintiff movants. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y.2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject."); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere speculation); *In re Rait Fin. Trust Sec. Litig.*, No. 2:07-cv-03148(LDD), slip op. (E.D. Pa. Oct. 25, 2007), attached hereto as Exhibit A to the Supp. Silk Decl.

Even if it were possible to establish that the members of the U.S. Public Pension Funds had a financial interest in ensuring that Ambac's ability to insure the bonds identified by

4

GCC/IBT remained intact, courts have consistently rejected similar arguments that such a supposed financial interest renders the presumptive lead plaintiff inadequate. For example, in *In re Fannie Mae Securities Litigation*, a case that is closely analogous to the present facts, the court rejected out-of-hand the argument that the presumptive lead plaintiff was inadequate due to its ownership of significant quantities of mortgage-backed securities that were guaranteed by the defendant. *See In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005). The competing movant in that case had argued that the $50 to $100 million value of the debt securities held by the presumptive lead plaintiff and guaranteed by the defendant was "inversely proportional to the size of any judgment against Fannie Mae" and that "if Fannie Mae's equity-side were to decrease dramatically as a result of an adverse judgment, the value of the guaranteed mortgage-backed securities would also decline." *See* Mem. in Further Support of Comnivest Asset Management GBMH's Mot., at 20-21, *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261 (D.D.C. 2005 (No. 04-cv-1639-RJL), attached as Exhibit B to the Supp. Silk Decl. The court readily dismissed the attack, holding that "the argument that the Ohio Treasurer's Office's practice of purchasing mortgage-backed securities from Fannie Mae somehow creates a conflict of interest [] is too speculative and hypothetical to rebut the presumption." *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d at 263.[2]

Similarly, here, the potential outcome of this lawsuit on Ambac's credit rating, and any resulting economic effects on entities distinct from the U.S. Public Pension Funds themselves, is likewise "too speculative and hypothetical to rebut the presumption." *See id.* In fact, the alleged conflict here is even further attenuated than that in *Fannie Mae*, as GCC/IBT's counsel has failed

---

[2] Prior to a decision by the Panel on Multidistrict Litigation consolidating the related *Fannie Mae* actions, the District Court for the Southern District of Ohio issued a decision appointing a lead plaintiff and approving the findings of the District Court for the District of Columbia discussed above. *See Ohio Pub. Employees Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1029 n.1, 1035 n.13 (S.D. Ohio 2005).

5

to even articulate the "connection" between any of the U.S. Public Pension Funds and the bond issues insured by Ambac identified by GCC/IBT.

Purported conflicts in which the presumptive lead plaintiff is claimed to have a more clearly defined (and substantially larger) interest in the defendant's financial health than that identified by GCC/IBT have also been found insufficient to rebut the presumption. For example, in *In re Williams Securities Litigation*, a competing lead plaintiff movant argued that the presumptive lead plaintiff, a large institutional investor, was inadequate because it held approximately $300 million worth of common stock in investment banking underwriters that were defendants in the action and, in fact, was also alleged to be a partner in a joint venture with at least one investment bank defendant. *See In re Williams Sec. Litig.*, No. 02-CV-72-H, slip op. at 2 (N.D. Okla. Dec. 29, 2004), attached as Exhibit C to the Supp. Silk Decl. The $300 million interest in the underwriter defendants was far greater than the institutional investor's interest in the lawsuit, which was a comparatively small $23.6 million. *See* Supp. to Reply Br. of Frederic E. Russell Investment Mgmt. Co., at 1, *In re Williams Sec. Litig.*, No. 02-cv-72-H (N.D. Okla. Dec. 29, 2004), attached as Exhibit D to the Supp. Silk Decl. Nevertheless, the court upheld the presumption, relying on the PSLRA's preference for institutional investors. *In re Williams Sec. Litig., No. 02-cv-72-H*, slip op. at 4.

In addition, the *Williams* court focused on the apparent lack of any relationship between the outcome of the *Williams* litigation and the value of the investment in the underwriters:

> [N]othing has been presented to suggest that this lawsuit places the entirety of Ontario Teachers['] holdings in the underwriter defendants at risk[.] . . . Under these circumstances, ***it is conjecture that decisions made in this case will be driven by Ontario Teachers' consideration of the uncertain effect decisions made in this case may have on its holdings in the underwriter defendants.*** In sum, the undersigned finds that the connection between Ontario Teachers['] decision making as lead plaintiff in this case and the effect those decisions may have on its holdings in the underwriter defendants ***is just too far attenuated to***

6

>  ***constitute the necessary proof*** that Ontario Teachers will fail to fairly and adequately protect the interests of the class.

*Id*. at 8-9 (emphasis added).  That rationale is equally applicable here.  As noted above, GCC/IBT does not – and cannot – explain how any decision made in this case would have any bearing on any interest that the U.S. Public Pension Funds may have in any bond issuers to which they are allegedly "connected."  Absent any such evidence, GCC/IBT's argument is pure conjecture and insufficient to overcome the presumption under the PSLRA.

Further, courts have consistently rejected similar arguments regarding such conflicts as contrary to the PSLRA.  In *In re Cendant Corporation Litigation*, the Third Circuit noted that Congress was presumably aware that institutional investors – which Congress expressly intended serve as lead plaintiffs – often retain significant holdings in a defendant company even after a securities lawsuit is filed.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 244-45 (3d Cir. 2001); *see also* S. Rep. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors.").  With this principle in mind, the Third Circuit upheld the adequacy of the institutional investors in that case because the alleged conflict (a "huge" investment in a public company that was a defendant in the action) would prevent the statute from achieving its intended purpose to encourage institutional investors to act as lead plaintiffs.  *Cendant*, 264 F.3d at 243-44.

In light of the holding in *Cendant*, the alleged conflict of the U.S. Public Pension Funds as asserted by GCC/IBT is without merit.  In *Cendant*, the lead plaintiff had a direct interest in a company that was actually a defendant in the case.  In contrast, the U.S. Public Pension Funds' purported "connection to" certain entities that issue bonds insured by the defendant, parties that

7

have nothing to do with this case, is several steps removed.

District courts addressing motions for class certification have also relied on the PSLRA's preference for institutional investors in rejecting attacks on the adequacy of lead plaintiffs based on similar conflicts. In *In re Vesta Insurance Group, Inc. Securities Litigation*, for example, the defendants argued that the lead plaintiff was inadequate because of an existing investment in one of the defendants. In rejecting this argument and certifying the class, the court articulated a similar rationale as that expressed in *Cendant*:

> More significant, from this court's perspective is the unequivocal policy position expressed by Congress when it passed the Private Securities Litigation Reform Act (PSLRA) in 1995, demonstrating its intent that large institutional investors should be encouraged to serve as class representatives in securities fraud class actions. There can be no doubt that Congress understood that large institutional investors with multi-billion dollar portfolios would likely always hold equity investments in a broad spectrum of companies, some of which would likely be defendants in securities cases. . . . ***Even if these equity investments are not held in named defendants, in this economy with intertwined business relationships of every kind, it is easy to foresee that a large damage award against one entity might negatively impact an equity position with another. If this condition were enough to defeat certification as a class representative, large institutional investors would almost invariably be disqualified; precisely the opposite of what Congress intended in passing PSLRA***.

*In re Vesta*, No. 98-AR-1407-S, 1999 WL 34831475, at *8 (N.D. Ala. Oct. 25, 1999) (emphasis added).[3] This reasoning is directly applicable here with one notable exception: in this case, it is not at all "easy to foresee [how] a large damage award against [Ambac] might negatively impact [the U.S. Public Pension Funds'], " unidentified interest in the bonds listed in GCC/IBT's papers. *Id*. Having failed to articulate this connection – let alone provide the proof required by the

---

[3] The *Vesta* court also cited the SEC's position on the adequacy requirement in the context of the PSLRA, quoting the agency's view that "the standards for an adequacy challenge must not be read and applied in such a manner that they would nullify the largest financial interest requirement and defeat the purposes of the lead plaintiff provisions" and that "generic arguments that would systematically disqualify large investors and institutions from serving as lead plaintiff should not suffice as 'proof' [of inadequacy] under the statute." *See In re Vesta,* 1999 WL 34831475, at *9 (*quoting The SEC Speaks in 1999: Office of the General Counsel Recent Judicial Developments,* 1104 PLI/Corp 291, 484-85 (1999)).

8

PSLRA – GCC/IBT's effort to rebut the presumption fails.[4]  Because GCC/IBT has not come forward with proof to rebut the statutory presumption, the U.S. Public Pension Funds should be appointed Lead Plaintiff and their motion should otherwise be granted.

### II. The U.S. Public Pension Funds Have Established Their Adequacy As A Cohesive, Client-Driven Group

Counsel for GCC/IBT challenge the adequacy of the U.S. Public Pension Funds by conclusorily claiming that their involvement in this litigation has been "lawyer-driven."  Such a claim, unsupported by any facts or evidence and in complete disregard of evidentiary proof submitted by the U.S. Public Pension Funds, is utterly belied by the record and should be rejected.

As demonstrated in the Joint Declaration submitted in their opening motion, the members of the U.S. Public Pension Fund came together and decided to jointly prosecute this action for reasons entirely independent of the involvement of their counsel.  *See* Joint Decl. ¶5.  In fact, the representatives of the U.S. Public Pension Funds have prior professional relationships and in the past jointly pursued common goals through their involvement in the pension fund community.  *See* Joint Decl. ¶6.  As to their involvement in this litigation, the members of the U.S. Public Pension Funds have implemented procedures to ensure active and effective oversight of counsel and, through their Joint Declaration, have reaffirmed their commitment to vigorously prosecute

---

[4] The only case cited by GCC/IBT in support of its argument, *In re Baan Co. Sec. Litig.*, pre-dates the Third Circuit's decision in *Cendant* and is otherwise inapposite.  In fact, the passage quoted by CGG/IBT's counsel, although dicta, undermines its position.  In *Baan*, the court was concerned that the vast majority of the 466 individual investors making up a proposed lead plaintiff group had small holdings relative to the lead counsel's financial interest in the litigation.  *See In re Baan Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999).  The *Baan* court rejected this large group as contrary to the PSLRA and instead selected the three individual plaintiffs with the largest losses and who had significant retained holdings in the defendant corporation to be appointed lead.  *Id.*  By noting that "it may be in the class members' interest to settle for less in this case to preserve the Company's viability," *id.* at 218, the *Baan* court actually intended to demonstrate that the three plaintiffs' interests were ***aligned*** with that of the class.  *See id.*  Here, the *Baan* court's concern is simply absent, given the three members of the U.S. Public Pension Funds' have a substantial $31 million financial interest in the litigation.

9

this action against all culpable parties.  *See* Joint Decl. ¶¶8-11.  Indeed, not only is the characterization of the U.S. Public Pension Funds as "lawyer-driven" contradicted by the facts, but such a claim defies logic.  It is difficult to conceive that the members of the U.S. Public Pension Funds – three sophisticated institutional investors with tens of billions of dollars under management, each with its own independent boards of directors, legal counsel and advisory staff – would permit outside counsel to act without their approval or direction.  In fact, the U.S. Public Pension Funds are the prototypical lead plaintiffs Congress sought to empower in enacting the PSLRA.

Accordingly, because the U.S. Public Pension Funds have amply demonstrated their adequacy and GCC/IBT has failed to rebut the statutory presumption, they respectfully request that they should be appointed Lead Plaintiff and their motion otherwise be granted.[5]

## CONCLUSION

For the foregoing reasons, the U.S. Public Pension Funds respectfully request that the Court: (i) appoint the U.S. Public Pension Funds as Lead Plaintiff pursuant to the PSLRA; (ii) approve their selection of Bernstein Litowitz Berger & Grossmann LLP and Kaplan Fox & Kilsheimer LLP as Lead Counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

---

[5]  GCC/IBT's request for discovery should be denied.  Discovery of a competing lead plaintiff movant is only available if the "plaintiff first demonstrates a ***reasonable basis*** for a finding that the presumptively most adequate plaintiff is ***incapable of adequately representing the class***."  15 U.S.C. § 78u-4(a)(3)(B)(iv) (emphasis added).  As discussed above, no such reasonable basis has been established, and the motion should be denied.  *See, e.g., Carson v. Clarent Corp.*, No. C 01-03361-CRB, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) (finding competing movant had not presented proof of inadequacy and denying discovery); *Kinsley v. Network Assocs. Inc.*, 77 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999) (denying discovery request because competing movant had not shown presumptive lead plaintiff was "***incapable*** of adequately representing the class") (emphasis in original); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 547-48 (N.D. Tex. 1997) ("Such speculative assertions are insufficient to rebut the presumption that SWIB is the most adequate plaintiff. The statute requires the CellStar Plaintiffs Group to present 'proof' of its assertions; or, if it requires discovery to gather such proof, to 'demonstrate a reasonable basis' for a finding of inadequacy.  Here, the CellStar Plaintiffs Group does neither.") (citation omitted).

DATED:   April 14, 2008
         New York, New York

                                          Respectfully submitted,

                                          By:     /s/ Gerald H. Silk

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Gerald H. Silk (GS-4565)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444

*Counsel to the Public School Teachers' Pension & Retirement Fund of Chicago and Arkansas Teacher Retirement System and Proposed Lead Counsel for the Class*

**KAPLAN FOX & KILSHEIMER LLP**

Frederic S. Fox
Joel B. Strauss
Donald R. Hall
Melinda D. Rodon
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Counsel to the Public Employees' Retirement System of Mississippi and Proposed Lead Counsel for the Class*

11