# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT REIMER, individually and on behalf of all others similarly situated, | ) ) ) Case No. 08-CV-00411-NRB |
| | ) |
| Plaintiff, | ) ) Electronically filed |
| | ) |
| - against - | ) ) |
| | ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) ) ) ) |
| Defendants. | ) ) |
| | ) |
| MARKO BABIC, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-01273-NRB ) |
| | ) |
| Plaintiff, | ) ) |
| - against - | ) ) |
| | ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) ) ) |
| Defendants. | ) ) |

(Captions continued on subsequent page.)

**SUPPLEMENTAL DECLARATION OF GERALD H. SILK IN FURTHER SUPPORT OF THE MOTION OF THE U.S. PUBLIC PENSION FUNDS FOR (1) APPOINTMENT AS LEAD PLAINTIFF; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

|  |  |
|---|---|
| KEVIN PARKER, individually and on behalf of all others similarly situated, | ) ) ) Case No. 08-CV-01825-UA |
| Plaintiff, | ) ) ) Electronically filed |
| - against - | ) ) ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) ) ) ) |
| Defendants. | ) ) ) |
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, individually and on behalf of all others similarly situated, | ) Case No. 08-CV-01918-UA ) ) ) |
| Plaintiff, | ) ) ) |
| - against - | ) ) ) |
| AMBAC FINANCIAL GROUP INC., ROBERT J. GENADER, PHILLIP B. LASSITER, SEAN T. LEONARD and THOMAS J. GANDOLFO, | ) ) ) ) |
| Defendants. | ) ) ) |

I, Gerald H. Silk, declare as follows:

1.      I am a member in good standing of the bars of the State of New York and of this Court.  I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP.  I submit this supplemental declaration in further support of the motion filed by the Public School Teachers' Pension & Retirement Fund of Chicago ("Chicago Teachers"), the Arkansas Teacher Retirement System ("Arkansas Teachers"), and the Public Employees' Retirement System of Mississippi ("Mississippi PERS," and collectively with Arkansas Teachers and Chicago Teachers, the "U.S. Public Pension Funds") for appointment as Lead Plaintiff, approval of their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel for the Class, and for consolidation of all related actions.

2.      Attached as Exhibits A through D are true and correct copies of the following documents:

Exhibit A:      *In re Rait Fin. Trust Sec. Litig.*, No. 2:07-cv-03148(LDD), slip op. (E.D. Pa. Oct. 25, 2007);

Exhibit B:      Mem. in Further Support of Comnivest Asset Management GBMH's Mot., *In re Fannie Mae Sec. Litig.*, 04-cv-1639-RJL (D.D.C. Dec. 10, 2004);

Exhibit C:      *In re Williams Sec. Litig.*, No. 02-CV-72-H, slip op. (N.D. Okla. Dec. 29, 2004); and

<u>Exhibit D</u>:    Supp. to Reply Br. of Frederic E. Russell Investment Mgmt. Co., *In re Williams Sec. Litig.*, No. 02-cv-72-H, slip op. (N.D. Okla. Dec. 29, 2004).

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this fourteenth day of April, 2008.



                         /s/   Gerald H. Silk
                            Gerald H. Silk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

A1 CREDIT COMPANY,                     :
f/b/o EILEEN HERSKOWITZ,               :
On Behalf of Itself and All Others     :
Similarly Situated,                    :
     Plaintiff,                       :        CIVIL ACTION
                                      :
     v.                               :
                                      :
RAIT FINANCIAL TRUST, et al.,          :        NO. 2:07 cv-03148-LDD
     Defendants.                      :

ORDER

Before the court are four motions[1] for the consolidation of related cases, the appointment

of lead plaintiff and the approval of lead counsel in the putative class action securities litigation

against RAIT Financial Trust and various other defendants (collectively, "RAIT").  Motions have

been filed by: (1) Lewis Vernekoff, New Jersey Carpenters Pension Fund and Pengsen Liu (the

"LVC Group"); (2) Brahman Capital Corp. and various related investment entities ("Brahman

Capital"); (3) Iron Workers Local No. 25 Pension Fund, Sonny Bhakta, and the Pistilli Family

(the "Iron Workers Group") and (4) Richard Stevens and Lance Stevens (the "Stevens Group").

Applying the detailed procedures set forth in the Private Securities Litigation Reform Act of

1995 (the "PSLRA"), the Court orders (i) the consolidation of the various related matters; (ii) the

appointment of Brahman Capital as lead plaintiff and (iii) the appointment of Bernstein Litowitz

---

[1]The Employees' Retirement System of the State of Rhode Island, which had also filed a
motion, withdrew its motion on October 15, 2007.

Berger & Grossman LLP ("Bernstein Litowitz") as lead counsel.

## I.    Facts

This case and eight other related matters were filed on behalf of investors who purchased securities of RAIT Financial Trust between June 8, 2006 through and including July 31, 2007.[2] These cases arise out of alleged violations of the federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  The plaintiffs claim that during the previously mentioned dates the defendants caused RAIT's stock price to be artificially inflated by making false and misleading statements to the investing public and by failing to disclose material facts related its exposure to American Home Mortgage ("AHM").

### II.    Discussion

A. Motions to Consolidate

All movants in this case have filed motions requesting that the various matters related to alleged securities law violations by RAIT be consolidated.  These motions are unopposed.

Rule 42(a) of the Federal Rules of Civil Procedure provides "[w]hen actions involving a common question of law or fact are pending before the court, . . . it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  Fed. R. Civ. P. 42(a).  "A court has broad discretion to consolidate actions involving common questions of law or fact for trial or pretrial purposes if it will facilitate the administration of justice."  Smithkline Beecham Corp. v. Geneva Pharm, Inc., No. 99-CV-2926 et al., 2001 WL 1249694, at *5 (E.D. Pa. Sept. 26, 2001).  Moreover, the PSLRA

---

[2] For the purpose of adjudicating these  motions, we assume, without finding, that June 8, 2006 through and including July 31, 2007 is the relevant class period.

directs that cases should be consolidated when there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Based on the allegations in the complaints, the related matters share significant common issues of law and fact. All the matters allege violations of Section 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5.[3]  Furthermore, all the claims in these matters arise from the same set of operative facts related to RAIT's disclosure with respect to its exposure to AHM. Consequently, because the consolidation of the various related actions will facilitate the administration of justice and promote judicial economy without any foreseeable prejudice, the motion to consolidate filed by Brahman Capital is granted.

B. Motions to Appoint Lead Plaintiff

Having determined that consolidation is appropriate, the PSLRA directs that the court "appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Section 78u-4(b) provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Based upon the motions submitted by the movants and their presentations at oral argument, this Court finds that Brahman Capital is entitled to the

---

[3] Though the complaints filed by the A1 Credit Company and Theona B. Salkowitz, Case Nos. 2:07-cv-03148-LDD and 2:07-cv-03406-LD, respectively, allege additional violations under the Securities Act of 1933, the common issues of law among the cases predominate.

presumption that it is most adequate plaintiff.

### 1. Motion in Response to Notice

Brahman Capital timely filed it motion to act as lead plaintiff on October 1, 2007. This motion contained the sworn certifications required by 15 U.S.C. § 78u-4(a)(2). Additionally, the notice to members of the purported class, upon which Brahman Capital relies, was timely and adequate.

### 2. Largest Financial Interest

To determine the largest financial interest, the court looks to "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001). Brahman Capital's submissions indicate that from June 8, 2006 through July 31, 2007, Brahman Capital purchased 1,457,600 net shares of RAIT stocks, this represented a net expenditure of $50,341,314.58 and an approximate loss of $36,578,824.13. Based on the submission of the other movants, it is clear that Brahman Capital has the largest financial interest in the lawsuit.

### 3. Requirements of Rule 23

The final inquiry requires the Court to determine that Brahman Capital has made a *prima facie* showing that "the claims or defenses of [Brahman Capital] are typical of the claims or defenses of the class, and [Brahman Capital] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); Cendant, 264 F.3d at 263 (discussing need of movant to only make a *prima facie* showing).

### a. Typical Claims

With respect to typicality, the inquiry is "whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based." Cendant, 264 F.3d at 265. (internal citations and quotations omitted). Brahman Capital's circumstances and legal claims are similar to the claims of the other plaintiffs. The claims and injuries of Brahman Capital, like those of the other plaintiffs, arise from the same alleged misconduct by RAIT (i.e. its failure to properly disclose its exposure to AHM). Furthermore, its legal claims, like those of the other plaintiffs, set forth violations of the federal securities laws, namely the Exchange Act.

### b. Adequately Protect

In determining adequacy, the question is whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." Id. (citing Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir.1988)). Brahman Capital, an institutional investor that has alleged significant losses, is the type of plaintiff that has both the ability and incentive to vigorously pursue the claims of the class. This analysis is consistent with the legislative history of the PSLRA that notes "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake. The claims of both types of class members generally will be typical." H.R. Conf. Rep. 104-327, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 737. In addition, Brahman Capital's choice of an experience class-action securities law firm as lead counsel supports the finding of Brahman Capital's adequacy.

Furthermore, based on Brahman Capital's submissions,[4] there is no indication that there is a conflict between the claims to be asserted by Brahman Capital and the rest of the class. Accordingly, for the reasons set forth above, the Court finds that Brahman Capital satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii) and, consequently, is entitled to the presumption that it is the most adequate plaintiff.

### 4. Rebutting the Presumption

This presumption, however, may be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interest of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  In considering objections by putative lead plaintiffs "the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job." Cendant, 264 F.3d at 268.

Here, the Iron Workers Group contends that Brahman Capital would not fairly and adequately protect the interest of the class because it has an interest that conflicts with those of other class members.  Specifically, the Iron Workers Group notes that in a registration statement filed on Form S-3 by Atlas Pipeline Partners, L.P. ("Atlas"), Brahman Capital is listed as a selling unitholder.  Furthermore, the Iron Workers Group contends that Atlas is a partnership whose founder, chief executive officer and chairman, Edward Cohen, is (a) the husband Betsy

---

[4]In determining, whether a movant is entitled to the rebuttable presumption set forth in 15 U.S.C. § 78u-4, a court only focuses on the materials provided by the movant.  Objections to the adequacy of any movant by another putative lead plaintiff are only evaluated by a court in determining whether the presumption has been rebutted.  See Cendant, 264 F.3d at 264.

Cohen, the chairman, trustee, and until January 2006 chief executive officer of RAIT, and (b) the father to Daniel Cohen, the chief executive offer of RAIT from January 2006.  Both Betsy Cohen and Daniel Cohen are defendants in this matter.  Additionally, the Iron Workers Group alleges that Jonathan. Cohen, son of Edward and Betsy Cohen is a vice-chairman of Atlas as well as an officer and director of RAIT.  Accordingly, the Iron Workers Group contend that because of the close affiliation of Brahman Capital with the interests of the Cohen family and its interest in Atlas, which exceed $40 million, Brahman Capital has a conflict that disqualifies it  from acting as lead plaintiff.

Although the Iron Workers Groups' allegations do indicate a potential conflict of interest, the alleged conflict is insufficient to rebut the presumption that the Brahman Capital is the most adequate plaintiff.  In In re Cendant Corp. Litigation, the Third Circuit held that the lead plaintiff, who held a substantial investment in the defendant corporation during the litigation, was not disqualified from as acting as lead plaintiff.  Id. at 244.  The Third Circuit reasoned that by establishing a preference for institutional investors, who often hold a large stake in defendant corporations prior and during litigation, Congress "must have thought that the situation present here does not inherently create an unacceptable conflict of interest."  Id.  Applying this principle to the present conflict, the existence of a financial interest by Brahman Capital in a non-defendant corporation is clearly not sufficient to rebut the presumption that Brahman Capital is the most adequate plaintiff.  Furthermore, neither the alleged familial relationship between the principals of RAIT and Atlas nor the potential negative economic consequence to Brahman Capital's financial interest in Atlas are sufficiently substantial enough to support the disqualification of Brahman Capital.

C. Motions to Appoint Lead Counsel

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Cendant, 264 F.3d at 276. Accordingly, it is not a court's responsibility to make the choice itself, but rather to employ a deferential standard and determine whether judicial intervention is "necessary to protect the interest of the plaintiff class." Id. Applying this standard, Brahman Capital's choice of Bernstein Litowitz as lead counsel is reasonable. Based upon Bernstein Litowitz resume and its history of prosecuting various large securities class actions, including In re Cendant Corp. Litigation, Brahman Capital's choice of Bernstein Litowitz, is reasonable.

Accordingly, this 25th of October 2007, upon consideration of the motions, briefs and oral arguments presented by the various movants in this matter and for the reasons set forth above, the following is hereby ORDERED:

1. Iron Workers Local No. 25 Pension Fund, Sonny Bhakta and the Pistilli Family's Motion for Consolidation, Appointment as Lead Plaintiff and to Approve Lead Plaintiff's Selection of Counsel (Doc. No. 8) is DENIED; Stevens Group's Motion to Consolidate Related Cases, For Appointment of Lead Plaintiff and for Approval of Its Choice of Counsel as Lead and Liaison Counsel for the Class (Doc. No. 9) is DENIED; Motion of Employees' Retirement System of the State of Rhode Island for Consolidation of the Related Actions, Appointment as Lead Plaintiff, and for Approval of Its Selection of Lead Counsel (Doc. No. 10) is DENIED; Motion of the LVC Group for Consolidation, for Their Appointment as Lead Plaintiff and for Approval of Lead Plaintiffs' Selection of Co-Lead Counsel (Doc. No. 12) is DENIED and Motion of Brahman Capital Corporation for Appointment as Lead Plaintiff, Approval of Its Selection of Counsel as Lead Counsel for the Class, and Consolidation of all Related Cases (Doc. No. 13) is GRANTED.

2. The Court hereby consolidates the following matters Civil Action Nos. 07-3236, 07-3405, 07-3406, 07-3478, 07-3497, 07-3551, 07-3574 and 07-3831 for all purposes including,

but not limited to, discovery, pre-trial proceedings and trial proceedings, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure under the following caption:

| | | |
|---|---|---|
| IN RE RAIT FINANCIAL TRUST | : | Master File |
| SECURITIES LITIGATION | : | No 2:07-cv-03148-LDD |
| | : | |

3.    The Clerk of the Court is directed to close Civil Action Nos. 07-3236, 07-3405, 07-3406, 07-3478, 07-3497, 07-3551, 07-3574 and 07-3831 for statistical purposes.

4.    Each new case that arises out of the subject matter of the consolidated action which is filed in this Court or transferred to this Court, shall be consolidated with the consolidated action and this Order shall apply thereto, unless a party object to the consolidation, as provided for herein, or any provision of this Order, within (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application. Nothing in the foregoing shall be construed as a waiver of defendant's right to object to consolidation of any subsequently-filed or transferred related action.

5.    Brahman Capital is APPOINTED to serve as lead plaintiff.

6.    Brahman Capital's selection of lead counsel is APPROVED, and Bernstein Litowitz Berger & Grossman LLP is APPOINTED as lead counsel for the class.

7.    Lead counsel shall file consolidated amended complaint by no later than November 26, 2007 and shall serve this consolidated amended complaint on defendants no later than December 17, 2007.

8.    Lead counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom lead counsel shall designate:
        a.    to coordinate the briefing and argument of motions;
        b.    to coordinate the conduct of discovery proceedings;
        c.    to coordinate the examination of witnesses in depositions;
        d.    to coordinate the selection of counsel to act as spokesperson at pretrial conferences;
        e.    to call meetings of plaintiffs' counsel as they deem necessary and appropriate from time to time;
        f.    to coordinate all settlement negotiations with counsel for defendants;
        g.    to coordinate and direct the pretrial discovery proceedings and the preparations for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and
        h.    to supervise any other matters concerning the prosecution, resolution or

9

settlement of the consolidated action.

9.      No motion, request for discovery, or other pretrial proceeding shall be initiated or filed by any plaintiff without the approval of lead counsel, so as to prevent duplicative pleadings or discovery by plaintiffs.  No settlement negotiations shall be conducted without the approval of lead counsel.

10.     Lead counsel shall have the responsibility of receiving and disseminating the Court's orders and notices.

11.     Lead counsel shall be the contact between plaintiffs' counsel and defendants' counsel, as well as the spokesperson for plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

BY THE COURT:

/S/LEGROME D. DAVIS

_____Legrome D. Davis, J.

10

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VINCENT VINCI, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-1639 (RJL) |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION (*operating as Fannie Mae*), FRANKLIN RAINES, J. TIMOTHY HOWARD, and LEANNE G. SPENCER, | ) ) ) ) | |
| Defendants. | ) ) | |
| ANNE E. FLYNN and ROBERT L. GARBER, *as Custodian for Michael Saul Garber, UTMA-PA*, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:04-CV-1843 (RJL) |
| FANNIE MAE (*f/k/a Federal National Home Loan Mortgage Corpration*), J. TIMOTHY HOWARD, FRANKLIN D. RAINES, and DANIEL H. MUDD, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF COMINVEST ASSET MANAGEMENT GMBH'S MOTION TO CONSOLIDATE ACTIONS, TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL, AND IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**

# TABLE OF CONTENTS

Introduction .......................................................................................................................... 2

Procedural History ............................................................................................................... 5

Argument .............................................................................................................................. 7

   I.  The PSLRA Prescribes The Grounds For Lead Plaintiff Selection ................................ 7

   II. Cominvest Is The Presumptive Most Adequate Lead Plaintiff ...................................... 8

      A.  Cominvest Filed a Timely Lead Plaintiff Motion ..................................................... 8

      B.  Cominvest, Not Ohio, Has the Largest Financial Interest in this Litigation ............ 9

         1.  Ohio Did Not Calculate its Reported Losses Properly ........................................ 9

         2.  Ohio Did Not Apply the Statutory Set-Off Price for
            Valuing Retained Shares .......................................................................... 13

         3.  Ohio's Trade Information is Unreliable .............................................................. 15

      C.  Cominvest Has Met Its *Prima Facie* Burden Under Rule 23 .................................. 16

      D.  Ohio Cannot Adequately Serve As Lead Plaintiff .................................................. 18

Conclusion .......................................................................................................................... 21

## TABLE OF AUTHORITIES

### CASES

Bell v. Ascendant Solutions, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS
6850, at *16-17 (N.D. Tex. Apr. 17, 2002) ................................................. 18

Brendsel v. Office of Federal Housing Enterprise Oversight,
339 F.Supp.2d 52, 56 (D.D.C. 2004)......................................................... 20

Bynum v. District of Columbia, 217 F.R.D. 43, 47 (D.D.C. 2003)......................................... 17

Conway Inv. Club v. Corinthian Colls., Inc., No. 2:04-cv-05025,
slip op. at 1 (C.D. Cal. Sept. 7, 2004)....................................................... 18

Curtis v. BEA Systems, Inc., No. C 04-2275 SI, slip op. at 1
(N.D. Cal. Sept. 24, 2004) ..................................................................... 18

Friends of the Ariel Center v. Fed. Nat'l Mortgage Ass'n, No. 04-CV-1645 (RJL)................ 8

Flynn and Garber v. Fed. Nat'l Mortgage Ass'n, et al., No. 04-CV-1843 (RJL) .................... 6-7, 8

In re Cavanaugh, 306 F.3d 726, 730, 732, n. 4 (9th Cir. 2002)................................ 7, 13, 16

In re Cendant Corp. Litig., 264 F.3d 201, 242, 265, n.24 (3d Cir. 2001),
cert. denied sub nom. 535 U.S. 929 (2002) ................................................ 10, 17

In Re Fed. Home Loan Mortgage Corp. Sec. & Der. Litig., MDL-1584 (S.D.N.Y.)................ 19

In re Goodyear Tire & Rubber Co. Sec. Litig., No. 5:03CV2166,
slip op. at 10 (N.D. Ohio May 12, 2004)..................................................... 18

In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 45 (D. Mass. 2001) ........................ 18

In re MicroStrategy Inc., Sec. Litig., 110 F. Supp. 2d 427, 433-34 (E.D. Va. 2000) .............. 14, 15, 16

In re Party City Secs. Litig., 189 F.R.D. 91, 94, 106 (D.N.J. 1999)......................... 8, 14, 16

In re: Royal Dutch/Shell Transport Securities Litigation, Civ. No: 04-cv-374
4, 11    (D.N.J. Jan. 29, 2004)................................................................ 4, 11

In re Safeguard Scientifics, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003)...................... 16

ii

In re Turkcell Iletisim Hizmetler, A.S. Securities Litigation,
209 F.R.D. 353, 361 (S.D.N.Y. 2002) ......................................................... 18

In re Versata, Inc. Sec. Litig., 2001 U.S. Dist. LEXIS 24270, at *23-24
(N.D. Cal. Aug. 17, 2001) ......................................................................... 18

In re Williams Sec. Litig., Civ. No. 02-CV-72(H)M, slip op. at 9, 10
(N.D. Okla. Jul. 8, 2002) ................................................................ 14, 15-16

James v. Nico Energy Corp., 838 F.2d 1365, 1371 (5th Cir. 1988) ......................... 10

Lax v. First Merchs. Acceptance Corp., No. 97 C 2715, 1997 U.S. Dist. LEXIS
11866, at *15-16 (N.D. Ill. Aug. 6, 1997) ..................................................... 8

Newman v. Eagle Bldg. Techs., 209 F.R.D. 499, 505 (S.D. Fla. 2002) ..................... 18

Richardson v. MacArthur, 451 F.2d 35, 44 (10th Cir. 1971) ................................. 11

Rolf v. Blyth, Eastman Dillon & Co., 637 F.2d 77, 85 (2d Cir. 1980) ..................... 11

Sofran v. Labranche, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ................................. 16

South Ferry LP #2 v. Killinger, CV 04-1599C, slip op. at 1 18
(W.D. Wash. Nov. 30, 2004) ....................................................................... 18

Steiner v. Frankino, No. 98-CV-0264, 1998 U.S. Dist. LEXIS 21804, at *12
(N.D. Ohio July 16, 1998) ........................................................................ 14

Vangsgard v. ARIBA, Inc., No. C-03-00277 JF, slip op. at 10-11
(N.D. Cal. July 11, 2003) ......................................................................... 18

Vinci v. Federal National Mortgage Association, No. 04-CV-1639
(D.D.C. Sept. 23, 2004) (RJL) ..................................................................... 5

Woods v. Barnett Bank, 765 F.2d 1004, 1013 (11th Cir. 1985) ............................... 10

STATUTES

12 U.S.C. § 4602(b)(4) ............................................................................... 19
15 U.S.C. §78u-4(a) ................................................................................. 3, 7
15 U.S.C. §78u-4(e) .......................................................................... 3, 4, 10, 14
Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
109 Stat. 737 (1995) ................................................................................. 2

iii

OTHER AUTHORITIES

12 CFR part 1720, Appendix B (Purpose – A.1.)......................................................................21

Fed.R.Civ.P. 23...........................................................................................................3, 16, 17

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VINCENT VINCI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION (*operating as Fannie Mae*), FRANKLIN RAINES, J. TIMOTHY HOWARD, and LEANNE G. SPENCER,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:04-CV-1639 (RJL) |
| ANNE E. FLYNN and ROBERT L. GARBER, *as Custodian for Michael Saul Garber, UTMA-PA*, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FANNIE MAE (*f/k/a Federal National Home Loan Mortgage Corpration*), J. TIMOTHY HOWARD, FRANKLIN D. RAINES, and DANIEL H. MUDD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:04-CV-1843 (RJL) |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF COMINVEST ASSET MANAGEMENT GMBH'S MOTION TO CONSOLIDATE ACTIONS, TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL, AND IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS

Proposed lead plaintiff Cominvest Asset Management GmbH ("Cominvest") respectfully

–1–

submits this Memorandum of Law in further support of its motion to consolidate actions, for

appointment as lead plaintiff and for approval of its selection of lead counsel and liaison counsel,

and in opposition to the motions for appointment as lead plaintiffs submitted by (i) Ohio Public

Employees Retirement System ("OPERS"), State Teachers Retirement System of Ohio ("STRS")

and Ohio Bureau of Workers' Compensation ("BWC") (collectively, "Ohio"); and (ii) Cafco-

Large Cap Funds, L.P. and Jeff Pechan (collectively, the "Cafco Pechan Movants").

## INTRODUCTION

Ohio's allegations of "loss" in this action cannot be substantiated. Specifically, Ohio

*claims* that it suffered losses of "approximately $38 million" in this action. The truth is that

Ohio's financial interest is closer to $2.6 million. *See, infra,* § II.B.1-2; Exhibit A (Affidavit of

Richard Higgins at Exhibit RSH-6) to Charrow Decl. 2.[1] The Cafco Pechan Movants claim

collective losses of $265,139. Because Cominvest has suffered losses exceeding $4.3 million as

a direct result of Class Period investments in Federal National Mortgage Association ("Fannie

Mae") (*see* Exhibits A and C to Charrow Decl.[2]), Cominvest has the largest financial interest in

the outcome of this litigation.

All movants recognize the mandatory criteria of the Private Securities Litigation Reform

Act of 1995 (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified as amended in

scattered sections of 15 U.S.C.), in governing how district courts select lead plaintiff. The

---

[1]    Declaration of Robert P. Charrow In Further Support Of Cominvest Asset Management GmBH's Motion To Consolidate Actions, To Be Appointed Lead Plaintiff And For Approval Of Lead Plaintiff's Selection Of Lead Counsel And Liaison Counsel, and In Opposition To Competing Lead Plaintiff Motions ("Charrow Decl. 2").

[2]    Declaration Of Robert P. Charrow In Support Of Motion Of Cominvest Asset Management GmBH To Consolidate Actions, To Be Appointed Lead Plaintiff and For Approval Of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel ("Charrow Decl.").

PSLRA is quite straightforward. District courts must appoint as lead plaintiff the movant with the largest financial interest in the outcome of the litigation that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B).

Ohio's papers in support of its petition to serve as lead plaintiff are inaccurate in several significant ways. First, Ohio deviated from the standard method for calculating out-of-pocket losses, including the way Ohio has calculated its own losses in the past. Second, Ohio, instead of applying the set-off price mandated by the PSLRA for valuing shares retained at the end of the Class Period, hand-picked a set-off price of $63.40 – the lowest price Fannie Mae stock reached between September 23, 2004 and November 22, 2004. This served to inflate Ohio's purported out-of-pocket losses, which all movants agree is determinative of one's financial interest.

Plaintiffs and courts everywhere compare out-of-pocket financial losses which are *always* computed by netting total costs from Class Period purchases and total proceeds from Class Period sales, and then subtracting the total value of shares retained at the end of the Class Period using a statutory set-off price mandated in the PSLRA (*see* 15 U.S.C. §78u-4(e)(1)). Cominvest and the Cafco Pechan Movants calculated their financial losses in precisely this manner. Ohio, at least in this case, did not. Instead, Ohio ignored all gains it enjoyed on shares purchased during the Class Period (via a corresponding sale or set-off).[3] Thus, the purported losses Ohio represents for its three funds are grossly inaccurate.

Ohio also has disregarded the PSLRA's requirement that plaintiffs apply a prescribed set-

---

[3]    In order to present actual out-of-pocket losses – which serve as the standard measuring stick – it is both logical and necessary to offset total costs with total gains. *See* Exhibits A (Declaration of Richard Higgins) and B (Declaration of David Fuller) to Charrow Decl. 2

off price to determine the value of shares retained at the end of the Class Period. Under the

PSLRA, the proper set-off price for valuing retained shares is "the mean trading price of that

security during the 90-day period beginning on the date on which the information correcting the

misstatement or omission that is the basis for the action is disseminated to the market." 15

U.S.C. §78u-4(e)(1). Consistent with this requirement, Cominvest and the Cafco Pechan

Movants applied essentially the same statutory mean trading price to set-off retained shares.

Ohio, in contrast, chose as its set-off price the lowest price at which Fannie Mae common stock

traded during the applicable 90-day period. By selecting *the lowest price*, rather than "*the mean

trading price*," Ohio greatly lowered the value of its retained shares, thereby inflating its losses.

Ohio's methods of ascertaining its losses in this case is inconsistent with Ohio's past

practices in other cases where[4] Ohio calculated its financial losses correctly, in the precise

manner that Cominvest and the Cafco Pechan Movants calculated losses here. *See* Exhibit C to

Charrow Decl. 2. More specifically, in the *Shell Case*, Ohio netted its total costs from class

period purchases with all proceeds, including all gains, from shares sold during the class period

and shares retained at the end of the class period. *See Id.* Ohio also managed in the *Shell Case* to

properly compute and apply the correct PSLRA set-off price for valuing shares retained at the

close of the class period. *See Id.*

Apart from the sheer magnitude of Ohio's miscalculations and the credibility questions

raised by this fact alone, an overwhelming number of Ohio's Fannie Mae stock transactions fall

outside the applicable trading ranges for certain days or did not occur on trading days. *See, infra,*

---

[4]    *In re: Royal Dutch/Shell Transport Securities Litigation*, Civ. No: 04-cv-374 (D.N.J. Jan. 29, 2004) ("*Shell Case*").

§ II.B.3. Ohio's lead plaintiff petition is such that the grounds for this Court to reject it, both legally and factually, are compelling.

In contrast to Ohio, Cominvest, a sophisticated mutual fund manager which purchased a significant number of shares in Fannie Mae stock during the Class Period, has accurately demonstrated that it has the largest financial interest and has sufficiently satisfied its burden at this juncture of satisfying all requirements of Rule 23. In support of its timely lead plaintiff motion, Cominvest has executed a certification which accurately details its Class Period transactions in Fannie Mae as well as its desire to serve in a representative capacity. Furthermore, Cominvest has selected and retained competent and experienced counsel to represent it and the class. Accordingly, Cominvest is the presumptive most adequate plaintiff and should be appointed as lead plaintiff.

## PROCEDURAL HISTORY

On September 23, 2004, the first putative class action complaint – *Vinci v. Federal National Mortgage Association*, No. 04-CV-1639 (D.D.C. Sept. 23, 2004) (RJL) ("*Vinci Action*") – alleging violations of federal securities laws by Fannie Mae, Franklin Raines, J. Timothy Howard, and Leanne G. Spencer (collectively, "Fannie Mae Defendants") was filed in this District and assigned to this Court. Subsequently, nine putative class action complaints were filed in the District and assigned to Your Honor. In all, ten related securities class actions were filed in this District, asserting similar allegations against the Fannie Mae Defendants, with class periods ranging from January 13, 2000 through September 22, 2004, inclusive (collectively, "DC

–5–

Cases").[5]  The law firm of Cohen Milstein Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") –

Ohio's proposed "Local Counsel" – filed each of the DC Cases as local counsel.

On November 22, 2004, in compliance with notice issued pursuant to the PSLRA,

Cominvest, Ohio and the Cafco Pechan Movants each filed motions with this Court seeking their

appointment as lead plaintiff and approval of their selection of lead counsel.[6]  On November 30,

2004, this Court conducted a status conference ("Status Conference") at which the parties

discussed matters including, consolidation, lead plaintiff and general management of the various

cases.

At the Status Conference, the parties agreed that consolidation of the DC Cases was

appropriate and indicated their intention to stipulate to consolidation.[7]  The parties also

discussed during the Status Conference some jurisdiction issues and it became apparent that

Ohio, through its counsel, believes that the actions against Fannie Mae should all be transferred

to the Southern District of Ohio.  *See* Hearing Transcript from November 30, 2004 Status

Conference (attached as Exhibit D to Charrow Decl. 2), Record at 42, ln. 21 ("the case belongs in

Ohio").  On the heels of this statement, on December 3, 2004, Cohen Milstein filed Notices of

Voluntary Dismissals for all, except the *Vinci* Action, of the DC Cases.  One action, *Flynn and

Garber v. Federal National Mortgage Association, et al.*, No. 04-CV-1843 (RJL) ("*Flynn

---

[5]    Moreover, two similar complaints were filed in the Southern District of New York and one in the Southern District of Ohio.

[6]    Additionally, Cominvest and Ohio each filed a lead plaintiff motion in the Southern District of New York; Ohio filed a lead plaintiff motion in the Southern District of Ohio.

[7]    The parties have indeed stipulated to consolidation of the DC Cases (still pending) and are submitting a Stipulation.

Action"), appears to have been dismissed without authorization.  Indeed, the *Flynn* Action had

been filed by the Law Office of Alfred G. Yates Jr., P.C. (counsel for the Cafco Pechan

Movants).  The dismissal of the *Flynn* Action has since been withdrawn.

## ARGUMENT

## I.      The PSLRA Prescribes The Grounds For Lead Plaintiff Selection

PSLRA Section 21D provides that, in securities class actions, courts "shall appoint as

lead plaintiff the member or members of the purported plaintiff class that the court determines to

be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-

4(a)(3)(B)(i).  In selecting the "most adequate plaintiff," the PSLRA requires that:

> [T]he court **shall** adopt a presumption that the most adequate plaintiff . . .
> is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a motion in response to a notice ...;
>
> (bb)    in the determination of the court, has **the largest financial interest**
> in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).  The Ninth Circuit, one of the only appellate

courts to address the PSLRA's lead plaintiff provisions, has held:

> [T]he district court must compare the financial stakes of the various plaintiffs and
> determine which one has the most to gain from the lawsuit.  It must then focus its
> attention on *that* plaintiff and determine, based on the information he has provided
> in his pleadings and declarations, whether he satisfies the requirements of Rule
> 23(a), in particular those of "typicality" and "adequacy."  If the plaintiff with the
> largest financial stake in the controversy provides information that satisfies these
> requirements, he becomes the presumptively most adequate plaintiff.

*In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

## II.     Cominvest Is The Presumptive Most Adequate Lead Plaintiff

As detailed herein, only Cominvest can accurately claim to have the largest financial interest in this litigation.  Accordingly, the remainder of this Court's analysis pertaining to identifying the most adequate plaintiff must focus only on whether Cominvest is typical of the class it seeks to represent and whether Cominvest can provide adequate representation of the class.  *Id.*  Through Cominvest's opening motion, memoranda and all accompanying documents in support, Cominvest has satisfied the typicality and adequacy requirements of Rule 23.  As the presumptive most adequate plaintiff, Cominvest should be appointed as lead plaintiff.

### A.     Cominvest Filed a Timely Lead Plaintiff Motion

In response to statutory notice issued on September 23, 2004, Cominvest selected and retained competent and experienced counsel to prepare and file, on its behalf, a motion seeking its appointment as lead plaintiff in the actions now pending in this District, the District of Columbia and the Southern District of Ohio.  In support of this motion timely filed on November 22, 2004, Cominvest submitted a sworn certification detailing all of its transactions in Fannie Mae for the period between January 13, 2000 through September 22, 2004 (the "Class Period").[8] As a result of its Class Period investments in Fannie Mae, Cominvest suffered losses in excess of $4.3 million.  Cominvest, through its certification and motion, has sufficiently demonstrated

---

[8]     At least two actions filed in the District Court for the District of Columbia asserted claims for this period. *See Friends of the Ariel Center v. Fed. Nat'l Mortgage Ass'n,* No. 04-CV-1645 (RJL); *Flynn v. Fed. Nat'l Mortgage Ass'n,* No. 04-CV-1843 (RJL) (still pending).  Furthermore, all lead plaintiff movants reference this Class Period and, accordingly, it should be utilized for determining which movant has the largest financial loss. *See In re Party City Secs. Litig.,* 189 F.R.D. 91, 94 (D.N.J. 1999) ("The Catanzarite Action is relied upon for the purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants."); *Lax v. First Merchs. Acceptance Corp.,* No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *15-16 (N.D. Ill. Aug. 6, 1997) (Court used largest class period for the purposes of determining which movant had the largest financial interest).

its desire to seek lead plaintiff status and commitment to fulfill the important responsibilities attendant to that role.

### B.      Cominvest, Not Ohio, Has the Largest Financial Interest in this Litigation

The gist of the claims which all plaintiffs, including Ohio, have asserted in this action is that defendants manipulated Fannie Mae's earnings numbers.  Ironically, this same theme applies to Ohio.  By manipulating the method for computing out-of-pocket losses as well as applying too-low a set-off price for retained shares, Ohio has miscalculated its losses to be $38 million.  Properly computed, Ohio in truth has suffered losses of approximately $2.6 million.  *See* Exhibits A (Affidavit of Richard Higgins) and B (Declaration of David Fuller) to Charrow Decl. 2.  These erroneous calculations should be viewed in the context that Ohio, earlier this year, correctly calculated and presented its out-of-pocket losses by properly recognizing all gains and by using the PSLRA set-off price to properly value retained shares.  *See* Exhibit C to Charrow Decl. 2.  In addition, Ohio's underlying trade information submitted in support of its lead plaintiff application appears to be unreliable.  Over one million shares purportedly purchased and sold by Ohio either fell outside the applicable daily (high to low) trading range or occurred on non-trading days.

Because no movant suffered out-of-pocket losses greater than Cominvest's $4.3 million loss, Cominvest has the largest financial interest in the outcome of this litigation.[2]

### 1.      Ohio did not Calculate its Reported Losses Properly

The accepted method by which plaintiffs and courts alike calculate out-of-pocket losses is to net the total costs for class period purchases and the total proceeds from class period sales, *less*

–9–

the value of the shares retained at the end of the class period.[10] This method is straight-forward

and consistent with the PSLRA, which provides a cap on recoverable damages. *See* 15 U.S.C.

§78u-4(e)(1).

Nevertheless, Ohio calculated its losses in this action in such a manner that is neither

logical nor supportable. Rather than offsetting all losses with all gains – as did Cominvest –

Ohio completely ignored all gains from shares sold during the Class Period or retained at the end

of the Class Period.[11] In other words, for all Ohio purchases and sales of shares during the Class

Period, whenever that purchase and sale transaction resulted in a gain, Ohio computed that gain

as **zero**.[12] For all purchases and sales resulting in a loss, Ohio included that loss in its total.

Similarly, for gains from shares Ohio retained at the end of the Class Period (when set-off price

for shares retained is greater than price at which shares were purchased), Ohio treated that gain as

---

[9]    The Cafco Pechan Movants claim collective losses of $265,139.

[10]    The purpose of calculating losses in this manner is to attempt to ascertain, at this preliminary stage, a movant's out-of-pocket losses from class period transactions in a particular stock. *In re Cendant Corp. Litig.*, 264 F.3d 201, 242, n.24 (3d Cir. 2001), *cert. denied sub nom.* 535 U.S. 929 (2002) ("The proper measure of damages to reflect the loss proximately caused by the defendants' deceit is the out-of-pocket rule. That rule is the traditional measure of damages in a Rule 10b-5 action.") (internal citation omitted); *Woods v. Barnett Bank*, 765 F.2d 1004, 1013 (11th Cir. 1985) (Generally, the appropriate measure of actual damages in a Rule 10b-5 case is out-of-pocket loss); *James v. Nico Energy Corp.*, 838 F.2d 1365, 1371 (5th Cir. 1988) (holding that in a typical 10b-5 case involving defrauded buyers, recovery for damages is allowed under an out-of-pocket rule).

[11]    Both Ohio and Cominvest employed a first-in, first-out ("FIFO") approach. Under FIFO, any shares held at the beginning of the Class Period are first offset with Class Period sales. These Class Period sales (which are matched with pre-Class Period purchases) and the resulting proceeds are not factored into a movant's total losses.

[12]    Indeed, Ohio's loss charts submitted with its initial motion (*see* Exhibit C to Declaration of James R. Cummins) provide two result columns: "Losses (Gains) on Sales" and "Losses (Gains) on Holdings." However, whenever there are gains – and there are plenty -- those gains are reflected by "0" or "–." Thus, even a cursory review of Ohio's loss charts for calculating losses reveals that, although Ohio purports to recognize gains, it does not.

–10–

**zero**. But when the purchase price exceeded the set-off price, resulting in a loss, Ohio included that loss total.

By definition, Ohio's purported losses are not true out-of-pocket losses since Ohio excluded all gains. *See Richardson v. MacArthur*, 451 F.2d 35, 44 (10th Cir. 1971) (holding that a plaintiff who sells a portion of stock at a profit "should not be allowed to retain this profit in silence while pleading to be made whole for his losses").[13]  Ohio's method for calculating out-of-pocket losses is improper. By failing to take into account its trading gains, Ohio has erroneously inflated its purported losses.[14]

Ohio's manipulation of its losses should preclude Ohio from serving as lead plaintiff. Even more disturbing is that Ohio calculated its losses properly earlier this year in the *Shell Case*, a case in which it was also represented by Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") (Ohio's counsel in this action). *See* Exhibit C, attached to Charrow Decl. 2  The fact that Ohio previously calculated its losses properly in the *Shell Case* (and in the same manner that Cominvest and the Cafco Pechan Movants calculate their losses in this case) militates against this Court accepting Ohio's reported losses on their face. To best illustrate how Ohio treated similar transactions differently in the *Shell Case* and in the instant case, below are excerpts from the loss charts Ohio provided in both cases:

---

[13]   *See also Rolf v. Blyth, Eastman Dillon & Co.*, 637 F.2d 77, 85 (2d Cir. 1980) (holding damages in an action for fraud are limited to actual losses, thus, damage computations "cannot restore a plaintiff to a better position than he would have been in if the fraud had not occurred") (internal citations omitted ).

[14]   These inflated losses are not the whole story. By applying an improper and too-low set-off price, Ohio further artificially inflated its losses. *See, infra,* § II.B.3.

# FANNIE MAE

## Public Employees Retirement System of Ohio (OPERS)

| PURCHASES | | | | ... | Holding Price *~ $63.30 Losses (Gains) on Holdings | | |
|---|---|---|---|---|---|---|---|
| Date | Shares | Price per Share | Cost | | Per Share | Shares | Losses |
| 4/4/00 | 60,000 | $58.979 | $3,538,752 | | -$4.42 | 60,000 | - |
| 11/7/00 | 13,900 | $75.877 | $1,054,685 | | $12.48 | 13,900 | $173,425 |

## State Teachers Retirement System (STRS)

| PURCHASES | | | | ... | Holding Price *~ $63.30 Losses (Gains) on Holdings | | |
|---|---|---|---|---|---|---|---|
| Date | Shares | Price per Share | Cost | | Per Share | Shares | Losses |
| 8/10/00 | 45,000 | $53.986 | $2,429,375 | | -$9.41 | 45,000 | $0 |
| 12/7/00 | 8,600 | $82.000 | $705,200 | | $18.60 | 8,600 | $159,960 |

## State of Ohio Bureau of Workers Compensation (BWC)

| PURCHASES | | | | SALES | | | | Losses (Gains) on Sales | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Shares | Price per Share | Cost | Date | Shares | Price per Share | Proceeds | Per Share | Shares | Losses |
| 3/17/00 | 38,115 | $60.79 | $2,317,087 | 1/24/01 | 38,115 | $75.18 | $2,865,448 | -14.387 | 38,115 | $0 |
| 7/26/00 | 72,000 | $52.91 | $3,809,549 | 5/14/01 | 72,000 | $78.29 | $5,636,988 | -25.381 | 72,000 | $0 |
| 6/22/01 | 15,000 | $86.80 | $1,301,981 | 7/31/02 | 15,000 | $73.61 | $1,104,203 | 13.185 | 15,000 | $197,778 |
| 7/17/01 | 20,000 | $86.30 | $1,726,034 | 10/22/03 | 20,000 | $74.03 | $1,480,614 | 12.271 | 20,000 | $245,42 |

–12–

### *SHELL* CASE

**Class Period:** 4/8/99-1/9/04
**$48.298 PPS = Avg. Price 1/10/04-3/24/04**

**Public Employees Retirement System of Ohio (OPERS)**

| Trade Date | Transaction Type | # Shares Bought | # Shares Sold | # Shares Remaining | Price/ Share | (Cost) / Proceeds |
|---|---|---|---|---|---|---|
| 9/28/99 | Purchase | 300,000 | | 1,000,400 | $58.4126 | ($17,523,780.0000) |
| 9/26/01 | Sale | | (377,095) | 1,249,178 | | $17,639,787.6195 |

**State Teachers Retirement System (STRS)**

| Trade Date | Transaction Type | # Shares Bought | # Shares Sold | # Shares Remaining | Price/ Share | (Cost) / Proceeds |
|---|---|---|---|---|---|---|
| 2/4/00 | Purchase | 141,000 | 1,064,900 | 1064,900 | $53.2903 | ($7,513,932.3000) |
| 7/19/02 | Sale | | (878,357) | 755,128 | $42.3301 | $37,180,939.6457 |

Ohio's calculation of losses in the *Shell Case* confirms that Ohio knew (and knows) that one must offset gains from losses in order accurately to show true out-of-pocket losses. Ohio would be hard-pressed to argue against the notion that netting losses **and gains** is the only rational way to accurately compute out-of-pocket losses. *See Cavanaugh*, 306 F. 3d at 730, n.4 (Courts must utilize "accounting methods that are both rational and consistently applied" in determining which movant has the largest financial interest).

### 2. Ohio Did Not Apply the Statutory Set-Off Price for Valuing Retained Shares

To properly measure a movant's financial interest, it is necessary to assign a value to shares which were purchased during the Class Period and retained at the end of the Class Period. Otherwise, those shares would be valued at zero while the underlying costs for their purchase

would be included in their entirety as a loss.  For purposes of calculating damages, the PSLRA

clearly provides that:

> (e) Limitation on Damages. –
>
> (1) In general. – . . . in any private action arising under this title in which
> the plaintiff seeks to establish damages by reference to the market price of a
> security, **the award of damages to the plaintiff shall not exceed the difference
> between the purchase or sale price paid or received,** as appropriate, by the
> plaintiff for the subject security **and the mean trading price of that security
> during the 90-day period beginning on the date on which the information
> correcting the misstatement or omission that is the basis for the action is
> disseminated** to the market.

15 U.S.C. §78u-4(e).

Accordingly, the PSLRA defines how to calculate the proper set-off price for valuing

shares held. *In re Williams Sec. Litig.*, Civ. No. 02-CV-72(H)M, slip op. at 9 (N.D. Okla. Jul. 8,

2002) (recognizing that 15 U.S.C. §78u-4(e) must be utilized for determining lead plaintiff's

financial interest) (attached as Exhibit E to Charrow Decl. 2); *In re MicroStrategy Inc., Sec.

Litig.*, 110 F. Supp. 2d 427, 433-34 (E.D. Va. 2000) (same); *Steiner v. Frankino,* No. 98-CV-

0264, 1998 U.S. Dist. LEXIS 21804, at *12 (N.D. Ohio July 16, 1998) (same); *In re Party City,*

189 F.R.D. at 106 (calculating financial interest based on 15 U.S.C. §78u-4(e)).  Nevertheless,

while Cominvest and the Cafco Pechan Movants apply the proper PSLRA set-off value for

retained shares,[15] Ohio uses a non-statutory, and too-low set-off price which effectively lowered

the value of shares retained, thereby inflating its losses.  Interestingly, rather than apply the

---

[15]   Cominvest applied the PSLRA set-off of $68.42, the mean average of Fannie Mae stock from September
23, 2004 through November 19, 2004 – the last trading day before the deadline for filing lead plaintiff motions.  *See*
Exhibit C to Charrow Decl. submitted in support of Cominvest's opening motion.  Similarly, the Cafco Pechan
Movants applied the PSLRA set-off of $68.5225 – the average closing price of Fannie Mae stock between
September 25, 2004 through November 19, 2004.  *See* Exhibit C to Declaration of Alfred G. Yates, Jr. In Support of
Motion of Cafco Pechan Movants For Consolidation, Appointment as Lead Plaintiffs, and For Approval of Selection

–14–

proper PSLRA set-off price, as it did in the *Shell Case*, Ohio chose a set-off price of $63.40 – the

lowest price Fannie Mae stock reached between September 23, 2004 and November 22, 2004.

*See* Exhibit F to Charrow Decl. 2

Because "a district court comparing movants' losses must ensure that each movant's loss

is calculated by reference to a common settle-out price," *In re MicroStrategy*, 110 F. Supp. 2d at

434, applying the PSLRA set-off value to Ohio's retained shares – which it must – lowers Ohio's

losses by $16,732,990 (Ohio's number of retained shares, 3,346,598, times the difference in the

PSLRA set-off price and the set-off price used by Ohio - $5).

Thus, by ignoring all gains from shares sold and retained and by applying the incorrect

set-off price for retained shares, Ohio has artificially inflated its total losses by over $35 million.

Ohio's real losses as a result of its transactions in Fannie Mae are approximately $2.6 million.

### 3. Ohio's Trade Information is Unreliable

Ohio has submitted sworn certifications of its funds which purport to detail purchase and

sale trades during the Class Period. However, on closer inspection, it appears that more than 1

million share transactions of Ohio fell outside the daily trading ranges on given days or, by virtue

of the transaction dates provided, occurred on non-trading days, *i.e.*, weekends. For ease of

reference, attached as Exhibit G to Charrow Decl. 2 is a chart which highlights the numerous

trades of Ohio which appear to be inconsistent.

While Ohio may attempt to regroup and submit corrected certifications to account for

these glaring inaccuracies, courts nevertheless have rejected movants whose trades and losses are

proven to be unreliable. See, e.g., *In re Williams Sec. Litig.*, slip op. at 10 ("Market Street's

of Co-Lead and Liaison Counsel.

original certification and loss calculation, unlike those of the other lead plaintiff movants, failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest"); *In re MicroStrategy*, 110 F. Supp. 2d at 436 (rejecting lead plaintiff applicant because the "evidence it submitted did not permit a confident conclusion that its [own] loss was as large as it averred"); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (noting "serious concerns with credibility" that originate from submitting faulty trading data).

## C. Cominvest Has Met Its *Prima Facie* Burden Under Rule 23

Once the Court has determined which movant has the largest financial loss – in this case, Cominvest – the PSLRA next instructs that the Court focus on *that* movant to determine whether it has made a *prima facie* showing of typicality and adequacy under Rule 23. *In re Cavanaugh*, 306 F.3d at 732. This next step in lead plaintiff selection process is non-adversarial in nature, with the Court relying on the presumptive lead plaintiff's initial filings and sworn certification. *Id.*

At this stage of the proceeding, Cominvest need only make a "preliminary showing" of typicality and adequacy. *Sofran v. Labranche*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004). "In fact, a 'wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification.'" *Sofran*, 220 F.R.D. at 402 (quoting *In re Party City*, 189 F.R.D. at 106).

Cominvest, a mutual fund manager based in Frankfurt, Germany, purchased 654,470 shares of Fannie Mae stock on the New York Stock Exchange. As beneficial owner of the Fannie Mae shares purchased during the relevant Class Period, Cominvest seeks to represent a class of purchasers of Fannie Mae securities which have identical, non-competing and non-

–16–

conflicting interests. Cominvest satisfies the typicality requirement because, just like all other class members, it purchased Fannie Mae stock during the Class Period, at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions, and suffered damages thereby. Thus, because Cominvest's claims are based on the same legal theories and arise from the same course of conduct and the same operative facts which damaged the entire class, Cominvest has satisfied the typicality requirement. *Bynum v. District of Columbia*, 217 F.R.D. 43, 47 (D.D.C. 2003).

Likewise, Cominvest is also an adequate lead plaintiff. A lead plaintiff satisfies adequacy under Rule 23 if: (1) there is no conflict between the interests of the class and the named representative; and (2) the representative is able to vigorously prosecute the interests of the class through qualified counsel. *Bynum,* 217 F.R.D. at 47. As the record reflects, Cominvest has taken significant steps to demonstrate its adequacy under Rule 23. Specifically, it has executed a certification which not only provides its Class Period transactions in Fannie Mae, but also expresses its willingness to serve as lead plaintiff and to protect the interests of the class. In response to the statutory notice issued in this action, Cominvest selected and retained competent counsel who prepared and filed a timely lead plaintiff motion on its behalf. Its counsel, attorneys at Schiffrin & Barroway, LLP and Greenberg Traurig LLP, are experienced counsel who are able to conduct this complex litigation in a professional manner. *See* Charrow Decl. at Exhibits D and E, firm biographies for both Schiffrin & Barroway, LLP and Greenberg Traurig LLP. Furthermore, Cominvest has negotiated a fee agreement with its counsel. *In re Cendant Corp. Litig.*, 264 F.3d at 265 ("[O]ne of the best ways for a court to ensure that it will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated

–17–

a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel.").

Moreover, the fact that Cominvest is a foreign institution in no way impedes its ability to serve as lead plaintiff - a point that counsel for Ohio (Berman DeValerio) is well-aware of as they have previously represented foreign lead plaintiffs with great success. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 45 (D. Mass. 2001) (appointing three foreign individuals residing in Germany, Amsterdam and Italy represented by Berman Devalerio as the only lead plaintiffs).[16]

As the movant with the largest financial interest in this litigation and having amply demonstrated its typicality and adequacy pursuant to Rule 23, Cominvest is the presumptive most adequate plaintiff and should be appointed lead plaintiff.

### D.    Ohio Cannot Adequately Serve As Lead Plaintiff

Ohio has asserted that due to its experience as lead plaintiff in the extant securities

---

[16]    *See also South Ferry LP #2 v. Killinger*, CV 04-1599C, slip op. at 1 (W.D. Wash. Nov. 30, 2004) (attached as Exhibit H to Charrow Decl. 2) (appointing German asset manager as lead plaintiff); *Curtis v. BEA Systems, Inc.*, No. C 04-2275 SI, slip op. at 1 (N.D. Cal. Sept. 24, 2004) (attached as Exhibit I to Charrow Decl. 2) (appointing Italian mutual fund manager as sole lead plaintiff); *Conway Inv. Club v. Corinthian Colls., Inc.*, No. 2:04-cv-05025, slip op. at 1 (C.D. Cal. Sept. 7, 2004) (attached as Exhibit J to Charrow Decl. 2) (appointing German asset manager as sole lead plaintiff); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, slip op. at 10 (N.D. Ohio May 12, 2004) (attached as Exhibit K to Charrow Decl. 2) (appointing Austrian fund manager as sole lead plaintiff and rejecting attacks based on fund's foreign domicile as "unsupportable"); *Vangsgard v. ARIBA, Inc.*, No. C-03-00277 JF, slip op. at 10-11 (N.D. Cal. July 11, 2003) (attached as Exhibit L to Charrow Decl. 2) (appointing Italian mutual fund manager as sole lead plaintiff); *In re Turkcell Iletisim Hizmetler, A.S. Securities Litigation*, 209 F.R.D. 353, 361 (S.D.N.Y. 2002) (appointing foreign institution as sole lead plaintiff); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) (appointing foreign plaintiff as lead plaintiff finding "[T]he emphasis that the opposing lead plaintiffs place on the fact that the [lead plaintiff movants] are located in Europe is of little significance."); *In re Versata, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 24270, at *23-24 (N.D. Cal. Aug. 17, 2001) (appointing Swiss investment firm and Mexican institution as lead plaintiffs); *Bell v. Ascendant Solutions*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850, at *16-17 (N.D. Tex. Apr. 17, 2002) (appointing group of plaintiffs from Israel, Germany and United States as lead plaintiffs, finding inclusion of foreign plaintiffs "helps create balance among the demographics of the lead plaintiff group members, and improves diversity of experience").

litigation against the Federal Home Loan Mortgage Corporation ("Freddie Mac"), it has the requisite expertise to act as lead plaintiff in the current litigation against Freddie Mac's statutory competitor, Fannie Mae. *See In Re Fed. Home Loan Mortgage Corp. Sec. & Der. Litig.*, MDL-1584 (S.D.N.Y.). The truth is that Ohio's status as lead plaintiff in the Freddie Mac litigation, as well as its unique relationship as a State actor with Fannie Mae, not only makes Ohio an atypical representative in this matter, but also one with inherent conflicts which counsel against lead plaintiff status. Fannie Mae and Freddie Mac compete with one another and suffer from different alleged legal infirmities – one stands accused of overstating income, the other of understating income. Establishing the same lead plaintiff to craft equitable remedies for these vying institutions would, for several reasons, ill-serve the profoundly different interests and classes at issue. This is especially so here where Congress went out of its way to create two independent entities to compete in the same sector. *See* 12 U.S.C. § 4602(b)(4) (requiring a study to ascertain, among other things, the impact on competition in the second mortgage markets should the government repeal Freddie Mac and Fannie Mae's congressional charters). In a myriad of ways, a common lead plaintiff subverts this congressional intent.

Litigation under the PSLRA is designed to recompense stockholders for losses occasioned by inappropriate corporate activity and to compel the corporation to adopt rules of governance to ensure that similar transgressions do not recur. Balancing the equitable against the monetary is difficult in the context of litigation but more difficult in the context of settlement where there might be a temptation to trade a larger settlement for less prophylaxes. Designating Ohio to serve as lead plaintiff in both the Fannie Mae and Freddie Mac cases would compound the potential for improper trade-offs with overlapping but significantly differing classes, to say

–19–

nothing of the potential for "cookie cutter" remedies to settle both litigations. The two suits also appear to be significantly different. Specifically, as the Court recognized in *Brendsel v. Office of Federal Housing Enterprise Oversight*, 339 F. Supp. 2d 52, 56 (D.D.C. 2004), "there might have been a significant understatement of income" that based on the allegations in the PSLRA suit and according to the complaint, "Freddie Mac issued restated financials for 2000, 2001, and 2002 reflecting [a] net increase of five billion dollars in income." Freddie Mac's alleged accounting problems – a combination of mistakes and efforts to build a reserve for bad times – had actually lowered its pretax profits by billions in 2002 and in earlier years. While Freddie Mac's profits were understated, Fannie Mae's were overstated by nearly $9 billion. In short, a remedy that might preclude understating income might not be effective in combating overstating income. The stockholders of both Freddie Mac and Fannie Mae will be ill-served by a "one size fits all" approach and such a result is significantly more likely when a single plaintiff is lead in both suits.

A more pernicious problem, though, goes to the business relationships between Ohio and Fannie Mae. These relationships are necessarily atypical in that only States and other governmental entities are eligible to enter into partnerships with Fannie Mae, and Ohio has a number of these partnerships. The value to Ohio of those ongoing business relationships and of the Fannie Mae debt securities held by Ohio is inversely proportional to the size of any judgment against Fannie Mae – whether by settlement or through trial.

For example, in 2002, Ohio Treasurer Joseph T. Deters announced "a new partnership with the Ohio Housing Finance Agency ["OHFA"] and Fannie Mae." Press Release from Ohio Treasurer (July 31, 2002) (attached as Exhibit M to Charrow Decl. 2). Under the fifty to one

–20–

hundred million dollar program, lenders would make home loans available at up to 1/2 percent below conventional mortgage rates; Fannie Mae would then purchase those mortgages and issue "mortgage-backed securities" which would then "be purchased by the Treasurer's Office as investments . . . ." *Id.* Those mortgage-backed securities are guaranteed by Fannie Mae. *See* 12 CFR part 1720, Appendix B (Purpose – A.1.). As such, if Fannie Mae's equity-side were to decrease dramatically as a result of an adverse judgment, the value of the guaranteed mortgage-backed securities would also decline. This inherent conflict is atypical because it is not the outgrowth of normal equity acquisition on the open market, but rather the result of complex and private business-partnership relationships between Ohio and Fannie Mae that make lead plaintiff status inappropriate in this case.

## CONCLUSION

For the foregoing reasons, Cominvest respectfully requests this Court to: (a) appoint it as lead plaintiff; (b) approve Schiffrin & Barroway, LLP as lead counsel for the Class; and (c) approve Greenberg Traurig LLP as liaison counsel for the Class.

Dated: December 10, 2004

Respectfully submitted,

**GREENBERG TRAURIG LLP**

By _____

Joe R. Reeder (DC #279786)
Robert P. Charrow (DC #261958)
Geoffrey J. Greeves (DC #463035)
800 Connecticut Avenue, N.W., Suite 500
Washington, DC 20006
Telephone:    (202) 331-3100
Facsimile:    (202) 331-3101
greevesg@gtlaw.com

- and -

Hal M. Hirsch
Allen G. Kadish
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone:     (212) 801-9200
Facsimile:     (212) 801-6400

**Proposed Liaison Counsel**

**SCHIFFRIN & BARROWAY, LLP**
Richard S. Schiffrin
Stuart L. Berman
Darren J. Check
Sean M. Handler
Robin Winchester
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone:     (610) 667-7706
Facsimile:     (610) 667-7056

**Proposed Lead Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Supporting Cominvest Asset Management GmbH's Motion to Consolidate Actions, to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, and in Opposition to Competing Lead Plaintiff Motions was served on the following by first-class mail, postage prepaid:

Nelson Genshaft, Esq.
STRIP HOPPERS, et al.
575 South Third Street
Columbus, OH 43215

Michael Barrett, Esq.
BARRETT & WEBER
105 East Fourth Street, Suite 500
Cincinnati, OH 45202

Alan Statman, Esq.
STATMAN HARRIS, et al.
2900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202

David Scott, Esq.
SCOTT & SCOTT, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415

Arthur Shingler, Esq.
SCOTT & SCOTT, LLC
401 B Street, Suite 307
San Diego, CA 92101

Samuel Rudman, Esq.
LERACH COUGHLIN, et al.
200 Broadhollow Road, Suite 406
Melville, NY 11747

William Lerach, Esq.
LEACH COUGHLIN, et al.
401 B Street, Suite 1700
San Diego, CA 92101

Kevin Downey, Esq.
WILLIAMS & CONNELLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Edward Horahan, III, Esq.
DECEHERT LLP
1775 Eye Street, N.W.
Washington, DC 20006

David Krakoff, Esq.
MAYER BROWN, et al.
1909 K Street, N.W.
Washington, DC 20006

Seth Aronson, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street, 15th Floor
Los Angeles, CA 90071

and by overnight mail on:

Stuart Berman, Esq.
Sean Handler, Esq.
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Curtis Trinko, Esq.
LAW OFFICES OF CURTIS V. TRINKO, LLP
16 West 46th Street
New York, NY 10036

Alfred Yates, Jr., Esq.
LAW OFFICES OF ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15233

Janet DeCosta, Esq.
JANET K. DECOSTA, P.C.
1919 Pennsylvania Avenue
Washington, DC 20006

Stanley Chesley, Esq.
WAITE SCHENIDER, et al.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202

Jeffrey Block, Esq.
BERMAN DEVALERIO, et al.
One Liberty Square
Boston, MA 02109

Steven J. Toll, Esq.
COHEN MILSTEIN, et al.
1100 New York Avenue, N.W.
West Tower - Suite 500
Washington, DC 20005

and was delivered electronically to all parties who participate and are registered with the
electronic court filing (ECF System).

Geoffrey J. Greeves

**FILED**

DEC 2 9 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

Case No.   02-CV-72-H (M)

WILLIAMS SECURITIES LITIGATION
  WMB SUBCLASS
  WCG SUBCLASS

ENTERED ON DOCKET

DATE **DEC 3 0 2004**

## REPORT AND RECOMMENDATION

The undersigned previously issued a Report and Recommendation which recommended the appointment of the Ontario Teachers' Pension Plan Board and the Arkansas Teachers Retirement System (Teachers Pension Group) as Lead Plaintiff for the WMB subclass and recommended approval of its choice of counsel as Lead Counsel. [Dkt. 616]. Thereafter, the Court received the objection of Plaintiff Fredric E. Russell Investment Management Co. (Russell) and granted Russell's application to supplement its reply brief. In addition, the Court ordered the Teachers Pension Group to file a response to Russell's Supplemental Reply and recommitted the matter of the appointment of Lead Plaintiff to the undersigned United States Magistrate Judge. [Dkt. 634].

Additional briefs have been filed and in making this Report and Recommendation, the undersigned has fully considered the "Supplement to Reply Brief of Fredric E. Russell Investment Management Co. Inc. to R&R Docketed November 18, 2004" [Dkt. 636]; the "Response of the Ontario Teachers' Pension Plan Board and the Arkansas Teacher Retirement System to Fredric E Russell Investment Management's Submission regarding Ontario Teachers' Stock Holdings" [Dkt. 635]; the "Response Brief of the Ontario Teachers' Pension Plan Board and the Arkansas Teacher Retirement System Pursuant to The

639

Court's December 16, 2004 Order: [Dkt. 638]; and "Reply Brief of Fredric E. Russell Investment Management Co. to the Court's Order of December 16, 2004" [Dkt. 637].[1]

The appointment of a lead plaintiff in a private securities action is governed by the detailed procedures set forth in the Private Securities Litigation Reform Act (PSLRA) which require the Court to determine which applicant is "most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B).  In determining which applicant should be named lead plaintiff, the Court must accept the presumption that the most adequate plaintiff in any private action is the person(s) who: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Under the PSLRA, the Court's determination of the "most adequate plaintiff" may be rebutted only upon proof that the presumptive lead plaintiff either: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

These procedures were applied by the Court in the initial appointment of a lead Plaintiff [Dkt. 128] and by the undersigned in the Report and Recommendation which recommended the appointment of Teachers Pension Group as lead plaintiff [Dkt. 616]. The foregoing provisions of the PSLRA will also provide the framework for reconsideration of the lead plaintiff recommendation.

---

[1]  It is peculiar to name a document a reply to a court order when nothing within the Order of December 16, 2004, required, requested, suggested or even permitted a reply by Russell.

2

The issue presented is whether the substantial stock ownership of Ontario Teachers in several of the underwriter defendants constitutes proof that the Teachers Pension Group will not fairly and adequately protect the interests of the class so as to rebut the statutory presumption imposed by the PSLRA that the Teachers Pension Group is the "most adequate plaintiff."[2]  15 U.S.C. § 78u-4(3)(B)(iii)(II).

Russell argues that because Ontario Teachers owns approximately $300 million of stock in the underwriter defendants, Teachers Pension Group has a conflict of interest as lead plaintiff between vigorously prosecuting the underwriter defendants and protecting its own financial interests in the underwriter defendants.

Certainly this argument has some force and might well be persuasive in a case not governed by the PSLRA.  However, based on the lead plaintiff provisions of the PSLRA, its legislative history, the observations of the Securities and Exchange Commission (SEC), and the cases addressing the issue, as hereafter discussed, the undersigned concludes that a plaintiff's substantial stock ownership in a defendant does not automatically disqualify the plaintiff from serving as lead plaintiff under the PSLRA.  The undersigned

---

[2] A preliminary issue, which is properly reserved to the district judge, is whether Russell has waived any objection to the appointment of Teachers Pension Group as lead plaintiff based on Ontario Teachers stock ownership.  Russell failed to assert Ontario Teachers stock ownership as an issue in the lead plaintiff proceedings before the magistrate judge or in its objections to the Report and Recommendation which recommended appointment of Teachers Pension Group as lead plaintiff.  Thus the record clearly establishes that Russell failed to make a timely objection.  Further, it is apparent that information concerning the stock ownership was available throughout the proceedings before the magistrate judge and therefore before objections were due.  Based on these considerations, a strong argument can be made that in this lengthy, complicated case, late objections should not be permitted.  This argument is strengthened by the fact that the objection is posed by Russell, a class member who is not the next most adequate plaintiff under the PSLRA and therefore would likely not be appointed lead plaintiff even if Teachers Pension Group were disqualified. Moreover, the late objection is posed by a class member who does not have any pending claims against the underwriter defendants.

further concludes that nothing peculiar to this case disqualifies Teachers Pension Group from serving as lead plaintiff under the PSLRA.

The parties have cited four reported cases dealing with similar issues in the PSLRA context and counsel for Teachers Pension Group has filed a declaration asserting that courts have appointed lead plaintiffs with substantial ownership interests in defendants in five ongoing cases under the PSLRA. In three of the four cases cited, courts have concluded that "huge," "major" or "significant" ownership interests in defendants do not preclude plaintiffs from serving as lead plaintiffs under the PSLRA. In the other case the court found, without providing any analysis of the PSLRA issue, that stock ownership in the defendant disqualified the presumptive lead plaintiff from serving in that capacity on claims against that defendant.[3]  Thus the weight of authority supports the appointment of Teachers Pension Group as Lead Plaintiff despite Ontario Teachers ownership of stock in the defendant underwriters.

In *In re Cendant Corporation Litigation*, 264 F.3d 201 (3rd Cir. 2001) (*Cendant II*) the Third Circuit considered whether a settlement should be set aside because the lead plaintiff continued to hold "huge amounts" of Cendant stock during settlement negotiations. *Id.* at 243. The Court upheld the settlement, reasoning that the conflict of interest argument was inconsistent with the lead plaintiff provisions in the PSLRA.

---

[3]  The one case seemingly supportive of Russell's position is *In re Cendant*, 182 F.R.D. 144 (D. N.J. 1998) (*Cendant I*). In that case the Court appointed a co-lead plaintiff to assert claims against Merrill Lynch because CalPERS, the presumptive lead plaintiff, held $300 million stock in that company. Curiously, CalPERS was permitted to serve as lead plaintiff to assert claims against Cendant, although CalPERS continued to hold "huge amounts" of Cendant stock. *In re Cendant*, 264 F.3d 201, 243 (3rd Cir. 2001)(*Cendant II*).

[The conflict of interest] thesis is attractive. The problem with it is that Congress seems to have rejected it when it enacted the lead plaintiff provisions of the PSLRA. The Reform Act establishes a presumption that the class member "most capable of adequately representing the interests of class members" is the shareholder with the largest financial stake in the recovery sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(l) & (iii)(l). The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs. *See* S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief is the 'most adequate plaintiff.' "). We presume that Congress was aware that an institutional investor with enormous stakes in a company is highly unlikely to divest all of its holdings in that company, even after a securities class action is filed in which it is a class member.

By establishing a preference in favor of having such investors serve as lead plaintiffs, Congress must have thought that the situation present here does not inherently create an unacceptable conflict of interest. *See id.* ("The Committee believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."). For this reason, the simple fact that the institutional investors who comprise Lead Plaintiff retained Cendant stock while the Settlement was negotiated is not nearly enough, standing alone, to support [the] claim that Lead Plaintiff was so conflicted that the Settlement should be overturned.

*Cendant II*, 264 F.3d at 243-244. [footnotes omitted].[4]

---

[4] The *Cendant II* Court noted that although the matter was not before it, an issue of potential intra-class conflict may present a problem between the interests of those who purchase and hold stock in the defendant firm and those who purchased and sold stock in the defendant. The Court emphasized that the conflict was not one of identification of a lead plaintiff under the PSLRA, but of class configuration under Fed.R.Civ.P. 23. *Cendant II*, 264 F.3d at 244 n.25.

(continued...)

The undersigned has also found the following language concerning certification of a large pension plan with an equity position in defendant as class representative to be insightful:

> More significant, from this court's perspective is the unequivocal policy position expressed by Congress when it passed the . . . [PSLRA] in 1995, demonstrat[ed] its intent that large institutional investors should be encouraged to serve as class representatives in securities fraud class actions. There can be no doubt that Congress understood that large institutional investors with multi-billion dollar portfolios would likely always hold equity investments in a broad spectrum of companies, some of which would likely be defendants in securities cases. As the legislative history of the PSLRA demonstrates, Congress found that "institutional investors are America's largest shareholders, with about $9.5 trillion in assets, accounting for fifty-one percent of the equity market." Even if these equity investments are not held in named defendants, in this economy with intertwined business relationships of every kind, it is easy to foresee that a large damage award against one entity might negatively impact an equity position with another. If this condition were enough to defeat certification as a class representative, large institutional investors would almost invariably be disqualified; precisely the opposite of what Congress intended in passing PSLRA.
>
> As the SEC has recently observed:
>> The standards for an adequacy challenge must be viewed in the context of the lead plaintiff provisions as a whole. . . . The largest financial interest requirement was itself designed to ensure more effective representation of investors in securities fraud class actions. Congress sought to encourage large investors, including institutions, to serve as lead plaintiffs, and

---

[4] (...continued)
Throughout Russell's submissions it is suggested that appointment of the Teachers Pension Group presents problems of class certification. The undersigned has not attempted to address those contentions. Like the *Cendant II* Court, the undersigned sees the appointment of a lead plaintiff under the PSLRA and class certification under Rule 23 as separate issues. Class certification under Rule 23 is not before the Court at this point. Appointment of lead plaintiff under the PSLRA is. It is appropriate to take up class certification issues according to the case schedule upon full briefing of those issues.

believed that institutions could and would qualify as lead plaintiffs. The Commission believes that the standards for an adequacy challenge must not be read and applied in such a manner that they would nullify the largest financial interest requirement and defeat the purposes of the lead plaintiff provisions. . . . Thus, courts have recognized that generic arguments that would systematically disqualify large investors and institutions from serving as lead plaintiff should not suffice as "proof" [of inadequacy] under the statute.

The SEC Speaks in 1999: Office of The General Counsel Recent Judicial Developments, 1104 PLI/Corp 291, 484-85 (1999) (internal citations omitted).

This court finds that defendants' argument here, that FSBA should be disqualified because of the conflict between the members of the class and its pension beneficiaries, could be an argument against certifying almost all institutional-investors. This argument amounts to a "generic argument that would systematically disqualify large investors and institutions from serving as lead plaintiff." While there may be the occasional extreme case where a conflict of this type is too great and simply dominates the landscape too completely to ignore, in light of the policy behind that [sic] PSLRA, disqualification on this basis should be the exception rather than the rule. Accordingly, the court finds that FSBA, having taken all steps toward vigorously pursuing the claims against Vesta and Torchmark, is adequately representing the interests of the absent class members. Any speculation regarding potential conflicts of interest will not defeat FSBA's certification as a class representative.

*In re Vesta Insurance Group, Inc., Securities Litigation*, 1999 US Dist Lexis 22233 *28-32

(N.D. Ala. Oct. 25, 1999)(internal citations and footnotes omitted)(rejecting argument that

a conflict existed between pension fund and members of the class where proposed class

representative held a significant interest in a defendant company). *See also Perelli*

*Armstrong Tire Corporation v. Labranch & Co., Inc.*, 2004 WL 1179311 *17

(S.D.N.Y.))(citing *Cendant II* and concluding that in enacting the PSLRA lead plaintiff

7

provisions which anticipate and intend that large institutional investors will serve as lead plaintiff, Congress rejected the thesis that ownership of stock in a defendant creates an inherent and unacceptable conflict of interest).

In contrast to the reasoned analysis provided in the above-cited cases, in *In re Cendant*, 182 F.R.D. 144 (D. N.J. 1998) (*Cendant I*), which Russell asserts requires disqualification of the Teachers Pension Group [Dkt. 637, p. 4], the Court compared the presumptive lead plaintiff's $300 million investment holdings in the Defendant to its alleged loss of $6.4 million and, without providing any analysis of the PSLRA, stated that "[t]he Court simply does not believe nor find that the [presumptive lead plaintiff] can overcome this substantial conflict of interest and fully protect the [class] interests." *Id.* at 149. The undersigned is not persuaded that merely making a comparison between the stock holdings and losses is particularly instructive.

An investment of $300 million is undoubtedly substantial. However, to put the $300 million in context, that figure should be compared to Ontario Teachers' net assets of $80 billion (CND). According to the currency converter found at the Bank of Canada web site, http://www.bank-banque-canada.ca/en/exchform.htm, as of noon December 29, 2004, $1 Canadian equaled $.82 US. At that rate, $80 billion (CND) is approximately $65.6 billion US. So, in American dollars, $300 million constitutes roughly .457% of Ontario Teachers entire net assets.

There are myriad factors which may affect Ontario Teachers holdings in the underwriter defendants. Nothing has been presented to demonstrate or predict the potential outcome of this litigation on those holdings. Further, nothing has been presented

8

to suggest that this lawsuit places the entirety of Ontario Teachers holdings in the underwriter defendants at risk, so the potential effect this lawsuit will have on Ontario Teachers net assets is likely far smaller than the .457% of its net assets represented by its holdings in the underwriter defendants. Under these circumstances, it is conjecture that decisions made in this case will be driven by Ontario Teachers' consideration of the uncertain effect decisions made in this case may have on its holdings in the underwriter defendants. In sum, the undersigned finds that the connection between Ontario Teachers decision making as lead plaintiff in this case and the effect those decisions may have on its holdings in the underwriter defendants is just too far attenuated to constitute the necessary proof that Ontario Teachers will fail to fairly and adequately protect the interests of the class.

In addition to the foregoing, the undersigned is persuaded that the alleged conflict of interest does not disqualify Ontario Teachers from serving as lead plaintiff. Ontario Teachers purchased its WMB shares on the open market, as apparently did Russell. It is named plaintiffs Local 710 and Gary Kossoff who have standing to assert claims against the underwriters. Notably, neither Local 710 nor Gary Kossoff have asserted any objection to the appointment of the Teachers Pension Group as Lead Plaintiff, in fact both have endorsed the appointment. [Dkt. 623, 626]. Further none of the other parties who sought to be named as lead plaintiff, and who have losses far greater than that alleged by Russell,[5] and would therefore be next in line for appointment as lead plaintiff, have expressed any objection to the appointment of Ontario Teachers or Teachers Pension

---

[5] Williams' Institutional Investors Groups has a loss of $7.59 million and Pace Coalition has a loss of $5.0 million, compared to Russell's loss of $2.0 million.

Group as Lead Plaintiff. In addition, Ontario Teachers has filed a declaration pledging to "vigorously pursue" claims against the underwriter defendants to achieve the best possible result for all investors in the WMB Subclass. [Dkt. 638; Ex. A, ¶ 3]. And, finally, as Lead Plaintiff the Teachers Pension Group will be acting under the watchful eyes of the other Plaintiffs and the Court.

Having fully considered the matter, the undersigned finds that the objections raised in Russell's Supplemental Reply Brief [Dkt. 636] provide no basis for changing the Report and Recommendation filed November 17, 2004, [Dkt. 616]. A substantial investment in a defendant does not automatically rebut the lead plaintiff presumption of the PSLRA. As phrased in *Vesta*, the issue is whether the case before the Court is "the occasional extreme case where a conflict of this type is too great and simply dominates the landscape too completely to ignore." *Vesta*, 1999 U.S. Dist. Lexis 22233 * 31. The undersigned finds Russell has failed to prove that this is such a case. Russell has presented only conjecture, not proof, that the Ontario Teachers and the Teachers Pension Group will not fairly and adequately protect the interests of the class. Therefore the presumption that Teachers Pension Group is the most adequate plaintiff under the PSLRA has not been rebutted.

The undersigned also rejects Russell's contention that counsel have failed in their duty of candor to the Court. The Court did not request this information from applicants seeking to serve as lead plaintiff and there has been no citation to any rule or other authority suggesting that Ontario Teachers had any duty to disclose its stock holdings to the Court. Moreover, the information was publicly available.

The undersigned hereby RE-ADOPTS the Report and Recommendation filed November 17, 2004 [Dkt. 616] and RECOMMENDS that the Motion of the Ontario

10

Teachers' Pension Plan Board and the Arkansas Teacher Retirement System to Serve as Lead Plaintiffs for the WMB Subclass and For Approval of Their Selection of Counsel [Dkt. 592] be GRANTED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this report and recommendation. The Court's Order of December 16, 2004 [Dkt. 634], directed that objections to this report and recommendation are be filed on an expedited basis. **In accordance with the Court's Order, specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before <u>January 6, 2005</u>. Teachers Pension Group may also file a final brief on the issue by <u>January 6, 2005</u>. No further briefing will be permitted.**

If specific written objections are timely filed, Fed.R.Civ.P. 72(b) directs the district judge to:

> make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b); see also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d

656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this _29th_ day of December, 2004.

_Frank H. McCarthy_
Frank H. McCarthy
United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing pleading was served on each of the parties hereto by mailing the same to them or to their attorneys of record on the 30 Day of December, 2004.

*F I L E D*

DEC 17 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: WILLIAMS SECURITIES LITIGATION | ) | Case No. 02-CV-72-H(M) |
| | ) | (Lead Case) |
| | ) | |
| This Document Relates To:    WMB Subclass | ) | Judge Sven Erik Holmes |

**SUPPLEMENT TO REPLY BRIEF OF FREDRIC E. RUSSELL INVESTMENT
MANAGEMENT CO. INC. TO R&R DOCKETED NOVEMBER 18, 2004**

Late in the afternoon of December 13, 2004, counsel for Russell discovered what appears to be

a massive undisclosed conflict of interest of Ontario Teachers. Ontario Teachers is required to file

Schedule 13F-HR with the Securities and Exchange Commission for each quarter. Ontario

Teachers' Schedule 13F-HR filed October 26, 2004 (two days before it applied to be lead plaintiff

in this case), attached hereto as Exhibit A, shows Ontario Teachers, at September 30, 2004, owned

$281 million worth of stock in Bank of America, Citigroup, Goldman, Sachs, Merrill Lynch and

CIBC, each of which is a key defendant in this case, as of September 30, 2004. At the close of the

NYSE on December 13, 2004, the market value of the stock holdings of Ontario Teachers in those

five Underwriters, assuming the same number of shares is still owned by them, is $296 million[1].

The original application of Ontario Teachers to be lead plaintiff in this case, filed October 28,

2004, alleges losses in WMB common stock of $23.6 million. $296 million is 12.5 times the $23.6

million in alleged WMB losses. If these shares in Defendants are now in their portfolio, Ontario

Teachers both has a profound conflict of interest and Ontario Teachers and its counsel have not met

required standards of candor with the Court, providing yet additional reasons why Ontario Teachers

and its counsel are unable to fairly and adequately represent the interests of the WMB Subclass.

---

[1] Review of a number of Ontario Teachers' prior Schedule 13F-HRs reveals substantial
investment in more than one of the Underwriter Defendants, raising the inference that at least
much of the holdings as of September 30, 2004 are held today.

At 12-31-03, Ontario Teachers' website says it owned $75 million worth of stock of UBS, also a defendant in this case. UBS does not appear in the holdings declared on Ontario Teachers' Schedule 13F-HRs, perhaps because disclosure of that Swiss stock is not required by the SEC. If $75 million worth of UBS stock is owned by Ontario Teachers, that brings the total dollar amount of investment in Defendants to $371 million, more than 15 times the claimed loss in WMB shares.

By contrast, Russell owns no shares in any of the Underwriter Defendants.

Needless to say, this stock ownership issue bears investigation. We do not know whether the Court prefers to deal with the matter itself or prefers to have Russell conduct discovery limited to this subject, by document request, interrogatory, or Rule 30(b)(6), Fed.R.Civ.P., deposition.

Respectfully submitted,

R. THOMAS SEYMOUR, OBA No. 8099
C. ROBERT BURTON, OBA No. 14195
SCOTT A. GRAHAM, OBA No. 19817
**SEYMOUR LAW FIRM**
100 West Fifth, Suite 550
Tulsa, OK 74103-4288
Telephone: (918)583-5791
Facsimile: (918) 583-9251

**COUNSEL FOR THE WMB SUBCLASS
AND FREDRIC E. RUSSELL
INVESTMENT MANAGEMENT CO**

2

## **CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing was served via e-mail the 14th day of December, 2004, to all counsel listed on the Master Service List.

Tom Seymour

Service List as of December 3, 2004; 8:30 A.M. CST

## MASTER SERVICE LIST FOR DEFENDANTS
### WMB SUBCLASS, WCG SUBCLASS AND ERISA LITIGATION

| | |
|---|---|
| **COUNSEL FOR WCG DEFENDANTS THE WILLIAMS COMPANIES, INC. AND KEITH BAILEY; FOR WMB DEFENDANTS THE WILLIAMS COMPANIES, AND DIRECTOR DEFENDANTS BAILEY, MALCOLM, MCCARTHY, BELITZ, AND HOBBS** | |
| Graydon Dean Luthey, Jr., Esq. OBA #5568<br>Sarah Jane Gillett, Esq., OBA #17099<br>Jennifer E. Mustain, Esq., OBA #13943<br>HALL, ESTILL, HARDWICK, GABLE,<br>GOLDEN & NELSON, P.C.<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma  74103-3708<br>Telephone: (918) 594-0400<br>Facsimile: (918) 594-0505<br>dluthey@hallestill.com<br>sgillett@hallestill.com<br>jmustain@hallestill.com | Timothy K. Roake, Esq.<br>Sally J. Berens, Esq.<br>Courtney Greene Power, Esq.<br>GIBSON, DUNN & CRUTCHER, L.L.P.<br>1881 Page Mill Road<br>Palo Alto, CA  94304<br>Telephone (650) 849-5300<br>Facsimile (650) 849-5333<br>troake@gibsondunn.com<br>sberens@gibsondunn.com<br>cpower@gibsondunn.com |
| Alex A. Goldberg, Esq., OBA #18523*<br>THE WILLIAMS COMPANIES, INC.<br>One Williams Center, 41st Floor<br>P. O. Box 2400, MD 41-3<br>Tulsa, OK  74102<br>Telephone  (918) 573-2000<br>Facsimile  (918) 573-4195<br>alex.goldberg@williams.com<br><br>* represents only The Williams Companies | Ethan D. Dettmer, Esq.<br>GIBSON, DUNN & CRUTCHER, LLP<br>One Montgomery Street, Suite 3100<br>San Francisco, CA  94104<br>Telephone (415) 393-8200<br>Facsimile (415) 986-5309<br>edettmer@gibsondunn.com |
| Darren L. McCarty, Esq.<br>GIBSON, DUNN & CRUTCHER, LLP<br>2100 McKinney Avenue, Suite 1100<br>Dallas, Texas  75201<br>Telephone (214) 698-3100<br>Facsimile (214) 698-3400<br>dmccarty@gibsondunn.com | Wayne W. Smith, Esq.<br>Meryl L. Young, Esq.<br>Jeffrey H. Reeves, Esq.<br>GIBSON, DUNN & CRUTCHER, LLP<br>4 Park Plaza, Suite 1400<br>Irvine, California  92614-8557<br>Telephone (949) 451-3800<br>Facsimile (949) 451-4220<br>wsmith@gibsondunn.com<br>myoung@gibsondunn.com<br>jreeves@gibsondunn.com |

Service List as of December 3, 2004; 8:30 A.M. CST

| |
|---|
| **COUNSEL FOR WMB WILLIAMS OUTSIDE DIRECTOR DEFENDANTS COX, HOWELL, LEWIS, MEINIG, LILLIS, PARKER, WILLIAMS, CRUIKSHANK, CHAPMAN, GREEN, MACINNIS, STONEY, AND LORCH** |

Vance L. Beagles, Esq.
Ralph l. Miller, Esq.
Lori Browne, Esq.
WEIL, GOTSHAL AND MANGES
200 Crescent Court, Suite 300
Dallas, TX 75201
Telephone (214) 746-7700
Facsimile (214) 746-7777
vance.beagles@weil.com
ralph.miller@weil.com
lori.browne@weil.com

**COUNSEL FOR WMB AND WCG DEFENDANT ERNST & YOUNG**

| | |
|---|---|
| Patrick M. Ryan, Esq.<br>Phillip G. Whaley, Esq.<br>Timothy J. Bomhoff, Esq.<br>RYAN, WHALEY, COLDIRON &<br>SHANDY<br>119 N. Robinson, Suite 900<br>Oklahoma City, OK 73102-8865<br>Telephone: (405) 239-6040<br>Facsimile: (405) 239-6766<br>pryan@ryanwhaley.com<br>pwhaley@ryanwhaley.com<br>tbomhoff@ryanwhaley.com | Miles N. Ruthberg, Esq.<br>Jamie L. Wine, Esq.<br>Ethan Brown, Esq.<br>Charles W. Cox, Esq.<br>LATHAM & WATKINS LLP<br>633 West Fifth Street, Suite 4000<br>Los Angeles, CA 90071<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763<br>miles.ruthberg@lw.com<br>jamie.wine@lw.com<br>ethan.brown@lw.com<br>chuck.cox@lw.com |

**COUNSEL FOR WMB UNDERWRITER DEFENDANTS**

| | |
|---|---|
| Jonathan M. Hoff, Esq.<br>Riche McKnight, Esq.<br>CADWALADER, WICKERSHAM & TAFT<br>LLP<br>100 Maiden Lane<br>New York, NY 10038<br>Telephone (212) 504-6000<br>Facsimile (212) 504-6666<br>jonathan.hoff@cwt.com<br>riche.mcknight@cwt.com | Warren Bickford, Esq.<br>Burck Bailey, Esq.<br>Brooks Richardson, Esq.<br>John B. Heatly, Esq.<br>FELLERS SNIDER BLANKENSHIP BAILEY<br>& TIPPENS<br>100 N. Broadway, Suite 1700<br>Oklahoma City, OK 73102<br>Telephone: (405) 232-0621<br>Facsimile: (405) 232-9659<br>wbickford@fellerssnider.com<br>bbailey@fellerssnider.com<br>brichardson@fellerssnider.com<br>jheatly@fellerssnider.com |

Service List as of December 3, 2004; 8:30 A.M. CST

| | |
|---|---|
| **COUNSEL FOR WCG DEFENDANTS JANZEN, SCHUBERT, KINNEAR, BROSS, MCCOY, KALIKA, BUMGARNER AND SEMPLE AND WMB DEFENDANT BUMGARNER** | |
| James L. Kincaid, Esq.<br>Michael J. Gibbens, Esq.<br>Victor E. Morgan, Esq.<br>Susan E. Huntsman, Esq.<br>CROWE & DUNLEVY, P.C.<br>321 S. Boston Avenue, Suite 500<br>Tulsa, OK 74103-3313<br>Telephone (918) 592-9800<br>Facsimile (918) 592-9801<br>kincaidj@crowedunlevy.com<br>gibbensm@crowedunlevy.com<br>morganv@crowedunlevy.com<br>huntsmas@crowedunlevy.com | Jennifer Blankenship, Esq.<br>CROWE & DUNLEVY, P.C.<br>20 North Broadway, Suite 1800<br>Oklahoma City, OK 73102<br>Telephone (405) 235-7700<br>Facsimile (405) 272-5958<br>blankenj@crowedunlevy.com |
| **ERISA - BENEFITS AND INVESTMENT COMMITTEE DEFENDANTS' COUNSEL** | |
| Laurence L. Pinkerton, Esq.<br>PINKERTON & FINN, P.C.<br>15 East 5th<br>Penthouse Suite<br>Tulsa, OK 74103<br>Telephone:  (918) 587-1800<br>Facsimile:  (918) 582-2900<br>pf@att.net | Paul J. Ondrasik, Jr., Esq.<br>Michael Kail, Esq.<br>Kevin Powers, Esq.<br>STEPTOE AND JOHNSON<br>1330 Connecticut Ave, N.W.<br>Washington, D.C.  20036<br>Telephone:  (202) 429-3000<br>Facsimile:  (202) 429-3902<br>pondrasik@steptoe.com<br>mkail@steptoe.com<br>kpowers@steptoe.com |
| **ERISA - COUNSEL FOR DIRECTOR DEFENDANTS AND FOR NONPARTY THE WILLIAMS COMPANIES** | |
| Howard Shapiro, Esq.<br>Suzanne S. Dickey, Esq.<br>Charles F. Seemann, III, Esq.<br>PROSKAUER ROSE, LLP<br>LL&E Tower<br>909 Poydras Street, Suite 1100<br>New Orleans, Louisiana  70112<br>Telephone:  (504) 310-4088<br>Facsimile:  (504) 310-2022<br>howshapiro@proskauer.com<br>sdickey@proskauer.com<br>cseemann@proskauer.com | Graydon Dean Luthey, Jr., Esq.<br>Sarah Jane Gillett, Esq.<br>HALL, ESTILL, HARDWICK, GABLE,<br>GOLDEN & NELSON, P.C.<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma  74103-3708<br>Telephone: (918) 594-0400<br>Facsimile: (918) 594-0505<br>dluthey@hallestill.com<br>sgillett@hallestill.com |

Service List as of December 3, 2004; 8:30 A.M. CST

## MASTER SERVICE LIST FOR PLAINTIFFS
### WMB SUBCLASS, WCG SUBCLASS AND ERISA LITIGATION

| WMB PLAINTIFF COUNSEL AND ON BEHALF OF FREDRIC E. RUSSELL INVESTMENT MANAGEMENT CO. | WCG PLAINTIFFS' COUNSEL |
|---|---|
| R. Thomas Seymour, Esq.<br>C. Robert Burton, Esq.<br>Scott A. Graham, Esq.<br>SEYMOUR LAW FIRM<br>100 West 5th Street, Suite 550<br>Tulsa, Oklahoma 74103<br>Telephone: (918) 583-5791<br>Facsimile: (918) 583-9251<br>rtseymour1@aol.com<br>robtburton@aol.com<br>sgraham@seymourlawfirm.com<br>jbyrne@seymourlawfirm.com | James R. Hicks, Esq.<br>Ronald J. Saffa, Esq.<br>MORREL WEST SAFFA CRAIGE &<br>   HICKS, INC.<br>5310 E. 31st Street, Suite 1100<br>Tulsa, Oklahoma 74135<br>Telephone: (918) 664-0800<br>Facsimile: (918) 663-1383<br>jim@law-office.com<br>ron@law-office.com |
| | Kevin Yourman, Esq.<br>Behram Parekh, Esq.<br>Janine Sperandeo<br>YOURMAN ALEXANDER & PAREKH<br>3601 Aviation Boulevard, Suite 3000<br>Manhattan Beach, CA 90266<br>Telephone: 310-725-6400<br>Facsimile: 310-725-6420<br>kyourman@yaplaw.com<br>bparekh@yaplaw.com<br>jsperandeo@yaplaw.com |
| | Steven G. Schulman, Esq.<br>Joshua H. Vinik, Esq.<br>Salvatore J. Graziano, Esq.<br>Caroline Marshall, Esq.<br>MILBERG WEISS BERSHAD &<br>SCHULMAN LLP<br>One Pennsylvania Plaza<br>New York, NY 10119<br>Telephone: (212) 594-5300<br>Facsimile: (212) 868-1229<br>SSchulman@MilbergWeiss.com<br>JVinik@MilbergWeiss.com<br>SGraziano@MilbergWeiss.com<br>CMarshall@MilbergWeiss.com |

Service List as of December 3, 2004; 8:30 A.M. CST

|  | Leigh A. Parker, Esq.<br>Karnit Daniel, Esq.<br>WEISS & LURIE<br>10940 Wilshire Boulevard, 24th Floor<br>Los Angeles, CA 90024<br>Telephone: (310) 208-2800<br>Facsimile: (310) 209-2348<br>lparker@wyca.com<br>kdaniel@wyca.com |
|---|---|

**WMB PLAINTIFF ONTARIO TEACHERS' PENSION PLAN BOARD & ARKANSAS TEACHER RETIREMENT SYSTEM COUNSEL**

| Michael Burrage, Esq.<br>BURRAGE LAW FIRM<br>First United Center, Suite 100<br>115 N. Washington<br>P. O. Box 1727<br>Durant, OK 74702<br>Telephone: (580) 920-0700<br>Facsimile: (580) 920-0702<br>mburrage@burragelaw.com | Blair A. Nicholas, Esq.<br>Alan Schulman, Esq.<br>BERNSTEIN LITOWITZ BERGER &<br>GROSSMAN, LLP<br>12544 High Bluff Drive, Suite 150<br>San Diego, CA 92130<br>Telephone: (858) 793-00700<br>Facsimile: (858) 793-0323<br>blairn@blbglaw.com<br>alans@blbglaw.com |
|---|---|
|  | Douglas M. McKeige, Esq.<br>Avi Josefson, Esq.<br>Gerald H. Silk, Esq.<br>Chad Johnson, Esq.<br>Javier Bleichmar, Esq.<br>Roy Esh, Esq.<br>Larry Silvestro, Esq.<br>Stephen Floytlin, Esq.<br>Mark Lebovitch, Esq.<br>BERNSTEIN LITOWITZ BERGER &<br>GROSSMAN, LLP<br>1285 Avenue of the Americas<br>New York, NY 10029<br>Telephone: (212) 554-14000<br>Facsimile: (212) 554-1444<br>doug@blbglaw.com<br>avi@blbglaw.com<br>jerry@blbglaw.com<br>chad@blbglaw.com<br>Javier@blbglaw.com<br>roy@blbglaw.com<br>larry@blbglaw.com<br>stephenf@blbglaw.com<br>markl@blbglaw.com |

**WMB PLAINTIFF PACE COUNSEL**

| William Federman, Esq. | William S. Lerach, Esq. |
|---|---|

Service List as of December 3, 2004; 8:30 A.M. CST

| | |
|---|---|
| FEDERMAN & SHERWOOD<br>120 N. Robinson, Suite 2720<br>Oklahoma City, OK  73102<br>Telephone:  (405) 235-1560<br>Facsimile: (405) 239-2112<br>wfederman@aol.com | Darren J. Robbins, Esq.<br>Ramzi Abadou, Esq.<br>LERACH COUGHLIN STOIA GELLER<br>RUDMAN & ROBBINS LLP<br>401 B Street, Suite 1700<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>wsl@lerachlaw.com<br>darrenr@lerachlaw.com<br>ramzia@lerachlaw.com |
| **WMB PLAINTIFF LOCAL 710 FUNDS COUNSEL** | |
| Michael Behn, Esq.<br>FUTTERMAN & HOWARD, CHTD.<br>122 South Michigan Avenue, Suite 1850<br>Chicago, Illinois 60603<br>Telephone:  (312) 427-3600<br>Facsimile:  (312) 427-1850<br>MBehn@FuttermanHoward.com | Ira M. Press, Esq.<br>KIRBY MCINERNEY & SQUIRE, LLP<br>830 Third Avenue, 10th Floor<br>New York, NY  10022<br>Telephone:  (212) 371-6600<br>Facsimile:  (212) 751-2540<br>ipress@kmslaw.com |
| **WMB PLAINTIFF GARY KOSSEFF AND DAVID SCHULTZ (JOINDER RE LOCAL 710)** | |
| Marvin L. Frank, Esq.<br>MURRAY, FRANK & SAILER, LLP<br>275 Madison Avenue, Suite 801<br>New York, NY  10016<br>Telephone:  (212) 682-1818<br>Facsimile:  (212) 682-1892<br>mfrank@murrayfrank.com | |
| **WMB PLAINTIFF STEELWORKERS PENSION TRUST COUNSEL** | |
| William R. Grimm, Esq.<br>BARROW & GRIMM, P.C.<br>610 S. Main, Suite 300<br>Tulsa, OK  74119<br>Telephone: (918) 584-1600<br>Facsimile:  (918) 585-2444<br>grimm@bggg.com | Sherrie R. Savett, Esq.<br>Michael T. Fantini, Esq.<br>Phyllis M. Parker, Esq.<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA  19103<br>Telephone:  (215) 875-3000<br>Facsimile:  (215) 875-4636<br>ssavett@bm.net<br>mfantini@bm.net<br>pparker@bm.net |

| |
|---|
| **WMB PLAINTIFF WILLIAMS INSTITUTIONAL INVESTMENT GROUP COUNSEL** |

Service List as of December 3, 2004; 8:30 A.M. CST

| | |
|---|---|
| Donald M. Bingham, Esq.<br>David Riggs, Esq.<br>James Polan, Esq.<br>RIGGS, ABNEY, NEAL, TURPEN,<br>ORBISON & LEWIS<br>502 West Sixth<br>Tulsa, OK 74119<br>Telephone: (918) 587-3161<br>Facsimile: (918) 584-1603<br>don_bingham@riggsabney.com<br>driggs@riggsabney.com<br>jpolan@riggsabney.com | Jay W. Eisenhofer, Esq.<br>Sidney Liebseman, Esq.<br>Gregg S. Levin, Esq.<br>GRANT & EISENHOFER P.A.<br>Chase Manhattan Center<br>1201 North Market Street<br>Wilmington, DE 19801<br>Telephone: (302) 622-7000<br>Facsimile: (302) 622-7100<br>jeisenhofer@gelaw.com<br>glevin@gelaw.com<br>sliebesman@gelaw.com |
| Stanley M. Grossman, Esq.<br>Robert J. Axelrod, Esq.<br>POMERANTZ HAUDEK BLOCK<br>GROSSMAN & GROSS LLP<br>100 Park Avenue<br>New York, NY 10017<br>Telephone: (212) 661-1100<br>Facsimile: (212) 661-8665<br>smgrossman@pomlaw.com<br>rjaxelrod@pomlaw.com | Vincent R. Cappucci, Esq.<br>Stephen D. Oestreich, Esq.<br>Robert N. Cappucci, Esq.<br>ENTWISTLE & CAPPUCCI, LLP<br>299 Park Avenue, 14th<br>New York, NY 10171<br>Telephone: (212) 894-7200<br>Facsimile: (212) 894-7272<br>vcappucci@entwistle-law.com<br>soestreich@entwistle-law.com<br>rcappucci@entwistle-law.com |
| **ERISA PLAINTIFFS' COUNSEL** | |
| John E. Dowdell, Esq.<br>William W. O'Connor, Esq.<br>NORMAN WOHLGEMUTH CHANDLER &<br>DOWDELL<br>2900 Mid-Continent Tower<br>Tulsa, OK 74103<br>Telephone: (918) 583-7571<br>Facsimile: (918) 584-7847<br>jed@nwcdlaw.com<br>wwo@nwcdlaw.com | Laurie B. Ashton, Esq.<br>KELLER ROHRBACK<br>National Bank Plaza<br>3101 North Central Avenue, Suite 900<br>Phoenix, Arizona 85012<br>Telephone: (602) 230-6347<br>Facsimile: (602) 248-2822<br>LAshton@KellerRohrback.com |
| Lynn Lincoln Sarko, Esq.<br>Cari Campen Laufenberg, Esq.<br>KELLER ROHRBACK, L.L.P.<br>1201 Third Ave., Suite 3200<br>Seattle, WA 98101-3052<br>Telephone: (206) 623-1900<br>Facsimile: (206) 623-3384<br>LSarko@KellerRohrback.com<br>CLaufenberg@KellerRohrback.com | Marc I. Machiz, Esq.<br>COHEN, MILSTEIN, HAUSFELD & TOLL,<br>P.L.L.C.<br>1100 New York Ave., N.W.<br>Suite 500, West Tower<br>Washington, D.C. 20005<br>Telephone: (202) 408-4600<br>Facsimile: (202) 408-4699<br>MMachiz@CMHT.com<br>MPeterson@CMHT.com |

USE THIS LIST FOR DISTRIBUTION OF PLEADINGS.

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGj1WyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMn7z1T7B+tWIDAQAB
MIC-Info: RSA-MD5,RSA,
 DnhFTvtb/VUM2qoB7c9gf8dTcMP6aBcxGIayw1+Rn841UNHDZ9nOAnnCp2TPCfEG
 xnYs03BrOfgmrUIR/1711A==

<SEC-DOCUMENT>0000937567-04-000008.txt : 20041026
<SEC-HEADER>0000937567-04-000008.hdr.sgml : 20041026
<ACCEPTANCE-DATETIME>20041026143130
ACCESSION NUMBER:              0000937567-04-000008
CONFORMED SUBMISSION TYPE:     13F-HR
PUBLIC DOCUMENT COUNT:         1
CONFORMED PERIOD OF REPORT:    20040930
FILED AS OF DATE:              20041026
DATE AS OF CHANGE:             20041026
EFFECTIVENESS DATE:            20041026

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:               ONTARIO TEACHERS PENSION PLAN BOARD
                CENTRAL INDEX KEY:                    0000937567
                IRS NUMBER:                           000000000
                FISCAL YEAR END:                      1231

        FILING VALUES:
                FORM TYPE:             13F-HR
                SEC ACT:               1934 Act
                SEC FILE NUMBER:       028-10597
                FILM NUMBER:           041096328

        BUSINESS ADDRESS:
                STREET 1:              5650 YONGE STREET
                STREET 2:              NORTH YORK
                CITY:                  ONTARIO CANADA
                ZIP:                   M2M 4H5
                BUSINESS PHONE:        4167305300

        MAIL ADDRESS:
                STREET 1:              5650 YONGE STREET
                STREET 2:              NORTH YORK
                CITY:                  ONTARIO CANADA
                ZIP:                   M2M 4H5
</SEC-HEADER>
<DOCUMENT>
<TYPE>13F-HR
<SEQUENCE>1
<FILENAME>r13f_ot-0930.txt
<DESCRIPTION>13F FILING
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 13F



EXHIBIT

A

FORM 13F COVER PAGE

Report for the Calendar Year or Quarter Ended: September 30, 2004
Check here if Amendment [ ]; Amendment Number:
This Amendment (Check only one.): [ ] is a restatement.
                                  [ ] adds new holdings entries.

Institutional Investment Manager Filing this Report:
Name:    Ontario Teachers' Pension Plan Board
Address: 5650 Yonge Street
         Toronto, ON M2M 4H5

Form 13F File Number: 028-10597

The institutional investment manager filing this report and the person by whom
it is signed hereby represent that the person signing the report is authorized
to submit it, that all information contained herein is true, correct and
complete, and that it is understood that all required items, statements,
schedules, lists, and tables, are considered integral parts of this
submission.

Person Signing this Report on Behalf of Reporting Manager:

Name:  Roger Barton
Title: Vice President, General Counsel & Secretary
Phone: 416.730.5321

Signature,            Place,               and Date of Signing:
Roger Barton          Toronto, Ontario     Tuesday, October 26, 2004

Report Type (Check only one.): [X]  13F HOLDINGS REPORT.
                               [ ]  13F NOTICE.
                               [ ]  13F COMBINATION REPORT.

List of Other Managers Reporting for this Manager:

<PAGE>

                        FORM 13F SUMMARY PAGE

            Report Summary:

            Number of Other Included Managers: 1

            Form 13F Information Table Entry Total: 226

            Form 13F Information Table Value Total (x$1000): 6989246

List of Other Included Managers:

No.    13F File Number          Name
 01    028-10596                Golden Apple Income Inc.

<PAGE>

        FORM 13F INFORMATION TABLE

<TABLE>                       <C>                                    <C>
                                              VALUE    SHARES/  SH/ PUT/ INVSTMT

| NAME OF ISSUER | TITLE OF CLASS | CUSIP | (x$1000) | PRN AMT | PRN CALL | DSCRETN |
| --- | --- | --- | --- | --- | --- | --- |
| A D C TELECOMMUNICATIONS | COM | 000886101 | 297 | 164000 | SH | SOLE |
| ABB LTD | SPONSORED ADR | 000375204 | 796 | 130000 | SH | SOLE |
| ABBOTT LABS | COM | 002824100 | 5757 | 135900 | SH | SOLE |
| ABER DIAMOND CORP | COM | 002893105 | 18966 | 550297 | SH | SOLE |
| ABITIBI-CONSOLIDATED INC | COM | 003924107 | 27890 | 4433932 | SH | SOLE |
| ACCENTURE LTD BERMUDA | CL A | G1150G111 | 6281 | 232200 | SH | SOLE |
| ADTRAN INC | COM | 00738A106 | 454 | 20000 | SH | SOLE |
| AGNICO EAGLE MINES LTD | COM | 008474108 | 8378 | 589900 | SH | SOLE |
| AGNICO EAGLE MINES LTD | *W EXP 11/07/20 | 008474132 | 331 | 105000 | SH | SOLE |
| AGRIUM INC | COM | 008916108 | 4446 | 250300 | SH | SOLE |
| AKZO NOBEL NV | SPONSORED ADR | 010199305 | 383 | 10800 | SH | SOLE |
| ALBERTO CULVER CO | CL B CONV | 013068101 | 2328 | 53550 | SH | SOLE |
| ALCAN INC | COM | 013716105 | 177198 | 3701836 | SH | SOLE |
| ALCOA INC | COM | 013817101 | 4948 | 147300 | SH | SOLE |
| ALLERGAN INC | COM | 018490102 | 1821 | 25100 | SH | SOLE |
| ALLIANCE ATLANTIS COMMUNICAT | CL B NON-VTG | 01853E204 | 7576 | 343428 | SH | SOLE |
| ALLSTATE CORP | COM | 020002101 | 28218 | 588000 | SH | SOLE |
| ALTRIA GROUP INC | COM | 02209S103 | 26535 | 564100 | SH | SOLE |
| AMERICAN INTL GROUP INC | COM | 026874107 | 33947 | 499300 | SH | SOLE |
| AMGEN INC | COM | 031162100 | 3922 | 69204 | SH | SOLE |
| ANGIOTECH PHARMACEUTICALS IN | COM | 034918102 | 15230 | 753096 | SH | SOLE |
| APOLLO GOLD CORP | COM | 03761E102 | 876 | 1075000 | SH | SOLE |
| APPLIED MATLS INC | COM | 038222105 | 541 | 32800 | SH | SOLE |
| ATI TECHNOLOGIES INC | COM | 001941103 | 41211 | 2687654 | SH | SOLE |
| ATMEL CORP | COM | 049513104 | 1852 | 511500 | SH | SOLE |
| AVANEX CORP | COM | 05348W109 | 78 | 38000 | SH | SOLE |
| AXCAN PHARMA INC | COM | 054923107 | 6961 | 448440 | SH | SOLE |
| BALLARD PWR SYS INC | COM | 05858H104 | 4886 | 661185 | SH | SOLE |
| BANK MONTREAL QUE | COM | 063671101 | 232076 | 5304173 | SH | SOLE |
| BANK NEW YORK INC | COM | 064057102 | 8503 | 291500 | SH | SOLE |
| BANK NOVA SCOTIA HALIFAX | COM | 064149107 | 263526 | 9014102 | SH | SOLE |
| BANK OF AMERICA CORPORATION | COM | 060505104 | 37059 | 855272 | SH | SOLE |
| BARRICK GOLD CORP | COM | 067901108 | 68107 | 3236086 | SH | SOLE |
| BAXTER INTL INC | COM | 071813109 | 3058 | 95100 | SH | SOLE |
| BCE INC | COM | 05534B109 | 243321 | 11285621 | SH | SOLE |
| BEMA GOLD CORP | COM | 08135F107 | 5025 | 1579766 | SH | SOLE |
| BIOVAIL CORP | COM | 09067J109 | 20446 | 1185405 | SH | SOLE |
| BLYTH INC | COM | 09643P108 | 2318 | 75000 | SH | SOLE |
| BP PLC | SPONSORED ADR | 055622104 | 1863 | 32375 | SH | SOLE |
| BRASCAN CORP | CL A LTD VT SH | 10549P606 | 22724 | 753239 | SH | SOLE |
| BROOKFIELD PPTYS CORP | COM | 112900105 | 19110 | 595183 | SH | SOLE |
| CAE INC | COM | 124765108 | 6005 | 1379934 | SH | SOLE |
| CAMBIOR INC | COM | 13201L103 | 5621 | 1845422 | SH | SOLE |
| CAMECO CORP | COM | 13321L108 | 30569 | 385013 | SH | SOLE |
| CANADIAN NAT RES LTD | COM | 136385101 | 139311 | 3486628 | SH | SOLE |
| CANADIAN NATL RY CO | COM | 136375102 | 102561 | 2096845 | SH | SOLE |
| CANADIAN PAC RY LTD | COM | 13645T100 | 35816 | 1384758 | SH | SOLE |
| CANADIAN SUPERIOR ENERGY INC | COM | 136644101 | 370 | 200000 | SH | SOLE |
| CANWEST GLOBAL COMMUNICATION | SHS NON VTG | 1389063C0 | 804 | 102965 | SH | SOLE |
| CDN IMPERIAL BK OF COMMERCE | COM | 136069101 | 204635 | 3822053 | SH | SOLE |
| CELESTICA INC | SUB VTG SHS | 15101Q108 | 20364 | 1603595 | SH | SOLE |
| CHC HELICOPTER CORP | CL A SUB VTG | 12541C203 | 8750 | 225705 | SH | SOLE |
| CHEVRONTEXACO CORP | COM | 166764100 | 3690 | 68800 | SH | SOLE |
| CIGNA CORP | COM | 125509109 | 4164 | 59800 | SH | SOLE |
| CISCO SYS INC | COM | 17275R102 | 5111 | 282400 | SH | SOLE |
| CITIGROUP INC | COM | 172967101 | 34956 | 792300 | SH | SOLE |
| COCA COLA CO | COM | 191216100 | 8090 | 202000 | SH | SOLE |

| | | | | | |
|---|---|---|---|---|---|
| COGNOS INC | COM | 19244C109 | 30551 | 855791 SH | SOLE |
| COLGATE PALMOLIVE CO | COM | 194162103 | 741 | 16400 SH | SOLE |
| COMPANHIA VALE DO RIO DOCE | SPON ADR PFD | 204412100 | 3540 | 183900 SH | SOLE |
| CONOCOPHILLIPS | COM | 20825C104 | 30932 | 373355 SH | SOLE |
| CORUS ENTERTAINMENT INC | COM CL B NON VT | 220874101 | 7837 | 421488 SH | SOLE |
| COTT CORP QUE | COM | 22163N106 | 18130 | 620992 SH | SOLE |
| CP SHIPS LTD | COM | 22409V102 | 17302 | 1424639 SH | SOLE |
| CRANE CO | COM | 224399105 | 2097 | 72500 SH | SOLE |
| CREO INC | COM | 225606102 | 4566 | 554915 SH | SOLE |
| CRYSTALLEX INTL CORP | COM | 22942F101 | 1599 | 480000 SH | SOLE |
| DARDEN RESTAURANTS INC | COM | 237194205 | 4223 | 181100 SH | SOLE |
| DECOMA INTERNATIONAL INC | CL A SUB VTG | 24359C100 | 533 | 65757 SH | SOLE |
| DEVRY INC DEL | COM | 251893103 | 2189 | 105700 SH | SOLE |
| DIEBOLD INC | COM | 253651103 | 2363 | 50600 SH | SOLE |
| DOMTAR INC | COM | 257561100 | 4535 | 377056 SH | SOLE |
| DOREL INDS INC | CL B SUB VTG | 25822C205 | 6496 | 230635 SH | SOLE |
| DOW CHEM CO | COM | 260543103 | 5309 | 117500 SH | SOLE |
| DST SYS INC DEL | COM | 233326107 | 2059 | 46300 SH | SOLE |
| ELDORADO GOLD CORP NEW | COM | 284902103 | 8141 | 2515629 SH | SOLE |
| ENBRIDGE INC | COM | 29250N105 | 52628 | 1260969 SH | SOLE |
| ENCANA CORP | COM | 292505104 | 192025 | 4159390 SH | SOLE |
| ENERPLUS RES FD | UNIT TR G NEW | 29274D604 | 6518 | 200000 SH | DEFINED 01 |
| EXTENDICARE INC CDA | SUB VTG SH | 30224T871 | 15236 | 1184292 SH | SOLE |
| EXXON MOBIL CORP | COM | 30231G102 | 9908 | 205000 SH | SOLE |
| FAIRFAX FINL HLDGS LTD | SUB VTG | 303901102 | 13274 | 106857 SH | SOLE |
| FAIRMONT HOTELS RESORTS INC | COM | 305204109 | 13648 | 498542 SH | SOLE |
| FEDERAL NATL MTG ASSN | COM | 313586109 | 21410 | 337700 SH | SOLE |
| FIRSTSERVICE CORP | SUB VTG SH | 33761N109 | 1900 | 79794 SH | SOLE |
| FNX MNG CO INC | COM | 30253R101 | 1899 | 375000 SH | SOLE |
| FORDING CDN COAL TR | TR UNIT | 345425102 | 724205 | 12974102 SH | DEFINED 01 |
| FOUR SEASONS HOTEL INC | LTD VTG SH | 35100E104 | 1632 | 25511 SH | SOLE |
| FOX ENTMT GROUP INC | CL A | 35138T107 | 10267 | 370100 SH | SOLE |
| FRANCE TELECOM | SPONSORED ADR | 35177Q105 | 813 | 32500 SH | SOLE |
| GAMMON LAKE RES INC | COM | 364915108 | 1454 | 250000 SH | SOLE |
| GENERAL DYNAMICS CORP | COM | 369550108 | 7882 | 77200 SH | SOLE |
| GENERAL ELEC CO | COM | 369604103 | 3784 | 112700 SH | SOLE |
| GILDAN ACTIVEWEAR INC | SUB VTG SHS A | 375916103 | 3321 | 117890 SH | SOLE |
| GLAMIS GOLD LTD | COM | 376775102 | 19937 | 1076831 SH | SOLE |
| GOLDCORP INC NEW | COM | 380956409 | 11017 | 795660 SH | SOLE |
| GOLDEN STAR RES LTD CDA | COM | 38119T104 | 6624 | 1262700 SH | SOLE |
| GOLDMAN SACHS GROUP INC | COM | 38141G104 | 2331 | 25000 SH | SOLE |
| GOODRICH CORP | COM | 382388106 | 2666 | 85000 SH | SOLE |
| GROUPE CGI INC | CL A SUB VTG | 39945C109 | 18210 | 2707658 SH | SOLE |
| GSI LUMONICS INC | COM | 362290102 | 5709 | 546674 SH | SOLE |
| HEWLETT PACKARD CO | COM | 428236103 | 31387 | 1674000 SH | SOLE |
| HOME DEPOT INC | COM | 437076102 | 7954 | 202900 SH | SOLE |
| HUB INTERNATIONAL LTD | COM | 44332P101 | 1873 | 104030 SH | SOLE |
| HUBBELL INC | CL B | 443510201 | 2779 | 62000 SH | SOLE |
| HUMMINGBIRD INC | COM | 44544R101 | 3807 | 185016 SH | SOLE |
| IAMGOLD CORP | COM | 450913108 | 11949 | 1492351 SH | SOLE |
| ID BIOMEDICAL CORP | COM | 44936D108 | 3409 | 263700 SH | SOLE |
| IMAX CORP | COM | 45245E109 | 421 | 75000 SH | SOLE |
| IMPERIAL OIL LTD | COM NEW | 453038408 | 52765 | 1018473 SH | SOLE |
| INCO LTD | *W EXP 08/21/20 | 453258139 | 4013 | 237587 SH | SOLE |
| INCO LTD | COM | 453258402 | 47744 | 1221527 SH | SOLE |
| INTEL CORP | COM | 458140100 | 4012 | 200000 SH | SOLE |
| INTERNATIONAL BUSINESS MACHS | COM | 459200101 | 10812 | 126100 SH | SOLE |
| INTERTAPE POLYMER GROUP INC | COM | 460919103 | 1534 | 204103 SH | SOLE |
| INTIER AUTOMOTIVE INC | CL A | 46115N104 | 726 | 35000 SH | SOLE |
| INTRAWEST CORPORATION | COM NEW | 460915200 | 13249 | 697716 SH | SOLE |

| | | | | | | |
|---|---|---|---|---|---|---|
| IPSCO INC | COM | 462622101 | 24286 | 870296 | SH | SOLE |
| IVANHOE ENERGY INC | COM | 465790103 | 252 | 120625 | SH | SOLE |
| IVANHOE MINES LTD | COM | 46579N103 | 6542 | 1164500 | SH | SOLE |
| J P MORGAN CHASE & CO | COM | 46625H100 | 45689 | 1150000 | SH | SOLE |
| JONES APPAREL GROUP INC | COM | 480074103 | 5370 | 150000 | SH | SOLE |
| KINDER MORGAN INC KANS | COM | 49455P101 | 2287 | 36400 | SH | SOLE |
| KINGSWAY FINL SVCS INC | COM | 496904103 | 7605 | 580460 | SH | SOLE |
| KINROSS GOLD CORP | COM NEW | 496902206 | 25947 | 3826708 | SH | SOLE |
| KROGER CO | COM | 501044101 | 21728 | 1400000 | SH | SOLE |
| LEAR CORP | COM | 521865105 | 27595 | 306800 | SH | SOLE |
| LEXMARK INTL NEW | CL A | 529771107 | 2361 | 28100 | SH | SOLE |
| LOCKHEED MARTIN CORP | COM | 539830109 | 5288 | 94800 | SH | SOLE |
| MAGNA INTL INC | CL A | 559222401 | 79692 | 1075175 | SH | SOLE |
| MANULIFE FINL CORP | COM | 56501R106 | 317595 | 7245629 | SH | SOLE |
| MARRIOTT INTL INC NEW | CL A | 571903202 | 442 | 8500 | SH | SOLE |
| MASONITE INTL CORP | COM | 575384102 | 14476 | 575005 | SH | SOLE |
| MBIA INC | COM | 55262C100 | 3149 | 54100 | SH | SOLE |
| MCDONALDS CORP | COM | 580135101 | 6993 | 249500 | SH | SOLE |
| MDS INC | COM | 55269P302 | 17428 | 1136566 | SH | SOLE |
| MEADWESTVACO CORP | COM | 583334107 | 3413 | 107000 | SH | SOLE |
| MEDTRONIC INC | COM | 585055106 | 3041 | 58600 | SH | SOLE |
| MERCANTILE BANKSHARES CORP | COM | 587405101 | 3559 | 74200 | SH | SOLE |
| MERCK & CO INC | COM | 589331107 | 7484 | 226800 | SH | SOLE |
| MEREDITH CORP | COM | 589433101 | 2137 | 41600 | SH | SOLE |
| MERIDIAN GOLD INC | COM | 589975101 | 12684 | 763366 | SH | SOLE |
| MERRILL LYNCH & CO INC | COM | 590188108 | 1740 | 35000 | SH | SOLE |
| METHANEX CORP | COM | 59151K108 | 26774 | 1790484 | SH | SOLE |
| MI DEVS INC | CL A SUB VTG | 55304X104 | 9409 | 365237 | SH | SOLE |
| MICROCHIP TECHNOLOGY INC | COM | 595017104 | 3758 | 140000 | SH | SOLE |
| MICROSOFT CORP | COM | 594918104 | 12172 | 440200 | SH | SOLE |
| MINEFINDERS LTD | COM | 602900102 | 1788 | 259700 | SH | SOLE |
| MIRAMAR MINING CORP | COM | 60466S100 | 747 | 590000 | SH | SOLE |
| MORGAN STANLEY | COM NEW | 617446448 | 1972 | 40000 | SH | SOLE |
| NATIONAL SEMICONDUCTOR CORP | COM | 637640103 | 3047 | 196700 | SH | SOLE |
| NATIONWIDE FINL SVCS INC | CL A | 638612101 | 5126 | 146000 | SH | SOLE |
| NEUROCHEM INC | COM | 64125K101 | 2139 | 125000 | SH | SOLE |
| NEXEN INC | COM | 65334H102 | 815241 | 19533318 | SH | SOLE |
| NEXTEL COMMUNICATIONS INC | CL A | 65332V103 | 4053 | 170000 | SH | SOLE |
| NORANDA INC | COM | 655422103 | 22100 | 1269669 | SH | SOLE |
| NORTEL NETWORKS CORP NEW | COM | 656568102 | 129241 | 38165410 | SH | SOLE |
| NORTH FORK BANCORPORATION NY | COM | 659424105 | 3627 | 81600 | SH | SOLE |
| NORTHEAST UTILS | COM | 664397106 | 3866 | 199400 | SH | SOLE |
| NORTHERN TR CORP | COM | 665859104 | 7785 | 190800 | SH | SOLE |
| NORTHGATE EXPL LTD | COM | 666416102 | 3985 | 2098500 | SH | SOLE |
| NORTHROP GRUMMAN CORP | COM | 666807102 | 6698 | 125600 | SH | SOLE |
| NOVA CHEMICALS CORP | COM | 66977W109 | 1876 | 48615 | SH | SOLE |
| NOVAGOLD RES INC | COM NEW | 66987E206 | 4094 | 650000 | SH | SOLE |
| NUCOR CORP | COM | 670346105 | 3015 | 33000 | SH | SOLE |
| ORACLE CORP | COM | 68389X105 | 812 | 72000 | SH | SOLE |
| PAN AMERICAN SILVER CORP | COM | 697900108 | 8152 | 477918 | SH | SOLE |
| PARKER HANNIFIN CORP | COM | 701094104 | 4709 | 80000 | SH | SOLE |
| PETRO-CDA | COM | 71644E102 | 123413 | 2372705 | SH | SOLE |
| PETROKAZAKHSTAN INC | COM | 71649P102 | 38732 | 1140843 | SH | SOLE |
| PHELPS DODGE CORP | COM | 717265102 | 4565 | 49600 | SH | SOLE |
| PLACER DOME INC | COM | 725906101 | 96631 | 4846500 | SH | SOLE |
| POTASH CORP SASK INC | COM | 73755L107 | 16973 | 264840 | SH | SOLE |
| PRECISION DRILLING CORP | COM | 74022D100 | 29554 | 514295 | SH | SOLE |
| PRICE T ROWE GROUP INC | COM | 74144T108 | 2099 | 41200 | SH | SOLE |
| PROCTER & GAMBLE CO | COM | 742718109 | 8118 | 150000 | SH | SOLE |
| PROVIDENT ENERGY TR | TR UNIT | 74386K104 | 153 | 17250 | SH | DEFINED 01 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PRUDENTIAL FINL INC | COM | 744320102 | 5080 | 108000 | SH | SOLE |
| QLT INC | COM | 746927102 | 11303 | 683889 | SH | SOLE |
| QUEBECOR WORLD INC | COM NON-VTG | 748203106 | 14763 | 661683 | SH | SOLE |
| RESEARCH IN MOTION LTD | COM | 760975102 | 132756 | 1741650 | SH | SOLE |
| ROGERS COMMUNICATIONS INC | CL B | 775109200 | 46591 | 2301128 | SH | SOLE |
| ROGERS WIRELESS COMMUNICATIO | CL B NON-VTG | 775315104 | 6375 | 203665 | SH | SOLE |
| ROYAL BK CDA MONTREAL QUE | COM | 780087102 | 262523 | 5534665 | SH | SOLE |
| ROYAL GROUP TECHNOLOGIES LTD | SUB VTG SH | 779915107 | 4437 | 505247 | SH | SOLE |
| SABRE HLDGS CORP | CL A | 785905100 | 5274 | 215000 | SH | SOLE |
| SARA LEE CORP | COM | 803111103 | 7857 | 343700 | SH | SOLE |
| SBC COMMUNICATIONS INC | COM | 78387G103 | 6851 | 264000 | SH | SOLE |
| SCHLUMBERGER LTD | COM | 806857108 | 3763 | 55900 | SH | SOLE |
| SERVICE CORP INTL | COM | 817565104 | 2484 | 400000 | SH | SOLE |
| SHAW COMMUNICATIONS INC | CL B CONV | 82028K200 | 27966 | 1674355 | SH | SOLE |
| SIERRA WIRELESS INC | COM | 826516106 | 4636 | 259600 | SH | SOLE |
| SMTC CORP | COM | 832682108 | 519 | 1442000 | SH | SOLE |
| SPRINT CORP | COM FON GROUP | 852061100 | 28772 | 1429300 | SH | SOLE |
| STANLEY WKS | COM | 854616109 | 4253 | 100000 | SH | SOLE |
| STMICROELECTRONICS N V | NY REGISTRY | 861012102 | 5410 | 313100 | SH | SOLE |
| SUN LIFE FINL INC | COM | 866796105 | 169310 | 5603336 | SH | SOLE |
| SUNCOR ENERGY INC | COM | 867229106 | 128697 | 4026237 | SH | SOLE |
| SUNOCO INC | COM | 86764P109 | 7398 | 100000 | SH | SOLE |
| SYSCO CORP | COM | 871829107 | 1831 | 61200 | SH | SOLE |
| TALISMAN ENERGY INC | COM | 87425E103 | 108439 | 4179822 | SH | SOLE |
| TARGET CORP | COM | 87612E106 | 3249 | 71800 | SH | SOLE |
| TECO ENERGY INC | COM | 872375100 | 8072 | 596600 | SH | SOLE |
| TELESYSTEM INTL WIRELESS INC | COM NEW | 879946606 | 11964 | 1254900 | SH | SOLE |
| TELUS CORP | NON-VTG SHS | 87971M202 | 10766 | 555416 | SH | SOLE |
| TESCO CORP | COM | 88157K101 | 1972 | 182984 | SH | SOLE |
| TESMA INTL INC | CL A SUB VTG | 881908107 | 5594 | 235608 | SH | SOLE |
| TEXAS INSTRS INC | COM | 882508104 | 5639 | 265000 | SH | SOLE |
| TIME WARNER INC | COM | 887317105 | 23091 | 1430700 | SH | SOLE |
| TLC VISION CORP | COM | 872549100 | 1596 | 183100 | SH | SOLE |
| TORONTO DOMINION BK ONT | COM NEW | 891160509 | 200077 | 5486606 | SH | SOLE |
| TOTAL S A | SPONSORED ADR | 89151E109 | 284 | 2780 | SH | SOLE |
| TRANSALTA CORP | COM | 89346G107 | 18463 | 1415151 | SH | SOLE |
| TRANSCANADA CORP | COM | 89353D107 | 82147 | 3754987 | SH | SOLE |
| UNISYS CORP | COM | 909214108 | 1708 | 165500 | SH | SOLE |
| UNITED PARCEL SERVICE INC | CL B | 911312106 | 410 | 5400 | SH | SOLE |
| VASOGEN INC | COM | 92232F103 | 337 | 75000 | SH | SOLE |
| VERIZON COMMUNICATIONS | COM | 92343V104 | 40077 | 1017700 | SH | SOLE |
| VIACOM INC | CL B | 925524308 | 14716 | 438500 | SH | SOLE |
| VISHAY INTERTECHNOLOGY INC | COM | 928298108 | 2187 | 169500 | SH | SOLE |
| WESTERN SILVER CORP | COM | 959531104 | 930 | 100000 | SH | SOLE |
| WHEATON RIV MINERALS LTD | COM | 962902102 | 19352 | 6161100 | SH | SOLE |
| WHEATON RIV MINERALS LTD | *W EXP 05/30/20 | 962902177 | 2148 | 1112500 | SH | SOLE |
| XCEL ENERGY INC | COM | 98389B100 | 5196 | 300000 | SH | SOLE |
| YAMANA GOLD INC | COM | 98462Y100 | 4036 | 1569500 | SH | SOLE |
| ZARLINK SEMICONDUCTOR INC | COM | 989139100 | 2806 | 928431 | SH | SOLE |

```
</TABLE>

</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----
```