UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMBAC FINANCIAL GROUP, INC. SECURITIES LITIGATION | No. 08 Civ. 0411 (NRB)<br><br>ECF Case |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel:  (212) 373-3000
Fax:  (212) 492-0007

*Attorneys for the Underwriter Defendants*

## TABLE OF CONTENTS

|    |    | Page |
|----|----|------|
| I. | Plaintiffs Have Failed To Plead Materially False Statements With Respect to the 2007 or 2008 Offerings | 1 |
|    | A. The 2007 DISCS Offering | 2 |
|    | B. The 2008 Offerings | 4 |
| II. | The Absence of Loss Causation Is Clear from the Complaint | 7 |
| III. | Plaintiffs' 2007 Offering Claims Are Time-Barred | 8 |
| IV. | Plaintiffs Lack Standing on the 2008 Equity Offering Claims | 9 |
| Conclusion | | 10 |

i

## Table of Authorities

**CASES** — Page(s)

*In re Allied Capital Corp. Sec. Litig.,*
  No. 02 Civ. 3812, 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003) ............ 7

*In re Authentidate Holding Corp.,*
  No. 05 Civ. 5323, 2006 WL 2034644 (S.D.N.Y. July 14, 2006) ............ 10

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ............ 1, 3, 4

*In re CIT Group, Inc. Sec. Litig.,*
  349 F. Supp. 2d 685 (S.D.N.Y. 2004) ............ 7

*In re Cosi, Inc. Sec. Litig.,*
  379 F. Supp. 2d 580 (S.D.N.Y. 2005) ............ 6

*Davidoff v. Farina,*
  No. 04 Civ. 7617 (NRB), 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ............ 4

*Dodds v. Cigna Sec. Inc.,*
  12 F.3d 346 (2d Cir. 1993) ............ 8

*ECA v. JP Morgan Chase Co.,*
  No. 07-1786-cv, 2009 WL 129911 (2d Cir. Jan. 21, 2009) ............ 3, 4, 6

*Farr v. Shearson Lehman Hutton, Inc.,*
  755 F. Supp. 1219 (S.D.N.Y. 1991) ............ 9

*In re FBR Sec. Litig.,*
  544 F. Supp. 2d 346 (S.D.N.Y. 2008) ............ 2

*Garber v. Legg Mason, Inc.,*
  537 F. Supp. 2d 597 (S.D.N.Y. 2008) ............ 6, 7

*Geiger v. Solomon-Page Group, Ltd.,*
  933 F. Supp. 1180 (S.D.N.Y. 1996) ............ 6

*In re Global Crossing, Ltd. Sec. Litig.,*
  313 F. Supp. 2d 189 (S.D.N.Y. 2003) ............ 10

*Grandon v. Merrill Lynch & Co.,*
  147 F.3d 184 (2d Cir. 1998) ............ 7

*Hevesi* v. *Citigroup, Inc.*,
    366 F.3d 70 (2d Cir. 2004) ............................................................................................. 10

*Hoffman* v. *UBS-AG*,
    2008 WL 4684168 (S.D.N.Y. Oct. 22, 2008) .............................................................. 9, 10

*In re Int'l Bus. Mach. Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998) ............................................................................................. 5

*Lasker* v. *New York State Elec. & Gas Corp.*,
    85 F.3d 55 (2d Cir. 1996) ................................................................................................. 4

*LC Capital Partners, LP* v. *Frontier Ins. Group, Inc.*,
    318 F.3d 148 (2d Cir. 2003) .......................................................................................... 8, 9

*Miller* v. *Lazard, Ltd.*,
    473 F. Supp. 2d 571 (S.D.N.Y. 2007) .............................................................................. 6

*Raab* v. *General Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) ............................................................................................... 4

*In re Rait Financial Trust Sec. Litig.*,
    No. 2:07-cv-3148, 2008 WL 5378164 (E.D. Pa. Dec. 22, 2008) ..................................... 9

*San Leandro Emerg. Med. Group Profit Sharing Plan* v. *Philip Morris Cos. Inc.*,
    75 F.3d 801 (2d Cir. 1996) ............................................................................................... 4

*Schoenhaut* v. *American Sensors, Inc.*,
    986 F. Supp. 785 (S.D.N.Y. 1997) ............................................................................ 3, 4, 5

*Shah* v. *Meeker*,
    435 F.3d 244 (2d Cir. 2006) ............................................................................................. 8

*Staehr* v. *The Hartford Fin. Servs. Group, Inc.*,
    547 F.3d 406 (2d Cir. 2008) .......................................................................................... 8, 9

*Stark Trading* v. *Falconbridge Ltd.*,
    552 F.3d 568 (7th Cir. 2009) ............................................................................................ 1

*Steinberg* v. *PRT Group, Inc.*,
    88 F. Supp. 2d 294 (S.D.N.Y. 2000) ................................................................................ 4

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 Civ. 3288, 2004 WL 555697 (S.D.N.Y. Mar. 19, 2004) ..................................... 10

Instead of responding substantively to the arguments raised in the Underwriter Defendants' motion to dismiss, plaintiffs urge the Court, on each issue, to leave decision for another day. Plaintiffs' diluted concept of federal pleading standards would permit virtually any complaint to proceed. But binding case law (which plaintiffs barely mention) requires engagement *now* on the question whether plaintiffs have succeeded in pleading claims against the Underwriter Defendants under the Securities Act. We respectfully submit that they have not.[1]

## I. PLAINTIFFS HAVE FAILED TO PLEAD MATERIALLY FALSE STATEMENTS WITH RESPECT TO THE 2007 OR 2008 OFFERINGS

As explained in the Underwriters' opening brief ("Und. Br."), plaintiffs' formulaic approach to pleading a materially false statement is inadequate to state a claim. Plaintiffs' complaint merely lists pre-offering disclosures (sometimes pre-dating the offering by a year or more) that were incorporated by reference in the offering materials; identifies very general facts plaintiffs consider, with hindsight, to be important; and claims the pre-offering disclosures were misleading because they omitted the "important facts." In the footnote containing their sole reference to the controlling case, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), plaintiffs contend that this rote approach and their say-so as to falsity and materiality satisfies principles of notice pleading. (Pl. Opp. 55 n.36.)

Plaintiffs' approach, if permitted, would allow virtually any claim to proceed and would entirely undermine *Twombly*. The Supreme Court requires plaintiffs to provide sufficient facts to enable a court to determine the plausibility of their claim before they are "allowed to take up the time of a number of other people [in discovery], with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 127 S. Ct. at 1966 (internal quotation marks omitted); *see also Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 574 (7th Cir. 2009) (a complaint, post-*Twombly*, must "include sufficient allegations to enable a judgment that the claim has enough possible

---

[1] The Underwriter Defendants hereby adopt and incorporate the arguments set forth in the reply briefs of Ambac and the individual defendants, and of KPMG.

merit to warrant the protracted litigation likely to ensue from denying a motion to dismiss."). Nothing in plaintiffs' brief establishes how their allegations support an inference that the challenged disclosures were rendered misleading by the purported omissions.

### A. The 2007 DISCS Offering

Plaintiffs' onus in their brief was to respond to the Underwriters' showing that none of the three Ambac statements at issue, each incorporated by reference in the offering materials, was materially false or misleading as of the time of the offering in February 2007: (1) a statement by Ambac's CEO that Ambac had a "solid level of deal inquiries" and was "judiciously allocating our capital to transactions that enable us to continue to deliver superior returns"; (2) a statement in a 10-Q describing the method by which Ambac surveilled its insured portfolio; and (3) Ambac's announcement of its fourth quarter 2006 financial results. (Compl. ¶¶ 399, 402-04, 406-07.) According to the Complaint, these statements were false and misleading because they allegedly failed to disclose that unspecified mortgage originators had lowered their underwriting standards, that Ambac had lowered its underwriting standards, and that the collateral supporting Ambac's RMBS exposures showed "negative trends." (Compl. ¶¶ 400, 405, 408.) Yet nothing in plaintiffs' brief establishes the plausibility of their claim. Plaintiffs treat the Underwriters' objections as mere demands for more detail than is required under Rule 8 (Pl. Opp. 59), and all but ignore the Underwriter Defendants' arguments that these allegations are insufficient to demonstrate falsity.

*First*, plaintiffs fail to address at all the Complaint's principal defect with respect to the 2007 DISCS offering: that none of the challenged Ambac statements discussed either underwriting standards or trends in collateral value. Thus, none of the challenged Ambac statements could possibly have been rendered misleading by a failure to include disclosures about those matters. An omission can give rise to a claim only if it is "sufficiently connected to Defendants' existing disclosures to make those public statements misleading." *In re FBR Sec. Litig.*, 544 F. Supp. 2d 346, 357 (S.D.N.Y. 2008)

(quoting *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006)). The Complaint provides no reason why statements about the level of deal inquiries, methods of portfolio surveillance, or *past* earnings statements would be misleading in the absence of a discussion of underwriting standards or trends in collateral value.[2] Nor does the Complaint even provide any facts, as required by *Twombly*, supporting plaintiffs' conclusory assertions that as of February 2007 (i) Ambac's underwriting standards or its collateral values had declined, (ii) Ambac's level of deal inquiries was less than "solid," or (iii) its financial statements were misstated.[3]

*Second*, plaintiffs dispute (in a footnote) that the "puffery" doctrine applies to Ambac's statements about a "solid level of deal inquiries" and "judicious allocation of capital." Plaintiffs claim this doctrine is inapplicable because there were purportedly contradictory undisclosed facts (though no such facts are specifically alleged). (Pl. Opp. 59 n.41.) Plaintiffs misunderstand the doctrine. It holds that general optimistic statements like these are immaterial as a matter of law—regardless of whether they are allegedly inaccurate—because no reasonable investor would rely on them.

Thus, plaintiffs ignore the numerous precedents in this Circuit holding that virtually indistinguishable statements are "puffery." Indeed, less than a month ago in *ECA v. JP Morgan Chase Co.*, No. 07-1786-cv, 2009 WL 129911, at *12-13 (2d Cir. Jan. 21, 2009), the Second Circuit found statements that JPMC had a "highly disciplined" risk management process and would continue to "reposition and strengthen [its] franchises with a focus on financial discipline" to be inactionable puffery. These statements, the Court found, "were merely generalizations regarding JPMC's business practices" and "did not, and could not, amount to a guarantee that its choices would prevent failures in

---

[2] See *Schoenhaut v. American Sensors, Inc.*, 986 F. Supp. 785, 793 (S.D.N.Y. 1997) (dismissing Section 11 claim based on failure to disclose that sales to largest customer were decreasing, because prospectus did not discuss the volume of sales to that customer).

[3] Because plaintiffs have disclaimed for purposes of their Securities Act claims any reliance on the Exchange Act allegations in their Complaint, the sparse reasons they have alleged as to why the statements are false and misleading are the only allegations the Court can consider in determining whether plaintiffs have stated a claim. (*See* Compl. ¶¶ 351, 354; Pl. Opp. at 56 & n.37.)

3

its risk management practices." *Id.* at *12-13. Like JPMC's statements, Ambac's statement that it was "judiciously allocating [its] capital to transactions that enable [it] to continue to deliver superior returns" is "too general to cause a reasonable investor to rely" on it and did not constitute a guarantee of "superior returns." *Id.* at *13. Moreover, this Court has held that a statement that a company was seeing "continued strong demand"—also nearly identical to Ambac's statement that it was witnessing a "solid level of deal inquiries"—is too vague to be considered material. *Schoenhaut v. American Sensors, Inc.*, 986 F. Supp. 785, 791 (S.D.N.Y. 1997).[4] Plaintiffs' brief thus fails to support the existence of a materially misleading statement in the 2007 DISCS offering.

## B. The 2008 Offerings

Plaintiffs' brief does not dispute that the March 2008 offerings occurred in the midst of great market turmoil. Nor does their brief offer any substantive response to the Underwriter Defendants' showing that the offering materials contained extensive disclosures regarding that turmoil and its effect on Ambac. Instead, in a single conclusory paragraph, plaintiffs again invoke say-so, offering the bald assertion that they have sufficiently alleged that the statements incorporated by reference in the 2008 offering documents were false and misleading. (Pl. Opp. 60.)

Unsupported say-so does not satisfy *Twombly*. Plaintiffs' approach utterly fails to consider the total mix of information available to investors as of March 2008. Plaintiffs cite sentences in earlier documents that were incorporated by reference *but ignore the later disclosures (including the prospectuses themselves) that were also part of the offering materials*. Indeed, the Complaint does

---

[4] *See also San Leandro Emerg. Med. Group Profit Sharing Plan v. Philip Morris Cos. Inc.*, 75 F.3d 801, 806-07, 811 (2d Cir. 1996) (rejecting claim based on statement company was doing well within competitive environment); *Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 58 (2d Cir. 1996) (rejecting claim based on statement company was committed to increased earnings and convinced of its business strategy); *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993) (rejecting claim based on statement company was poised to carry its success into the future); *Davidoff v. Farina*, No. 04 Civ. 7617 (NRB), 2005 WL 2030501, at *14 (S.D.N.Y. Aug. 22, 2005) (public touting of product and market potential held to be puffery); *Steinberg v. PRT Group, Inc.*, 88 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (rejecting claim based on statement company had competitive advantage in recruiting).

4

not even mention the disclosures in the prospectuses for those offerings. Those later disclosures plainly updated the earlier disclosures which plaintiffs claim were misleading, including information about weakened mortgage industry underwriting standards (Und. Br. at 11), Ambac's inability to insulate itself from its exposure to credit risk (*id.* at 11-13), the actual amount of its exposure by loan type (including subprime) (*id.* at 12-13), and the possibility of flaws in its valuation models (*id.* at 12). Among these disclosures—ignored in the Complaint and equally absent from plaintiffs' brief—were:

- Ambac had written virtually no new business to date in 2008 and had suspended underwriting of structured finance business (*id.* at 14-15), thus hampering Ambac's ability to earn revenues and to absorb additional credit losses.

- Ambac had been downgraded by the ratings agencies (*id.* at 14), a point of particular note because plaintiffs' brief acknowledges that "investors, analysts and Defendants alike knew" that a ratings downgrade would severely damage Ambac's ability to do business (Pl. Opp. 5).

- Ambac's CEO had resigned and Ambac had reduced its dividend to a penny per share. (Und. Br. at 14.)

- Ambac announced a $5 billion writedown in January 2008, in addition to multi-billion dollar writedowns in the preceding months, as a result of mark-to-market losses in credit exposures. (*Id.* at 13.)

- With respect to the financial results plaintiffs challenge, Ambac disclosed that outside parties, including underwriters, disagreed with Ambac's estimates of its mark-to-market losses and believed the losses would "exceed the amounts [Ambac] . . . reported." (*Id.* at 15.)

Consideration of these disclosures is critical to an evaluation of whether the statements on which plaintiffs focus were materially misleading. "A statement is material only if there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *In re Int'l Bus. Mach. Corp. Sec. Litig.*, 163 F.3d 102, 106-07 (2d Cir. 1998) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)); *see also Schoenhaut*, 986 F. Supp. at 790 ("A court should determine whether a statement was 'material' by adopting the perspective of an investor on the date the registration containing the prospectus at issue became effective."). Plaintiffs may not divorce the alleged omissions from the "total mix" surrounding them.

5

Plaintiffs respond that these arguments raise factual disputes that cannot be resolved on a motion to dismiss. (Pl. Opp. 60.) The Second Circuit rejected this view less than a month ago when it affirmed the dismissal of an action on grounds of lack of materiality. *ECA*, 2009 WL 129911.[5] And plaintiffs provide no basis on which the Court could infer that the older disclosures were material in light of the *updated* disclosures in the contemporaneous offering materials. Plaintiffs provide no explanation why snippets they have selected from earnings releases issued as much as 14 months before the March 2008 offerings (Compl. ¶¶ 410, 411, 417, 419, 428, 433, 435) would be material despite the existence of *subsequent* earnings releases prior to the offering.

As an example, plaintiffs allege that various pre-offering documents were misleading because they failed to disclose lowered mortgage underwriting standards. (Compl. ¶¶ 416, 418, 423, 427, 432, 434, 438.) But plaintiffs ignore prominent disclosures in the prospectuses for the March 2008 offerings stating that as of the time of those offerings "[t]he underlying loans . . . are experiencing near-record volumes of delinquencies and losses, due to factors such as *weak mortgage industry underwriting standards*." (Wilson Decl. Ex. 58, at S-30; Ex. 59, at S-50 (emphasis added).) Thus, the offering materials themselves provided the very disclosure plaintiffs allege was omitted.

Plaintiffs also undermine their own claim with respect to the increase in loss reserves Ambac recorded before the March 2008 offerings. They assert that this increase does not cure the earlier, allegedly misleading disclosures of loss reserves because the offering materials "failed to disclose the true extent and cause of these losses, *i.e.*, the risky mortgage lending characteristics of the underlying collateral, which were only disclosed on April 23, 2008 and thereafter." (Pl. Opp. 55-56.) Yet, in their brief, plaintiffs assert that when Ambac announced the increased loss reserves on January

---

[5] *See also Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008) (dismissing 1933 Act claims where allegations were too conclusory to permit court to assess materiality); *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571 (S.D.N.Y. 2007) (granting motion to dismiss based on lack of materiality); *In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580 (S.D.N.Y. 2005) (same); *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1184-87 (S.D.N.Y. 1996) (same).

6

16, 2008, "investors realized that Ambac's underwriting could not have been 'strict,' 'conservative' or 'rigorous' and that . . . Ambac's RMBS-related exposures had performed no better than the rest of the mortgage market." (Pl. Opp. 15-16.) If, as plaintiffs assert, the January 2008 announcement alerted investors to the risky nature of the collateral, they cannot also claim the March 2008 offering materials, which incorporated the facts disclosed in the January announcement, failed to inform them of that very fact.

Finally, plaintiffs' bare assertion (Pl. Opp. 63) that Ambac's reserves should have been larger fails to meet their pleading obligations. Reserves represent an inherent valuation judgment. *See, e.g., In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 689-91 (S.D.N.Y. 2004). Plaintiffs adduce no facts supporting their say-so, or any quantification that would permit the Court to assess materiality. *See Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 613 (S.D.N.Y. 2008) (dismissing 1933 Act claims relating to financial disclosures where pleadings did not disclose magnitude as being "too conclusory, as they offer no possibility at all of assessing materiality as a matter of law.").[6]

Plaintiffs' brief therefore fails to show how the Complaint alleges facts sufficient to state a "plausible" claim that the March 2008 offering materials were materially misleading, in light of the total mix of information available to investors.

## II. THE ABSENCE OF LOSS CAUSATION IS CLEAR FROM THE COMPLAINT

Plaintiffs urge the Court to ignore the impact of the monumental collapse of the credit market because "the Securities Act allegations never refer to the collapse of the credit market." (*Id.* at 66.) Plaintiffs' brief cites no authority—because there is none—for the proposition that the Court should turn a blind eye to plaintiffs' own express admissions about that collapse in the Exchange Act

---

[6] *Cf. Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 193 (2d Cir. 1998) ("A plaintiff's conclusory allegation that markups are excessive is similar to a barroom generality" in securities fraud case); *In re Allied Capital Corp. Sec. Litig.*, No. 02 Civ. 3812, 2003 WL 1964184, at *4-5 (S.D.N.Y. Apr. 25, 2003) (allegation that valuations were wrong, without factual support or quantification, insufficient to state fraud claim).

section of the Complaint, or to the other materials properly before the Court. Nor do plaintiffs identify any corrective disclosure, revealing matters previously concealed, that would permit them to tie their losses to the allegedly misleading disclosures instead of market events. (*See* Ambac Br. 30-31.)

## III. PLAINTIFFS' 2007 OFFERING CLAIMS ARE TIME-BARRED

Plaintiffs seek to postpone this Court's consideration of the statute of limitations issue by arguing that inquiry notice is not suitable for resolution on a motion to dismiss. (Pl. Opp. 68.) On the contrary, the Court of Appeals recently confirmed that "courts can readily resolve the issue of inquiry notice as a matter of law on a motion to dismiss" when the facts relevant to inquiry notice are apparent from the face of the complaint or are matters of which judicial notice may be taken. *See Staehr v. The Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 412, 424-26 (2d Cir. 2008). Indeed, the Second Circuit has noted that "a vast number of cases in this circuit" resolve inquiry notice issues "at the pleading stage." *Dodds v. Cigna Sec. Inc.*, 12 F.3d 346, 352 n.3 (2d Cir. 1993); *see also LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148, 156-57 (2d Cir. 2003) (noting that district court's ruling on inquiry notice was appropriate on a motion to dismiss).

Plaintiffs' response fares no better on substance. *First*, plaintiffs' assertion that the storm warnings cited by defendants are insufficient to put them on inquiry notice because they consisted only of information about "general conditions in the housing market and performance of RMBS-related instruments" (Pl. Opp. 69) is flatly wrong. In fact, *each* of the storm warnings discussed in the Underwriters' brief (at 19) was specific to Ambac itself.[7] These Ambac-specific storm warnings were more than sufficient to place plaintiffs on inquiry notice. *See Shah v. Meeker*, 435 F.3d 244, 250-51 (2d Cir. 2006) (company-specific storm warnings were sufficient to trigger a duty to inquire). *Second*, the contemporaneous statements to which plaintiffs point did not excuse

---

[7] For this reason, plaintiffs' reliance on the Second Circuit's holding in *Staehr* is inapposite. (Pl. Opp. 69-70.) In that case, the Court vacated the district court's holding that seventeen articles about "contingent

8

plaintiffs from any duty of inquiry. (Pl. Opp. 70-71.) It is well-settled that mere expressions of optimism and hope—such as Ambac's statements that it was solid and safe and comfortable with its book of business—are insufficient to excuse plaintiffs from inquiring into the alleged fraud. *See LC Capital Partners*, 318 F.3d at 155-56 (investor of ordinary intelligence could not rely on flimsy expressions of optimism and hope to avoid duty to inquire); *Farr v. Shearson Lehman Hutton, Inc.*, 755 F. Supp. 1219, 1228 (S.D.N.Y. 1991) ("[S]tatements of cautious optimism, reiterations of the goal of providing income to investors, and explanations for past poor performance do not rise to the level ... necessary to excuse a reasonable investor from the duty of inquiry.").

## IV. PLAINTIFFS LACK STANDING ON THE 2008 EQUITY OFFERING CLAIMS

Plaintiffs again seek to defer scrutiny of their claims by arguing that the standing question should be deferred to the class certification stage. (Pl. Opp. 73.) Plaintiffs' argument ignores that the standing issue—a constitutional inquiry—is antecedent to and distinct from the class certification analysis. *See Hoffman v. UBS-AG*, 2008 WL 4684168, at *5 (S.D.N.Y. Oct. 22, 2008) (Sand, J.). Simply put, "[i]f Plaintiffs do not have constitutional standing, this Court lack[s] subject matter jurisdiction to address the merits of their claims." *In re Rait Financial Trust Sec. Litig.*, No. 2:07-cv-3148, 2008 WL 5378164, at *4 (E.D. Pa. Dec. 22, 2008) (internal quotation marks omitted).

While not disputing that none of the lead or named plaintiffs here purchased or acquired securities in the 2008 Equity Units Offering, plaintiffs argue they have standing to bring claims based on the Equity Units Offering because one of the lead plaintiffs purchased securities in the 2008 Common Stock Offering, and because the alleged harm to the purchasers of both 2008 offerings stems from the same purportedly improper conduct. This Court considered and rejected an identical argument in holding that plaintiffs did not meet Article III's "injury requirement for claims

---

commission" kickbacks put plaintiffs on notice that The Hartford might be engaging in fraud, when The Hartford was mentioned in passing only in one of those articles. *Staehr*, 547 F.3d at 418, 429.

relating to funds in which they have not purchased shares because they cannot claim to be personally injured by the violation relating to those funds." *Hoffman*, 2008 WL 4684168, at *3; *see also In re Authentidate Holding Corp.*, No. 05 Civ. 5323, 2006 WL 2034644, at *7 (S.D.N.Y. July 14, 2006) (dismissing case where lead plaintiff failed "to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff...").[8] Because none of the lead or named plaintiffs purchased securities in the 2008 Equity Units Offering, they were not injured by the alleged violations in that offering, and lack standing to assert claims relating to those securities.

### Conclusion

For the reasons set forth in the moving and reply briefs of the Underwriter Defendants and those in the other defendants' submissions, the Underwriter Defendants respectfully request that the Court dismiss plaintiffs' claims against them in their entirety, with prejudice.

Dated: New York, New York
February 10, 2009

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: ___/s/ Brad S. Karp___
    Brad S. Karp
    Charles E. Davidow
    Joyce S. Huang

1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000
Fax: (212) 492-0007
E-mail: bkarp@paulweiss.com

*Attorneys for the Underwriter Defendants*

---

[8] Plaintiffs' authorities from this Circuit are inapposite. In both *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004), and *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003), lead plaintiffs had not purchased the securities at issue, but other named plaintiffs had. And in *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 WL 555697, at *7 (S.D.N.Y. Mar. 19, 2004)—the same case as *Hevesi*—the district court held that the lead plaintiff had standing to sue certain foreign affiliates, even though no lead or named plaintiff had purchased any foreign notes, because a named plaintiff had purchased notes from a domestic underwriter *in the same offering*. The remaining cases on which plaintiffs rely (all of which, save one class certification case decided in 1984, were decided by courts outside this Circuit) rest on a commonality or typicality analysis similar to that undertaken at the class certification stage—an analysis rejected in *Hoffman*, 2008 WL 4684168, at *4-5—or rely on the holdings in such cases.