UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMBAC FINANCIAL GROUP, INC. SECURITIES LITIGATION | Civil Action No. 08-00411-NRB<br><br>ECF Case |

LEAD PLAINTIFFS' RESPONSE TO
DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Lead Plaintiffs respectfully submit this Response to certain Defendants' Notice of Supplemental Authority to briefly address the defendants' submission of decisions in five cases issued after the close of briefing on defendants' Motion to Dismiss.[1]

1. *Ashcroft v. Iqbal*, 556 U.S. ___, No. 07-1075, 2009 WL 1361536 (May 18, 2009). *Iqbal* provides no new authority relevant to this action. *First*, *Iqbal* has no bearing on the pleading standards applicable to Plaintiffs' claims under the Securities Exchange Act of 1934 (the "Exchange Act"). Rather, *Iqbal* merely confirms that the pleading standards of Rule 8 of the Federal Rules of Civil Procedure (applicable to Plaintiffs' Section 11 and 12(a)(2) claims under the Securities Act of 1933) are lower than those of Rule 9 (applicable to Plaintiffs' Exchange Act claims). *Id.* at *17. *Second*, *Iqbal's* holding that the Rule 8 pleading standards developed in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), were not limited to antitrust disputes does not change the landscape in the Second Circuit. *See Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007) (finding that *Twombly* was not limited to antitrust cases). *Third*, *Iqbal* does not alter the pleading requirements established in *Twombly*. Citing *Twombly*, the Court restated its standards:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 2009 WL 1361536, at *12 (internal quotation marks and citations to *Twombly* omitted). Here, Lead Plaintiffs have sufficiently identified false and misleading statements or material omissions in the relevant registration statements or prospectuses and provided enough detail to explain why each statement is false, demonstrating well more than a "sheer possibility", such that the court can reasonably infer that registration statements and prospectuses contain material

---

[1] The Notice of Supplemental Authority was filed on behalf of Ambac and the Individual Defendants only.

misstatements or omissions. *See* OB at 58-65.[2] That is all that is required to sustain allegations under Sections 11 and 12(a)(2) of the Securities Act.

2. *In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009). The factual allegations of *PXRE* have little bearing in this action. The allegations of scienter that the court deemed insufficient concerned highly-qualified loss estimates issued by insurance companies in the immediate aftermath of Hurricanes Rita, Wilma and Katrina. *Id.* at 545 ("Indeed, the understatement of initial loss estimates by PXRE in the wake of Hurricanes Katrina, Rita, and Wilma is not neatly analogized to a corporation understating losses in the regular course of its business.").

In *PXRE*, the court found plaintiffs' allegations of recklessness insufficient because "Plaintiff fails to allege that Defendants had knowledge of *specific* contradictory information, or, in several instances, that the information was available *at the same time* that Defendants made the challenged statements." *Id.* at 536. Here, however, Plaintiffs have sufficiently alleged that defendants had knowledge of specific contradictory information, including internal memos, received by certain individual defendants and groups within the company, such as Ambac's Credit Risk Committee (of which Exchange Act Defendants were members). *See* OB at 36-45. Moreover, others facts on which the *PXRE* court relied in deeming plaintiffs' allegations deficient support the opposite conclusion in this case. For instance, PXRE adopted industry-wide loss estimates published by two external firms. Although plaintiffs alleged that they should have adopted the higher loss estimates published by a third firm, the court observed that "it is difficult to infer recklessness based on a reinsurance company's decision to follow loss estimates promulgated by two out of three companies." *PXRE*, 600 F. Supp. 2d at 542. Here, however, Plaintiffs allege that, rather than accept the loss estimates of two leading industry players,

---

[2] Lead Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss is cited herein as OB at __.

2

defendants knowingly or recklessly ignored known internal loss data which was consistent with two external industry indices that were experiencing severe declines, and manipulated Ambac's internal models to enable the insurance of highly risky products despite the warning signs of the two indices. Moreover, Defendants publicly distinguished the performance of Ambac's manipulated portfolio from the poorly performing indices. OB at 40-43.

    3. *In re Radian Sec. Litig.*, Civ. Action No. 07-3375, 2009 WL 974324 (E.D. Pa. Apr. 9, 2009). In *Radian*, plaintiffs alleged that Radian and certain of its officers violated Sections 10(b) and 20(a) of the Exchange Act by issuing false and misleading statements about Radian's investment in a joint venture, C-BASS. The *Radian* court's conclusions regarding plaintiffs' allegations of scienter are all distinguishable from the facts alleged here.

    The court in Radian found that the desire to complete a merger between Radian and MGIC, which co-owned C-BASS with Radian, was an insufficient allegation to establish motive on the part of defendants. *Id.* at *13. The motive and opportunity allegations in this case however do not rest in any way on Defendants desire to complete a merger. Plaintiffs have explained why the alleged motivations are distinctively unique, and have alleged concrete and personal benefits to individual defendants. *See* OB at 45-46.

    Moreover, the *Radian* court's rejection of plaintiffs' allegations that defendants' failure to take an impairment charge was an extreme departure from GAAP sufficient to allege a Section 10(b) claim has no bearing on this action. The GAAP violations in *Ambac* involve much more than the timing of an impairment charge on one investment, and, as alleged sufficiently in the Complaint, do constitute extreme departures from GAAP sufficient to state a claim under the Exchange Act. *See* OB at 28-35.

Finally, the *Radian* court's refusal to infer individual defendants' knowledge of problems at C-BASS solely from their senior positions at Radian and C-BASS's role in the "core activities" of Radian is irrelevant here. *Radian*, at **20-22. Plaintiffs do not ask this Court to make such assumptions. The Complaint is replete with specific allegations demonstrating the Exchange Act Defendants' knowledge and reckless disregard of facts contradicting their public statements. *See* OB at 35-43.

4. In *Fort Worth Employers' Retirement Fund v. Biovail Corp.*, No. 08-CV-8592-CM, 2009 WL 1357229 (S.D.N.Y. May 8, 2009), the court dismissed Exchange Act claims alleging that statements made by pharmaceutical company Biovail and four of its former officers and directors failed to disclose that the FDA would not approve or would delay approval of its new drug "BVF-033." Among other holdings, the court in *Biovail* found that the complaint itself undermined an inference of scienter because plaintiffs' own allegations supported a conclusion that "Defendants reasonably believed that their application was supported by sufficient and acceptable data and would be approved." *Id.* at *7. In this action, the allegations in the Complaint clearly establish not only that Defendants knew of Ambac's severely deteriorating financial condition, but that Defendants knowingly and recklessly withheld that knowledge from the public. *See* OB at 36-43.

5. In *Pittleman v. Impac Mortgage Holdings, Inc.*, SACV 07-0970 AG (MLGx), 2009 WL 648983 (C.D. Cal. Mar. 9, 2009), the court found that statements of confidential witnesses relied on in the complaint were not sufficiently particular to plead a strong inference of scienter. *Id.* at **2-3. However, the statements of confidential witnesses in the complaint here are sufficiently particular, as they identify, for example, specific actions taken by defendants or specific policies used by defendants. *See* OB at 43-45. Additionally, the *Impac* court's rejection

of plaintiff's attempt to rely on the "core operations inference" to satisfy scienter requirements has no relevance here. Although Plaintiffs allege that Ambac's guarantee of mortgage-backed securities was integral to Ambac's entire business, Plaintiffs do not seek to infer scienter on those facts alone. The Complaint specifically alleges scienter on the part of each Exchange Act Defendant. *See* OB at 36-43.

Dated: May 27, 2009

Respectfully submitted,

| | |
|---|---|
| **KAPLAN FOX & KILSHEIMER LLP** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** |
| /s/ Donald Hall | /s/ Mark Lebovitch |
| Frederic S. Fox | Steven B. Singer |
| Donald Hall | Mark Lebovitch |
| Hae Sung Nam | Kurt Hunciker |
| Melinda D. Rodon | Elliott Weiss |
| Aviah Cohen Pierson | Lauren A. McMillen |
| 850 Third Avenue, 14th Floor | 1285 Avenue of the Americas, 38th Floor |
| New York, New York 10022 | New York, New York 10019 |
| Telephone: (212) 687-1980 | Telephone: (212) 554-1400 |
| Facsimile: (212) 687-7714 | Facsimile: (212) 554-1444 |

*Attorneys for the U.S. Public Pension Funds, and Co-Lead Counsel for the Class*