## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMBAC FINANCIAL GROUP, INC. SECURITIES LITIGATION | Case No. 08-cv-00411-NRB<br>ECF Case |
| STANLEY TOLIN and EDWARD WALTON, Individually and On Behalf of All Others Similarly Situated,<br><br>                   Plaintiffs,<br>   v.<br><br>AMBAC FINANCIAL GROUP, INC., ROBERT J. GENADER and SEAN T. LEONARD,<br><br>                Defendants. | Case No. 08-cv-11241-CM<br>ECF Case |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENTS
## AND CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

I.      INTRODUCTION ................................................................................1

II.     DESCRIPTION OF THE LITIGATION .............................................5

III.    THE SETTLEMENTS WARRANT PRELIMINARY APPROVAL .............................11

        A.      The Settlements Are The Result Of Good Faith, Arm's-Length
                Negotiations By Well-Informed And Experienced Counsel .................................13

        B.      The Substantial Benefits For The Class, Weighed Against
                Litigation Risks, Support Preliminary Approval .....................................15

        C.      The Stage Of The Proceedings Supports Preliminary Approval ..........................15

IV.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .................16

        A.      Numerosity.................................................................17

        B.      Commonality..............................................................18

        C.      Typicality ....................................................................19

        D.      Adequacy ...................................................................20

        E.      Predominance And Superiority.....................................21

V.      BANKRUPTCY PROCEEDINGS ....................................................23

VI.     PROPOSED SCHEDULE OF EVENTS ...........................................24

VII.    CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products v. Windsor*,
    521 U.S. 591, 623 (1997)....................................................................................................21, 22

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco
    Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007)....................................................................................................17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................................................................12

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y. 2009)............................................................................................12

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)......................................................................................................17

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)......................................................................................................13

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992)....................................................................................................20

*In re Dynex Capital, Inc. Sec. Litig.*,
    2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ............................................................................22

*In re Elan Sec. Litig.*,
    385 F. Supp. 2d 363 (S.D.N.Y. 2005).....................................................................................13

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov 8, 2010) ...........................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................24

*In re Globalstar Sec. Litig.*,
    2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ..........................................................................18

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) .......................................................................................12, 18

*Karvaly v. eBay Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ..............................................................................................11

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................................ passim

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ...................................................................17, 22

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................12

*In re Oxford Health Plans, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ...................................................................18, 19, 20

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................14

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................11, 17

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...................................................................17, 20

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ...................................................................18

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
  2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ...................................................................18, 19

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................23

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................................................................14

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................18, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................11, 12, 13

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ...................................................................24

*Weinberger v. Kendrich*,
  698 F.2d 61 (2d Cir. 1982) ...................................................................16

-iii-

**STATUTES**

Securities Act
  §§ 11, 12 and 15................................................................................................................6

Chapter 11 of Title 11 of the United States Code.................................................................9, 23

Exchange Act
  §§ 10(b) and 20(a)............................................................................................................6

Private Securities Litigation Reform Act of 1995 ........................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................... passim

Lead Plaintiffs Public School Teachers' Pension & Retirement Fund of Chicago, Arkansas Teacher Retirement System, and Public Employees' Retirement System of Mississippi ("Lead Plaintiffs") and additional plaintiffs have reached two proposed settlements for a total of $33,000,000 in cash that, subject to Court approval, will resolve all claims in this consolidated securities class action (the "Ambac Class Action" or the "Action") and in *Tolin v. Ambac Financial Group, Inc. et al.*, No. 08-cv-11241-CM (S.D.N.Y.) (the "Tolin Action").   Lead Plaintiffs respectfully move the Court for an order preliminarily approving the two settlements, certifying a Class for settlement purposes pursuant to Fed. R. Civ. P. 23, and approving notice to the Class.

## I.   INTRODUCTION

Plaintiffs have achieved two proposed settlements that, together, provide recovery for the Class in the amount of $33 million – $27,100,000 from Ambac Financial Group, Inc. ("Ambac" or the "Company") and the Individual Defendants[1] (the "Ambac Settlement") and $5,900,000 from the Underwriter Defendants[2] (the "Underwriters Settlement").   Specifically, (i) Lead Plaintiffs; plaintiff Painting Industry Insurance and Annuity Funds; and the plaintiffs in the Tolin Action, Stanley Tolin and Edward Walton (collectively, "Plaintiffs"), on behalf of themselves and the members of the Class (defined below), have reached an agreement with Ambac and the

---

[1]   The Individual Defendants are: Michael A. Callen, Jill M. Considine, Robert J. Genader, W. Grant Gregory, Philip B. Lassiter, Sean T. Leonard, Thomas C. Theobald, John W. Uhlein, III, Laura S. Unger, Henry D.G. Wallace, David W. Wallis, Gregg L. Bienstock, Kevin J. Doyle, Philip Duff, Thomas J. Gandolfo, Kathleen McDonough, William T. McKinnon, Douglas C. Renfield-Miller, and Robert G. Shoback.

[2]   The Underwriter Defendants are: Citigroup Global Markets, Inc., UBS Securities LLC, Goldman, Sachs & Co., J.P. Morgan Securities Inc., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner, & Smith Incorporated, and Wachovia Capital Markets, LLC, now known as Wells Fargo Securities, LLC.

Individual Defendants to settle the Ambac Class Action and Tolin Action (together, the "Securities Actions") on the terms provided in the Stipulation of Settlement with Ambac and the Individual Defendants dated May 4, 2011 (the "Ambac Stipulation"), and (ii) Lead Plaintiffs and plaintiff Painting Industry Insurance and Annuity Funds, on behalf of themselves and the members of the Underwriter Class (defined below), have reached an agreement with the Underwriter Defendants to settle the Ambac Class Action on the terms provided in the Stipulation of Settlement with the Underwriter Defendants dated May 4, 2011 (the "Underwriters Stipulation").[3]

As set forth in the Stipulations, the Settlements will completely resolve all claims against all defendants – Ambac, which is now in bankruptcy, the Individual Defendants, and the Underwriter Defendants – and their related parties.  Lead Plaintiffs and Lead Counsel believe that the Settlements represent excellent results for the Class, particularly when considered in light of the limited prospects of recovering any substantially larger judgment against the Ambac Defendants, due to Ambac's precarious financial condition (underscored by its bankruptcy filing in November 2010, shortly after reaching an agreement in principle to settle this action and shortly before entering into a memorandum of understanding) and the very limited insurance coverage available to the Individual Defendants (which in any event is available only once Ambac is unable to indemnify the Individual Defendants); and in light of the risks of continued litigation, including establishing liability and damages at trial, against all Settling Defendants.

---

[3] The Ambac Stipulation (ECF No. 123-1) and Underwriters Stipulation (ECF No. 123-6) (together, the "Stipulations") were filed with the Court on May 6, 2011.  Ambac and the Individual Defendants are referred to herein as the "Ambac Defendants" and, together with the Underwriter Defendants, as the "Settling Defendants."  The Settling Defendants and Plaintiffs are referred to together herein as the "Settling Parties."  Unless otherwise indicated, all other capitalized terms used in this Memorandum shall have the meaning set forth in the Stipulations.

The Settlements were reached only after extensive litigation and prolonged, arms'-length settlement negotiations – including *five* in-person mediation sessions and additional negotiations – facilitated by retired United States District Court Judge Nicholas Politan, an experienced and highly respected mediator.[4]  By the time the Settlements were reached, Lead Plaintiffs had: (1) conducted an extensive factual investigation which included, among other things, identifying and interviewing numerous former Ambac employees; (2) filed a comprehensive consolidated Complaint in the Ambac Class Action; (3) successfully opposed Defendants' motions to dismiss; and (4) consulted with various economic and industry experts.  As a result, Lead Plaintiffs and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlements were reached.

Lead Plaintiffs, who are all sophisticated institutional investors of the type favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), have closely monitored this litigation from the outset, were directly involved in negotiating the Settlements, and have recommend that the Settlements be approved.  Further, Lead Counsel, who have extensive experience in prosecuting securities class actions, have concluded that the Settlements are in the best interests of the Class.

At the final approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlements, and will then make a

---

[4] The Honorable Nicholas Politan is a retired Judge of the United States District Court for the District of New Jersey, where he presided from 1987 to 2002.  Prior to his service as a federal judge, he was a lawyer in private practice, and also an owner and chairman of a banking institution.  During his time on the bench and since retiring, he has overseen the successful settlement, mediation and arbitration of hundreds of securities class actions.  In addition, he has been appointed Special Master by various Federal Courts in complex litigation.  Judge Politan is the recipient of numerous awards for his service on the bench.

determination as to whether the Settlements are fair, reasonable, and adequate under all of the circumstances surrounding the action.   At this juncture, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlements so that Notice of the Settlements may be sent to the Class and the Settlement Hearing may be scheduled.

Lead Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving Proposed Settlements ("Preliminary Approval Order"), which had been agreed upon by the Settling Parties, a copy of which is attached as Exhibit A to the accompanying Notice of Motion.  The Preliminary Approval Order will, among other things:  (i) preliminarily approve the Settlements on the terms set forth in the Stipulations; (ii) certify the Class for settlement purposes;[5] (iii) approve the form and manner of giving notice of the Settlements to the Class; and (iv) set a schedule for proceedings prior to a Settlement Hearing at which the Court will consider final approval of the Settlements, approval of the Plan of Allocation for distribution of the Net Settlement Fund and Lead Counsel's application for attorneys' fees and expenses.

---

[5] The parties have stipulated to the certification of a Class, for settlement purposes only, defined as:

> All persons who purchased or otherwise acquired any Ambac securities, including Ambac equity or debt securities or options thereon, or any Structured Repackaged Asset-Backed Trust Securities, Callable Class A Certificates, Series 2007-1, STRATS(SM) Trust for Ambac Financial Group, Inc. Securities, Series 2007-1 ("STRATS") (collectively "Ambac Securities") in the period from October 19, 2005, through and including July 18, 2009.

Ambac Stipulation ¶¶ 1(m), 2.  The Underwriter Class, which is included within the Class, means all persons or entities who purchased or acquired Ambac securities in or traceable to the February 2007 Directly-Issued Subordinated Capital Securities offering.  *See* Underwriters Stipulation ¶¶ 1(j), 2.  Excluded from both the Class and the Underwriter Class are Defendants; members of the immediate families of any Defendant; and their legal representatives, heirs, successors or assigns.  Also excluded from the Class and Underwriter Class are any persons who exclude themselves by filing a timely and valid request for exclusion in accordance with the requirements set forth in the Notice.  Ambac Stipulation ¶ 1(m); Underwriters Stipulation ¶ 1(j).

Lead Plaintiffs believe this motion is unopposed.  Although the plaintiff in the ERISA action initially indicated that it may submit a limited objection to the terms of the release contained in the Ambac Settlement, Lead Plaintiffs are informed by Ambac's counsel that the ERISA plaintiff's concerns have been addressed and resolved.[6]

## II.    DESCRIPTION OF THE LITIGATION

Lead Plaintiffs alleged that Ambac is a corporation that provided guarantees in connection with billions of dollars worth of extraordinarily risky mortgage-related securities. Lead Plaintiffs alleged that Ambac and certain of its officers repeatedly assured investors through public filings and other public statements throughout the Class Period (October 19, 2005 through July 18, 2008) that Ambac's rigorous and conservative underwriting standards ensured that it only guaranteed the safest transactions and that it was exposed to no material risk of loss. Lead Plaintiffs alleged that, in reality, Ambac had drastically lowered its underwriting standards, that the billions of dollars in high-risk securities it had guaranteed were drastically losing market value and were at significant risk of default, and that Ambac's financial statements were materially misleading because they failed to accurately reflect the fair value of Ambac's exposure on its guarantees.

Beginning on or about January 16, 2008, several putative class action complaints were filed against Ambac and certain Individual Defendants in the United States District Court for the Southern District of New York, asserting violations of the federal securities laws.  By Order dated May 9, 2008, the Court consolidated the related actions in the Ambac Class Action,

---

[6] Specifically, the parties to the Ambac Settlement have agreed to amend the definition of Settled Claims in the Ambac Stipulation to clarify that the claims released do not include the claims in the ERISA action.  A copy of the amendment is attached hereto as Exhibit 2.

appointed Lead Plaintiffs as the lead plaintiffs in the Ambac Class Action, and appointed Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Kaplan Fox & Kilsheimer LLP ("Kaplan") as lead counsel in the Ambac Class Action (together "Lead Counsel").

On July 25, 2008, plaintiff Painting Industry Insurance and Annuity Funds filed a complaint alleging claims under the Securities Act of 1933 (the "Securities Act") based on its purchase of the February 2007 Directly-Issued Subordinated Capital Securities ("DISCS") Offering.

On August 25, 2008, Lead Plaintiffs and plaintiff Painting Industry Insurance and Annuity Funds filed the Consolidated Amended Class Action Complaint (the "Ambac Complaint") in the Ambac Class Action, asserting claims under §§ 11, 12 and 15 of the Securities Act and §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  Claims were asserted against Ambac, certain Individual Defendants, the Underwriter Defendants; Lehman Brothers Inc., Credit Suisse Securities (USA) LLC, Banc of America Securities LLC, Keefe, Bruyette & Wood, Inc., and KPMG LLP ("KPMG") (collectively "Defendants").

On October 21, 2008, Defendants (except Lehman Brothers which was then in a SIPC Liquidation Proceeding before the Bankruptcy Court in New York) in the Ambac Class Action moved to dismiss the Ambac Complaint, which Lead Plaintiffs opposed on December 19, 2008. Reply memoranda were filed on February 10, 2009.

On December 24, 2008, the initial complaint in the Tolin Action, which alleged violations of the federal securities laws based on certain factual allegations similar to certain of the factual allegations in the Ambac Class Action, but on behalf of a putative class of persons who purchased or acquired Structured Repackaged Asset-Backed Trust Securities, Callable Class

-6-

A Certificates, Series 2007-1, STRATS(SM) Trust for Ambac Financial Group, Inc. Securities, Series 2007-1, was filed.  On April 15, 2009, Ambac and the individual defendants in the Tolin Action moved to dismiss the Amended Class Action Complaint in the Tolin Action, which plaintiffs in the Tolin Action opposed on May 15, 2009.  A reply memorandum was filed on May 22, 2009.

In order to facilitate settlement and mediation efforts, on July 15, 2009, upon application of all parties, the Court ordered Defendants' pending motions to dismiss in the Ambac Class Action be withdrawn without prejudice to re-filing motions to dismiss.

Lead Plaintiffs, plaintiffs in the Tolin Action, and the Settling Defendants participated in an in-person mediation before Judge Nicholas Politan (Ret.) on July 30, 2009, in New York, New York.  No settlement was reached at the mediation.

On August 27, 2009, renewed motions to dismiss by Defendants (except Lehman Brothers); renewed opposition thereto by Lead Plaintiffs, and Defendants' renewed reply briefs, were filed in the Ambac Class Action.[7]

Following a hearing held on December 17, 2009, by Order dated February 22, 2010, the Court granted in part and denied in part Defendants' motions to dismiss the Ambac Complaint in the Ambac Class Action, sustaining the claims under the Exchange Act and claims under the Securities Act with respect to Ambac's February 2007 DISCS Offering, and dismissing claims under the Securities Act with respect to Ambac's March 2008 Offering.  All claims against Defendants KPMG, Philip Duff, Credit Suisse Securities (USA) LLC, Banc of America

---

[7] Underwriter Defendant Lehman Brothers Inc. was not included in the renewed motion to dismiss (or proceedings thereafter) as a result of the December 23, 2008 Order of Stay (ECF No. 68) consistent with the Order Commencing Liquidation, dated September 19, 2008, and the Automatic Stay provisions of the United States Bankruptcy Code.

Securities LLC, and Keefe Bruyette & Wood, Inc. in the Ambac Class Action (which related solely to Ambac's March 2008 Offering) were dismissed.

On March 8, 2010, certain Defendants in the Ambac Class Action filed a motion for interlocutory appeal of the Court's February 22, 2010 Order denying in part their motions to dismiss; other Defendants joined in the motion on March 15, 2010.  Lead Plaintiffs filed their opposition on March 22, 2010, and certain Defendants filed their reply on March 29, 2010.  The Court denied the motion for certification for interlocutory appeal by Order dated April 29, 2010.

On December 23, 2009, Judge McMahon denied defendants' motion to dismiss in the Tolin Action.  Defendants in that action filed a motion for reconsideration or certification for interlocutory appeal on January 6, 2010, and on February 2, 2010 Judge McMahon recalled her prior opinion and on February 5, 2010 granted reargument on the motion to dismiss.  Judge McMahon thereafter heard oral argument on the motion to dismiss on August 5, 2010.  The motion to dismiss in the Tolin Action remained pending as of the time Judge McMahon was advised that the parties had reached an agreement in principle to settle the Tolin Action.

On or about April 22, 2010, Lead Plaintiffs, the Individual Defendants, the Underwriter Defendants, and the D&O Insurers, among others, participated in a second in-person mediation session with Judge Politan.  No settlement was reached at the mediation, but the parties agreed that mediation efforts would continue through discussions between and among Judge Politan (the mediator), the Lead Plaintiffs, plaintiffs in the Tolin Action, the Ambac Defendants, the Underwriter Defendants and the D&O Insurers, and such discussions continued through the remainder of 2010.

Although mediation efforts continued, on May 7, 2010, certain Defendants filed Answers to the Ambac Complaint in the Ambac Class Action.

On July 2, 2010, Lead Plaintiffs, the Ambac Defendants, and the D&O Insurers participated in a third in-person mediation session with Judge Politan.  At the conclusion of the session, an agreement in principle was reached that would resolve the claims asserted against the Ambac Defendants in the Ambac Class Action.  On August 10, 2010, Lead Plaintiffs, plaintiffs in the Tolin Action, and the Ambac Defendants participated in a fourth in-person mediation session with Judge Politan.  At the conclusion of the session, an agreement in principle was reached that would resolve the claims asserted against the Ambac Defendants in the Tolin Action.  After these agreements in principle were reached, the parties worked to reach agreement on a memorandum of understanding to document the agreements.

On November 8, 2010, Ambac filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United Stated Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On or about November 10, 2010, Lead Plaintiffs, certain of the Ambac Defendants, and the Underwriter Defendants participated in a fifth in-person mediation session with Judge Politan.  On December 3, 2010, after considerable negotiation, Lead Plaintiffs and the Underwriter Defendants executed a Memorandum of Understanding reflecting an agreement in principle to settle claims in the Ambac Class Action against the Underwriter Defendants and their related parties.

On December 8, 2010, after considerable negotiation, Lead Plaintiffs, the plaintiffs in the Tolin Action, Ambac, the Individual Defendants, and the D&O Insurers executed a Memorandum of Understanding reflecting an agreement in principle to settle claims in the Ambac Class Action and Tolin Action against Ambac, the Individual Defendants and their related parties (the "Ambac/Individuals MOU").  In the Ambac/Individuals MOU, the parties

also contemplated the resolution, release and bar of certain claims that have been or could be brought by Ambac or any shareholder or creditor of Ambac (including any claims purportedly brought derivatively on behalf of Ambac) against any of Ambac's current or former officers, directors or employees, including those related to the subject matter of the Ambac Class Action or Tolin Actions or the subject matter of the claims asserted in certain related Derivative Actions.

Based upon its investigation into the claims and the underlying events and transactions alleged in the Securities Actions, its legal research and consultations with experts, Lead Counsel have concluded that the terms and conditions of the Settlements are fair, reasonable and adequate to Lead Plaintiffs and the Class, and in their best interests.  Lead Plaintiffs have agreed in principle to settle the claims pursuant to the terms and provisions of the Stipulations, after considering (a) the substantial benefits that Lead Plaintiffs and the other members of the Class will receive from the resolution of the Securities Actions; (b) the attendant risks of litigation; and (c) Ambac's bankruptcy, financial condition and limited insurance coverage.

Lead Counsel and Tolin's Counsel, Gardy & Notis, LLP, conducted an extensive investigation relating to the claims and the underlying events and transactions alleged in the Complaints.  At the time the agreements in principle to settle the Action were reached, Lead Plaintiffs and Lead Counsel had a thorough understanding of the case.  While they believe that the claims asserted against Settling Defendants have merit, they also recognize that there are risks as to whether Lead Plaintiffs would ultimately prevail on the merits.  In addition, Ambac's financial condition was a significant factor in the settlement negotiations.  Lead Plaintiffs believed that there was a very substantial risk that, even if they were to prevail on the merits at trial against the Ambac Defendants, they would not be able to recover on a judgment larger than (or even equal to) the $27.1 million achieved in the Ambac Settlement due to Ambac's declining

financial condition and the terms of the available insurance.  The common stock of Ambac was trading at less than $1 per share at the time of the agreement in principle to settle.  Thus, the Class faced the very likely prospect of recovering very little to nothing from the Company if this case did not settle.  In addition, Ambac had only very limited Directors and Officers Liability Insurance that could be used to satisfy judgments against the Individual Defendants, coverage which was available only if the Company was unable to indemnify the Individual Defendants.

## III.    THE SETTLEMENTS WARRANT PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims.  Judicial review of a proposed class action settlement consists of a two-step process:  preliminary approval, and a subsequent settlement fairness hearing.  At the preliminary approval stage, the standards are more relaxed than those applied upon a motion for final approval.  *See Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007).  At preliminary approval, the Court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Prudential,* 163 F.R.D. at 209.  In making this preliminary determination, "[w]here the proposed settlement

appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *accord Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

Thus, at this point, the Court need not answer the ultimate question: whether the Settlements are fair, reasonable and adequate. When the Court makes that determination at a later point, the Court will be asked to review the following "*Grinnell* factors": (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *accord Wal-Mart*, 396 F.3d at 117.

The Settling Parties here request only that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlements so that notice of the Settlements can be given to the Class. As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlements, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that the Settlements are well "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87.

A.     **The Settlements Are The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel.  *See Wal-Mart*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *13 (S.D.N.Y. Nov 8, 2010) (same).  The use of mediator in settlement negotiations further supports this presumption of fairness and the conclusion that the Settlements achieved were free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Flag Telecom*, 2010 WL 4537550, at *14 ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation."); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005) (applying the presumption of fairness where the settlement was "the product of extended 'arm's length' negotiations, including, among other things, the two-day settlement conference before Judge Politan").

Here, the Settlements were achieved only after protracted arm's-length negotiations – including at least five separate in-person mediation sessions and numerous negotiations that took place over the course of more than one year.  These settlement discussions were conducted under the auspices of a highly respected and experienced mediator, the Honorable Nicholas Politan (Ret.), and included the active participation of the Court-appointed Lead Plaintiffs, including the attendance by their representatives at many of the mediation sessions.  These mediations occurred on July 30, 2009, April 22, 2010, July 2, 2010, August 10, 2010 and November 10,

-13-

2010.  During these mediations, Lead Counsel and counsel for the Settling Defendants presented, among other things, their respective views regarding the merits of the litigation, including the evidence adduced, Defendants' defenses, and issues relating to damages.  Lead Plaintiffs and the Ambac Defendants also extensively discussed and analyzed Ambac's financial condition and ability to satisfy a judgment.  Plaintiffs and the Ambac Defendants reached agreements in principle to settle claims in the Ambac Class Action and Tolin Action in July and August 2010 but considerable additional negotiations among these parties were necessary before a Memorandum of Understanding could be reached on December 8, 2010.  Three of the mediation sessions with Judge Politan involved the Underwriter Defendants and, following the third of these sessions and additional extensive negotiations, Lead Plaintiffs and the Underwriter Defendants executed a Memorandum of Understanding reflecting an agreement in principle to settle all claims in the Ambac Class Action against the Underwriter Defendants and their related parties.

    The Settling Parties and their counsel were well-informed prior to reaching the agreements to settle the case.  Moreover, in determining the good faith of this settlement proposal, the Court should consider the judgment of Lead Counsel.[8]  Here, Lead Counsel are among the nation's leading securities class action litigation firms.[9]  Accordingly, their judgment that the Settlements are in the best interest of the Class should be given considerable weight.

---

[8] *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

[9] The firm's respective resumes will be submitted for the Court's review in connection with the papers supporting final approval of the Settlements.

-14-

Consequently, the Court has ample evidence that the Settlements were negotiated in good faith and were not the product of collusion.

**B.    The Substantial Benefits For The Class, Weighed
         Against Litigation Risks, Support Preliminary Approval**

The proposed Settlements create a combined settlement fund of $33 million in cash.  This substantial recovery provides a substantial benefit to the Class, especially in light of the risks posed by continued litigation.

As will be explained in further detail in advance of the Settlement Hearing, the Settlements represent excellent results in light of certain Defendants ability to pay and other risks of continued litigation.  The $27.1 million recovery in the Ambac Settlement is a very positive outcome for the Class in light of the fact that it was obtained from a failing company with limited insurance coverage.  In addition to very serious concerns about the recovery of any litigated judgment against Ambac and the Individual Defendants, Plaintiffs would also have faced risks in proving their claims at trial, including establishing that their losses had resulted from Company-specific misstatements rather than market-wide effects, including the contemporaneous subprime market meltdown. The $5.9 million Underwriters Settlement reflects the fact that the Securities Act claims brought against the Underwriter Defendants concerned only one securities offering with limited damages, and the potential hurdles that Lead Plaintiffs would have faced in establishing the falsity of the statements in the offering materials as of the date of the offering in February 2007, relatively early in the Class Period.

**C.    The Stage Of The Proceedings Supports Preliminary Approval**

The stage of the proceedings also supports preliminary approval of the Settlements.  As will be set forth in further detail prior to the Settlement Hearing, Lead Plaintiffs' decision to enter into the Settlements was based on their thorough understanding of the strengths and

-15-

weaknesses of their claims against Defendants.  This understanding is based on Lead Counsel's diligent prosecution of this action, which included, among other things: (i) drafting a detailed consolidated complaint after review and analysis of Ambac's public disclosures and financial statements; (ii) locating and interviewing numerous witnesses with knowledge of the issues in this case; (iii) extensive briefing in opposition to Defendants' motions to dismiss and certain Defendants' motion for interlocutory appeal from the denial of that motion; (iv) consulting with damages, accounting and industry experts; and (v) drafting the mediation statements and preparing for and participating in five mediation sessions and related negotiations.  There can be no question that at the time the Settlements were reached, Lead Counsel had a clear view of the strengths and weaknesses of the Class's claims.  Additionally, Lead Plaintiffs, sophisticated institutional investors, monitored this case throughout the course of the litigation and participated in the negotiations of the Settlements.  Thus, the Settlements are the product of serious, informed, non-collusive negotiations, are well within the range of possible approval, and do not have any obvious deficiencies.  For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlements and direct that notice of the Settlements be given to members of the Class.

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Parties have stipulated that the Court may certify the Class for the purposes of the Settlements and appoint Lead Plaintiffs as the Class Representatives, and Lead Counsel as the Class Counsel.  *See* Ambac Stip. ¶2; Underwriters Stip. ¶2

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrich*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-cv-8144 (CM), 2009 WL 5178546, at

*8 (S.D.N.Y. Dec. 23, 2009).  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *Prudential,* 163 F.R.D. at 205.  To certify the Class, the Court need only find that the Class meets the four prerequisites set forth in Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, the predominance and superiority requirements of Rule 23(b)(3).

Courts have generally found securities claims to be particularly well-suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation.  *See, e.g., Marsh & McLennan*, 2009 WL 5178546, at *12; *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008)  This action is no exception and, as explained below, the Parties agree that, for purposes of the Settlements, the Class should be certified as satisfying each of the requirements set forth in Rule 23.

## A.   Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  For purposes of Rule 23(a)(1), however, "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate."  *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-245 (2d Cir. 2007).  Numerosity is presumed when a class consists of forty members or more.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  In order to satisfy Rule 23(a)(1), it is not necessary that the

-17-

precise number of class members be known, and in "securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *accord In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007); *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004).

Here, purchasers of Ambac Securities during the Class Period are believed to number in the thousands and are geographically located throughout the United States, thus making joinder impracticable. For example, Ambac's common stock was listed and actively traded on the New York Stock Exchange during the Class Period and, as of March 31, 2008 (during the Class Period) there were over 280 million shares of Ambac common stock issued and outstanding. The other Ambac Securities, including debt securities and options, were also actively publicly traded. Thus, the numerosity element is easily satisfied.

## B.    Commonality

The commonality requirement is satisfied where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Federal securities cases like this one easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *Initial Pub. Offering*, 243 F.R.D. at 85; *see In re Globalstar Sec. Litig.*, No. 01 Civ 1745 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000)

-18-

("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, the Complaint alleges a unified scheme to defraud investors, with numerous questions of law and fact common to all class members.  Questions common to the Class include:  (a) whether the federal securities laws were violated by Defendants' alleged acts; (b) whether the SEC filings, press releases and other public statements disseminated to the investing public during the Class Period contained material misstatements or omitted to state material information; (c) whether and to what extent the Company's financial statements failed to comply with Generally Accepted Accounting Principles during the Class Period; (d) whether defendants named in claims under the Exchange Act acted with scienter; (e) whether the prices of Ambac Securities during the Class Period were artificially inflated due to the alleged material omissions and/or misrepresentations; and (g) whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

### C.       Typicality

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "the claims of the named plaintiffs arise from same practice or course of conduct that gives rise to the claims of the proposed class members." *Vivendi*, 242 F.R.D. at 85 (citation omitted); *see Oxford Health Plans*, 191 F.R.D. at 375.  "Typical" does not mean "identical."  *See Marsh & McLennan*, 2009 WL 5178546, at *10.  The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions.  *See ACLN*, 2004 WL 2997957, at *4.  The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief.  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which

the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, Lead Plaintiffs' claims are identical to those of other members of the Class. They, like all members of the Class, purchased Ambac's Securities at artificially inflated prices during the Class Period and suffered damages because of Defendants' alleged material misstatements and omissions. Accordingly, the legal theories and evidence Lead Plaintiffs would advance to prove their claims will simultaneously advance the claims of all Class Members. As such, the Rule 23(a)(3) typicality requirement is satisfied.

### D.    Adequacy

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the claims of the lead plaintiffs conflict with those of the class; and (2) whether the lead plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Marsh & McLennan*, 2009 WL 5178546, at *10; *Oxford Health Plans,* 191 F.R.D. at 376.

Here, Lead Plaintiffs' interests are coextensive with those of other Class Members and, like all members of the Class, possess claims under the federal securities laws against the Defendants in connection with their purchase or acquisition of Ambac Securities during the

Class Period.  Lead Plaintiffs, like all Class members, were also injured by Defendants' allegedly wrongful acts.  Proof of Lead Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Class as a whole.  Thus, Lead Plaintiffs and the Class they seek to represent have the same interests in recovering damages caused by Defendants' wrongful conduct.  *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").

Lead Plaintiffs also respectfully submit that they have retained counsel who are qualified, experienced and fully capable of prosecuting this litigation on behalf of the Class.  Kaplan and BLB&G have a proven track record in the prosecution of complex class actions, both in this judicial district and nationwide, and through their efforts in this litigation have obtained a settlement of $33 million for the benefit of the Class.  Lead Plaintiffs, therefore, satisfy the Rule 23(a) adequacy requirements.[10]

### E.      Predominance And Superiority

In addition to the four requirements of Rule 23(a) addressed above, a class must also satisfy one of the three subparts of Rule 23(b).  Here, Lead Plaintiffs have demonstrated that questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members and a class action is superior to other available methods.  *See* Fed. R. Civ. P. 23(b)(3).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products v. Windsor*, 521 U.S. 591, 623

---

[10] Lead Plaintiffs also respectfully request that the Court-appointed Lead Counsel, Kaplan and BLB&G, be appointed Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1)(A).

(1997).  The Supreme Court has expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]"  *Id.* at 625.  "Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over, and are more substantial than, issues that are subject to individualized proof." *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 WL 781215, at *3 (S.D.N.Y. Mar. 7, 2011).  Here, the common questions of law and fact described above predominate over any individual questions.  The same set of operative facts applies to each Class Member (*i.e.*, each Class Member purchased and/or acquired Ambac Securities during the Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions) and each Class Member was allegedly harmed when the undisclosed facts came to light.  Accordingly, the "predominance" requirement is satisfied.

With respect to the superiority of a class action to other methods, securities fraud actions are generally considered especially appropriate for class action treatment because they often involve a large number of plaintiffs with relatively small claims.  *See Marsh & McLennan*, 2009 WL 5178546, at *12 (the "class action is uniquely suited to resolving securities fraud claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *Monster*, 251 F.R.D. at 139 ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible'").  In light of the number of potential claimants against Settling Defendants and the size of their claims, class action treatment is particularly suitable here.

Further, certification of the Class for the purpose of effecting the Settlements is the superior method to facilitate the resolution of the Class's claims against Settling Defendants. Without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlements.  Moreover, certification of a class for settlement purposes will allow the Settlements to be administered in an organized and efficient manner.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 584 (S.D.N.Y. 2008).  Resolution of the Class's claims against Settling Defendants through the Settlements is superior to any other available method of resolution.

For all of the foregoing reasons, the Class meets the class certification requirements of both 23(a) and 23(b).

## V.     BANKRUPTCY PROCEEDINGS

As set forth above, on November 8, 2010, Ambac filed in the Bankruptcy Court a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  By Order dated May 19, 2011, attached hereto as Exhibit 1, the Bankruptcy Court modified the automatic stay, to the extent necessary, to allow the parties to obtain preliminary approval of the Settlements from this Court.

In addition, promptly following preliminary approval of the Settlements, Ambac will file a motion with the Bankruptcy Court seeking approval of Ambac's participation in the Ambac Settlement.  Lead Plaintiffs and Ambac have conferred with the Official Creditors' Committee appointed in Ambac's Chapter 11 proceeding, and are not aware of any opposition to this motion.

## VI.     PROPOSED SCHEDULE OF EVENTS

As outlined in the agreed-upon proposed Preliminary Approval Order submitted herewith, Lead Plaintiffs will notify Class Members of the Settlements by mailing the Notice and Claim Form to Class Members no later than ten (10) days after entry of the Bankruptcy Court Approval Order.[11]   The Notice will advise Class Members of the essential terms of the Settlements, of information regarding Lead Counsel's fee application, and of the proposed plan for allocating proceeds of the Settlements among Class Members.   It also will set forth the procedure for objecting to the Settlements, Plan of Allocation or the request for an award of attorneys' fees and reimbursement of litigation expenses, or opting out of the Class, and will provide specifics on the date, time and place of the Settlement Hearing.   The proposed Preliminary Approval Order further requires Lead Plaintiffs to cause the Summary Notice (Ex. A-3 to the Preliminary Approval Order) to be published once in *Investor's Business Daily*.   Lead Counsel believe that, because the Notice and Summary Notice fairly apprise Class Members of their rights with respect to the Settlements, they represent the best notice practicable under the circumstances and should be approved by the Court.   The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified and additional publication notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.   *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448-49 (S.D.N.Y. 2004).

---

[11] *See* Exhibits A-1 and A-2 to the Preliminary Approval Order.  This will be accomplished principally by using record holder data that will be produced by Ambac's transfer agent and by reaching out to broker-dealers for the last-known names and addresses of potential Class Members.

In connection with preliminary approval of the Settlements, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, for opting out of the Class or for objecting to the Settlements.[12] The parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Settling Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice to Class Members ("Notice Date") | 10 days after entry of the Bankruptcy Court Approval Order |
| Deadline for publishing Summary Notice | 10 business days after the Notice Date |
| Filing of briefs in support of final approval of Settlements, Plan of Allocation, and Lead Counsel's fee and expense request | 35 calendar days before the Settlement Hearing |
| Receipt deadline for Requests for Exclusions and Objections | 21 calendar days before the Settlement Hearing |
| Filing of reply memoranda in response to any objections | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | The week of October 31, 2011, or at the Court's earliest convenience thereafter |
| Deadline for submitting Proofs of Claim | 120 calendar days following the Notice Date |

## VII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlements; certify the proposed Class for settlement purposes; and enter the accompanying proposed Preliminary Approval Order.

---

[12] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Class Members.

Dated:  May 26, 2011

**BERNSTEIN LITOWITZ BERGER**          **KAPLAN FOX & KILSHEIMER LLP**
**  & GROSSMANN LLP**

By:   /s/ Steven B. Singer                       By:    /s/  Frederic S. Fox
     Steven B. Singer                                 Frederic S. Fox
     Kurt Hunciker                                    Donald Hall
     Niki L. Mendoza                                  Hae Sung Nam
     Lauren A. McMillen                               850 Third Avenue, 14th Floor
     1285 Avenue of the Americas                      New York, New York 10022
     New York, New York 10019                         Tel: (212) 687-1980
     Tel: (212) 554-1400                              Fax: (212) 687-7714
     Fax: (212) 554-1444

*Counsel for Lead Plaintiffs in the In re*          *Counsel for Lead Plaintiffs in the In re*
*Ambac Securities Litigation*                        *Ambac Securities Litigation*